# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN ANCTIL, et al., | ) |
| | ) |
| Plaintiffs, | ) **Civil Action No. 12-CV-8572** |
| | ) |
| v. | ) Hon. Cathy Seibel |
| | ) |
| ALLY FINANCIAL, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## DEFENDANTS' JOINT MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 5

    I.     PLAINTIFFS' PROPERTIES UNDERWENT FORECLOSURE........................ 5

    II.    MERS AND THE MERS® SYSTEM. ................................................... 6

ARGUMENT ....................................................................................................... 7

    I.     Plaintiffs' claims are barred by multiple threshold issues. ..................... 7

        (a)     The *Rooker-Feldman* Doctrine Deprives This Court of Jurisdiction over Plaintiffs' Claims. ................................................................. 7

        (b)     *Res Judicata* and Collateral Estoppel Preclude Plaintiffs From Asserting That the Foreclosure Judgments Are Invalid. ........................... 13

        (c)     Plaintiffs' Claims Against Entities That Played No Role in the Alleged Foreclosure Proceedings Should Be Dismissed......................................... 14

        (d)     Plaintiffs' Claims Against the Parent Company Defendants Should Be Dismissed.................................................................................. 16

        (e)     Multiple Plaintiffs' State and Federal Claims Are Barred by the Applicable Statutes of Limitations............................................. 19

            (1)     Multiple Plaintiffs' RICO Claims Are Time-Barred. .................. 19

            (2)     Multiple Plaintiffs' State Consumer Protection Claims Are Time-Barred.................................................................................. 20

            (3)     Multiple Plaintiffs' Common Law Fraud Claims Are Time-Barred. .................................................................................... 21

    II.    Plaintiffs' Claims Fail on the Merits................................................... 22

        (a)     Plaintiffs' MERS- and Foreclosure-Related Claims Are Meritless.......... 22

            (1)     Courts Have Repeatedly Upheld MERS's Ability to Assign Interests in Mortgages Pursuant to Its Agreement and Relationship with the Lender. .......................................................................... 23

            (2)     Plaintiffs Fail to Allege That Any Foreclosure Judgments Against Them Were Wrongful or Procured by Fraud............................... 25

        (b)     The Second Amended Complaint Fails to State a Cognizable Claim for Relief Under RICO. ................................................................... 29

            (1)     The SAC Fails to Plead Actionable Racketeering Activity. .......... 30

            (2)     The SAC Fails to Plead a RICO Enterprise. ............................... 34

            (3)     The SAC Fails to Plead Proximate Causation. ............................ 36

        (c)     Plaintiffs' State Consumer Protection Claims Are Meritless. .................. 37

i

(1)     The SAC Does Not State a Claim for Violation of New York's Deceptive Acts and Practices Law.................................................. 38

(2)     The SAC Does Not State a Claim for Violation of the Massachusetts Consumer Protection Act...................................... 39

(3)     The SAC Does Not State a Claim for Violation of Maryland's Unfair or Deceptive Trade Practices Law...................................... 40

(d)     Plaintiffs Do Not State a Claim for Common Law Fraud Under New York, Massachusetts, or Maryland Law. .......................................................... 42

(1)     Plaintiffs Have Not Met Their Pleading Burden under the Federal Rules of Civil Procedure................................................................ 44

(2)     Defendants Did Not Knowingly Make False Representations. .... 46

(3)     Defendants Did Not Intend to Deceive, and Plaintiffs Did Not Rely on Defendants' Representations. .................................................... 47

(4)     Plaintiffs' Alleged Injuries Did Not Result from Defendants' Representations. .......................................................................... 48

CONCLUSION .................................................................................................... 49

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Adams v. NVR Homes, Inc.*,
    193 F.R.D. 243 (D. Md. 2000) ........................................................................44, 46

*Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ..................................................................................................20

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
    665 A.2d 1038 (Md. 1995) .....................................................................................43, 47

*Anderson v. Burson*,
    35 A.3d 452, 464 (Md. 2011) ..................................................................................4, 25

*Asafo-Adjei v. First Sav. Mortg. Corp.*,
    RWT 09CV2184, 2011 WL 344613 (D. Md. Feb. 1, 2011),
    *aff'd*, 444 F. Appx. 637 (4th Cir. 2011) ...............................................................22, 46

*Ashby v. Polinsky*,
    328 Fed. Appx. 20 (2d Cir. 2009)
    *aff'g* No. 06-CV-6778 (DLI), 2007 WL 608268 (E.D.N.Y. Feb. 22, 2007)...........................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ("Ashcroft") ...................................................................15, 30, 31

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................................45

*Aurora Loan Servs. v. Grant*,
    Index No. 35680/06, 17 Misc. 3d 1102(A),
    2007 WL 2768915 (Sup. Ct. Kings County Aug. 29, 2007) ....................................39

*BAC Home Loans Servicing, LP v. Kay*,
    No. 10-Misc-428719, 2010 Mass. LCR LEXIS 135 (Mass. Land Ct. Dec. 22, 2010)........4, 24

*Backman v. Smirnov*,
    No. 08-11148-RGS, 2008 WL 4874949 (D. Mass. Nov. 12, 2008) ................................44, 45

*Bank of New York Mellon Trust Co., NA v. Sachar*,
    95 A.D.3d 695, 943 N.Y.S.2d 893 (1st Dep't 2012) ..........................................4, 24

*Barbara v. MarineMax, Inc.*,
    No. 12-CV-0368(ARR), 2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012) ....................45

*Bean v. Bank of N.Y. Mellon*,
    No. 12-10930-JCB, 2012 WL 4103913 (D. Mass. Sept. 18, 2012).........................39

**Cases**                                                                              **Page(s)**

*Begelfer v. Najarian,*
    381 Mass. 177 (1980) ...................................................................................39

*Bernstein v. New York,*
    591 F. Supp. 2d 448 (S.D.N.Y. 2008)......................................................20, 30, 34

*Blum v. Fremont Inv. & Loan,*
    No. WMN-12-57, 2012 WL 2137962 (D. Md. June 12, 2012) ...........................4, 25

*Boritzer v. Calloway,*
    No. 10 Civ. 6264(JPO), 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013) ....................34

*Burns ex. rel. Off. of Pub. Guard. v. Hale & Dorr,*
    445 F. Supp. 2d 94 (D. Mass. 2006) ...................................................................40

*Campbell v. Bank of New York Mellon Trust Co., N.A.,*
    No. 11 Civ. 1588, 2012 WL 2952852 (S.D.N.Y. May 8, 2012).......................10, 11

*Capital Active Funding, Inc. v. B&L Constr. & Remodeling,*
    No. 11-CV-257, 2011 U.S. Dist. LEXIS 140754 (W.D. Tex. Dec. 7, 2011) .........35

*Central Mass. Television, Inc. v. Amplicon, Inc.,*
    930 F. Supp. 16 (D. Mass. 1996) .......................................................................50

*Cerecedes v. U.S. Bancorp,*
    No. cv 11-219, 2011 WL 2711071 (C.D. Cal. July 11, 2011).................................33

*Cervantes v. Countrywide Home Loans, Inc.,*
    656 F.3d 1034 (9th Cir. 2011) .........................................................................6, 7

*Chicot Cnty. Drainage Dist. v. Baxter State Bank,*
    308 U.S. 371 (1940)...........................................................................................14

*Cofield v. Lead Indus. Ass'n, Inc.,*
    Civ. A MJG-99-3277, 2000 WL 34292681 (D. Md. Aug. 17, 2000)......................48

*Conte v. Newsday, Inc.,*
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...........................................................34, 35

*Cosmas v. Hassett,*
    886 F.2d 8 (2d Cir. 1989)....................................................................................31

*Coyer v. HSBC Mortg. Servs.,*
    No. 10-14339-BC, 2011 WL 6181916 (E.D. Mich. Dec. 13, 2011),
    *aff'd,* 701 F.3d 1104 (6th Cir. 2012).................................................................24

**Cases**                                                                                                          **Page(s)**

*Crawford v. Countrywide Home Loans, Inc.*,
    647 F.3d 642 (7th Cir. 2011) ...................................................................................32

*Culhane v. Aurora Loan Servs. of Neb.*,
    708 F.3d 282 (1st Cir. 2013)..........................................................................7, 22, 24

*Deutsche Bank Nat. Trust Co. v. Francis*,
    Index No. 10441/09, 30 Misc. 3d 1241(A),
    2011 WL 1107080 (Sup. Ct. Kings County Mar. 25, 2011)....................................13

*Deutsche Bank Nat'l Trust Co. v. Ciccheli*,
    Nos. 10 MISC. 423350(AHS), 10 MISC 436809(AHS),
    2011 WL 3805905 (Mass. Land Ct. Aug. 24, 2011) .........................................4, 24

*Deutsche Bank Nat'l Trust Co. v. Pietranico*,
    33 Misc. 3d 528, 928 N.Y.S.2d 818 (Sup. Ct. Suffolk County 2011),
    *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2d Dep't 2013) ...........................4, 7, 24

*DirecTV, Inc. v. Rowland*,
    No. 04-CV-297S, 2005 WL 189722 (W.D.N.Y. Jan. 22, 2005).............................39

*District of Columbia Court of Appeal v. Feldman*,
    460 U.S. 462 (1983).................................................................................................8

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    228 F.R.D. 508 (S.D.N.Y. 2005) ...........................................................................17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)..........................................................................................2, 8, 9

*Figueroa v. MERSCORP, Inc.*,
    766 F. Supp. 2d 1305 (S.D. Fla. 2011),
    *aff'd*, 477 Fed. Appx. 558 (11th Cir. 2012) ...........................................................10

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)...................................................................................35

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)......................................................................................37

*First Nationwide Bank v. Gelt Funding, Corp.*,
    820 F. Supp. 89 (S.D.N.Y.1993),
    *aff'd* 27 F.3d 763 (2d Cir. 1994) ...........................................................................36

*Forsberg v. Land Court of the Commonwealth of Massachusetts*,
    Civ. Action No. 10-11701, 2010 WL 4008571 (D. Mass Oct. 7, 2010)...........11, 13

**Cases**                                                                 **Page(s)**

*Frankel v. Cole*,
    313 Fed. Appx. 418 (2d Cir. 2009)...................................................................20

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    96 N.Y.2d 201, 727 N.Y.S.2d 30 (2001) ..........................................................21

*Ginther v. Commissioner of Ins.*,
    427 Mass. 319 (1998) ......................................................................................14

*Givens v. CitiMortgage, Inc.*,
    No. PJM 10-1249, 2011 WL 806463 (D. Md. Feb. 28, 2011)...............................42

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000).................................................................30

*Gorbaty v. Wells Fargo Bank, N.A.*,
    Nos. 10-CV-3291, 10-CV-3354, 2012 WL 1372260 (E.D.N.Y. Apr. 18, 2012) ...................43

*Goss v. Bank of America, N.A.*,
    No. CCB-12-2680, 2013 WL 105326 (D. Md. Jan. 8, 2013) .................................48

*Granite Partners L.P. v. Bear, Sterns & Co.*,
    58 F. Supp. 2d 228 (S.D.N.Y. 1999)...................................................................48

*Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*,
    358 Md. 453 (2000) .........................................................................................21

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989)..........................................................................................31

*Hansen v. Saxon Mortgage Services, Inc.*,
    No. 1:11-cv-11128-JLT, 2012 WL 3686448 (D. Mass. Aug. 23, 2012) ...............40

*Hayden Capital USA, LLC v. Northstar Agric. Indus., LLC*,
    No. 11 Civ. 594(DAB), 2012 WL 2953055 (S.D.N.Y. July 16, 2012) ..................49

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010).............................................................................................37

*Henkels v. J.P. Morgan Chase*,
    No. CV 11-0299-PHX-JAT, 2011 WL 2357874 (D. Ariz. June 14, 2011) ............25

*Hoblock v. Albany Cnty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005)...........................................................................2, 8, 9

**Cases**                                                                                                          **Page(s)**

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992)........................................................................................................37

*HSBC Mortg. Corp. (USA) v. Morocho*,
   Index No. 28995/08, 31 Misc. 3d 1237(A),
   2011 WL 2200471 (Sup. Ct. Queens County May 24, 2011),
   *aff'd*, 106 A.D.3d 875, 965 N.Y.S.2d 570 (2d Dep't 2013) ....................................27

*Huelbig v. Aurora Loan Servs., LLC*,
   No. 10-Civ-6215 (RJH) (THK), 2011 WL 4348281 (S.D.N.Y. May 18, 2011) ....................47

*In re Correia*,
   452 B.R. 319 (B.A.P. 1st Cir. 2011) ........................................................................29

*In re Marron*,
   455 B.R. 1 (Bankr. D. Mass. 2011) ....................................................................4, 24

*In re McCann*,
   268 Fed. Appx. 359 (5th Cir. 2008)........................................................................36

*In re MERS Litig.*,
   No. 09–2119–JAT, 2011 WL 4550189 (D. Ariz. Oct. 3, 2011) ................................7

*In re Motel 6 Sec. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001)....................................................................48

*Iron Mountain Inc. v. Carr*,
   No. 05-10890-RCL, 2006 WL 6602266 (D. Mass. Mar. 13, 2006) ........................44

*Jackson v. Mortgage Elec. Registration Sys., Inc.*,
   770 N.W.2d 487 (Minn. 2009)........................................................................6, 26

*James v. ReconTrust Co.*,
   845 F. Supp. 2d 1145 (D. Or. 2012) ....................................................................33

*JBCHoldings NY, LLC v. Pakter*,
   No. 12 cv 7555, 2013 WL 1149061 (S.D.N.Y. Mar. 20, 2013) ............................48

*Jepson v. HSBC Bank USA, Nat'l Ass'n*,
   No. 12-12179-LTS, 2013 WL 639184 (D. Mass. Feb. 20, 2013)............................29

*Johnson v. De Grandy*,
   512 U.S. 997 (1994)........................................................................................8

*Jolicoeur v. Southern New England Sch. of Law*,
   104 F. Appx. 745 (1st Cir. 2004)........................................................................22

**Cases**                                                                                   **Page(s)**

*Jones v. Stafford*,
No. 8:12-cv-00891, 2012 WL 5882588 (D. Md. Nov. 20, 2012)...........................................45

*Kanamaru v. Holyoke Mut. Ins. Co.*,
72 Mass. App. Ct. 396 (App. Ct. 2008) ................................................................................40

*Kiah v. Aurora Loan Servs., LLC*,
No. 10-40161-FDS, 2011 WL 841282 (D. Mass. Mar. 4, 2011)........................................4, 24

*King v. Wells Fargo Home Mortg.*, No. 11-10781-GAO,
2013 WL 1196664 (D. Mass. Mar. 25, 2013)....................................................................45, 46

*Kregos v. Associated Press*,
3 F.3d 656 (2d Cir. 1993).........................................................................................................49

*Kropelnicki v. Seigel*,
290 F.3d 118 (2d Cir. 2002)......................................................................................................12

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999)......................................................................................................37

*Lane v. Vitek Real Estate Indus. Grp.*,
713 F. Supp. 2d 1092 (E.D. Cal. 2010)....................................................................................25

*Latson v. Plaza Home Mortg., Inc.*,
708 F.3d 324 (1st Cir. 2013).....................................................................................................21

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003)......................................................................................................37

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
No. 12 Civ. 3723 RJS, 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013) ...................................22

*Lundy v. Catholic Health System of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013)......................................................................................................32

*M & T Mortg. Corp. v. Miller*,
No. 02 Civ. 5410, 2009 WL 3806691 (E.D.N.Y. Nov. 13, 2009) ...........................................21

*Maheu v. Bank of Am., N.A.*,
No. ELH-12-508, 2012 WL 1744536 (D. Md. May 14, 2012)...........................................4, 25

*Marchese v. JPMorgan Chase Bank, N.A.*,
No. GLR-12-1480, 2013 WL 136427 (D. Md. Jan. 8, 2013) ..................................................44

**Cases**                                                                 **Page(s)**

*Matter of Stralem*,
  303 A.D.2d 120, 758 N.Y.S.2d 345 (2d Dep't 2003) ............................................................23

*McCloud v. Bettcher Indus., Inc.*,
  90 A.D.3d 1680, 935 N.Y.S.2d 815 (4th Dep't 2011) ........................................................17

*McPeters v. Edwards*,
  806 F. Supp. 2d 978 (S.D. Tex. 2011),
  *aff'd*, 464 Fed. Appx. 351 (5th Cir.), *cert. denied*, 133 S. Ct. 277 (2012) ...........................36

*McRae v. Norton*,
  No. 11–CV–2707 (KAM)(SMG), 2011 WL 3625569 (E.D.N.Y. Apr. 11, 2011) ..................32

*Md. Waste Coalition, Inc. v. Maryland Dep't of Environment*,
  84 Md. App. 544 (Md. Ct. Spec. App. 1990),
  *rev'd on other grounds*, 327 Md. 596 (1992) .......................................................................14

*Meisel v. Grunberg*,
  651 F. Supp. 2d 98 (S.D.N.Y. 2009) ....................................................................................46

*MERSCORP, Inc. v. Romaine*,
  8 N.Y.3d 90, 828 N.Y.S.2d 266 (2006) ........................................................................6, 7, 27

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ...........................................................................................32, 34

*Morris v. Osmose Wood Preserving*,
  340 Md. 519 (1995) ...............................................................................................................41

*Mortgage Elec. Registration Sys., Inc. v. Coakley*,
  41 A.D.3d 674, 674-75,838 N.Y.S.2d 622 (2d Dep't 2007) ............................................4, 24

*Neely v. RMS Residential Mortg. Solution, L.L.C.*,
  No. 12-CV-1523, 2013 WL 752636 (E.D.N.Y. Feb. 26, 2013) ...........................................44

*Neuro-Rehab Assocs., Inc. v. Amresco Commercial Fin.*,
  LLC, No. CIVA 05-12338 GAO, 2007 WL 2219309 (D. Mass. July 31, 2007) ..................22

*New York Univ. v. Continental Ins. Co.*,
  87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ...........................................................................39

*Nolan v. Buonassissi, Henning & Lash, P.C.*,
  No. 12-0325, 2012 WL 3584980 (D. Md. Aug. 17, 2012) ...................................................11

*Nott v. Bunson*,
  No. WMN-09-2613, 2009 WL 3271285 (D. Md. Oct. 9, 2009) ...........................................13

**Cases**                                                                                              **Page(s)**

*Orzoff v. Bank of America, N.A.*,
   2:10-cv-2202, 2011 WL 1539897 (D. Nev. Apr. 22, 2011) ....................................................33

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ...........................................................................39

*Ouch v. Federal Nat'l Mortg. Ass'n*,
   No. 11-12090-RWZ, 2013 WL 139765 (D. Mass. Jan 10, 2013)...........................................40

*Peterson v. GMAC Mortg., LLC*,
   No. 11-11115-RWZ, 2011 WL 5075613 (D. Mass. Oct. 25, 2011) ...............40, 43, 45, 48, 49

*Premium Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009).................................................................................................47

*Purchase Real Estate Grp. Inc. v. Jones*,
   No. 05 Civ. 10859, 2010 WL 3377504 (S.D.N.Y. Aug. 24, 2010) ..................................33, 36

*Redding v. Ameriprise Auto & Home Ins.*,
   No. DKC 11-3141, 2012 WL 1268327 (D. Md. Apr. 13, 2012) ...........................................44

*Rene v. Citibank NA*,
   32 F. Supp. 2d 539 (E.D.N.Y. 1999) ...................................................................................11

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994)...................................................................................................35

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................................................44

*Rosa v. Mortg. Elec. Registration Sys.*,
   821 F. Supp. 2d 423 (D. Mass. 2011) ..............................................................................4, 24

*Sammarco v. Big Apple Car, Inc.*,
   No. 08 Civ. 4099(BMC)(LB), 2008 WL 5111124 (E.D.N.Y. Dec. 4, 2008) ........................20

*Saxon Mortg. Servs., Inc. v. Coakley*,
   83 A.D.3d 1038, 921 N.Y.S.2d 552 (2d Dep't 2011) .......................................................4, 24

*Schmidt v. Fleet Bank*,
   16 F. Supp. 2d 340 (S.D.N.Y.1998)......................................................................................30

*Sembly v. U.S. Bank, N.A.*,
   No. 11-12322, 2012 WL 32737 (E.D. Mich. Jan. 6, 2012),
   *aff'd*, No. 12-1134, 2012 WL 6176968 (6th Cir. Dec. 12, 2012) ..........................................33

**Cases**                                                                                            **Page(s)**

*Serra v. Quantum Servicing Corp.*,
    No. 11-11843-DPW, 2012 WL 3548037 (D. Mass. Aug. 15, 2012) .......................................40

*Shabazz v. Ocwen Loan Servicing, LLC*,
    No. JFM-12-3324, 2013 U.S. Dist. LEXIS 2739 (D. Md. Jan. 8, 2013) ............................4, 25

*Simpson v. Putnam Cnty. Nat'l Bank of Carmel*,
    20 F. Supp. 2d 630 (S.D.N.Y. 1998)....................................................................................11

*Smith v. Capital One Auto Fin., Inc.*,
    CIV. JKB-11-1023, 2011 WL 3328565 (D. Md. Aug. 2, 2011)..............................................21

*Smith v. Wayne Weinberger, P.C.*,
    994 F. Supp. 418 (E.D.N.Y. 1998) ......................................................................................11

*Société d'Assurance de l'Est SPRL v. Citigroup, Inc.*,
    No. 10-civ-4754 (JGK), 2011 U.S. Dist. LEXIS 103375 (S.D.N.Y. Sept. 13, 2011) .......17, 18

*Spaulding v. Wells Fargo Bank, N.A.*,
    714 F.3d 769 (4th Cir. 2013) ...............................................................................................45

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)................................................................................................32

*Springer v. Deutsche Bank Nat'l Trust Co.*,
    No. 10 MISC 432307 (HMG), 2013 WL 139558 (Mass. Land Ct. Jan. 11, 2013) ................29

*Stewart v. Bierman*,
    859 F. Supp. 2d 754 (D. Md. 2012),
    *aff'd*, Nos. 12-1723, 12-1746, 2013 WL 2501752 (4th Cir. June 12, 2013) .........................41

*Superior Bank F.S.B. v. Tandem Nat'l Mortg., Inc.*
    197 F. Supp. 2d 298 (D. Md. 2000) ....................................................................................44

*Suss v. JP Morgan Chase Bank, NA*,
    No. WMN-09-1627, 2010 WL 2733097 (D. Md. July 9, 2010)..........................................4, 25

*Swiatkowski v. Citibank*,
    745 F. Supp. 2d 150 (E.D.N.Y. 2010),
    *aff'd*, 446 Fed. Appx. 36 (2d Cir. 2011) ....................................................................9, 10, 12

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ..........................................................................................11

*Taylor v. Deutsche Bank Nat'l Trust Co.*,
    44 So. 3d 618 (Fla. Dist. Ct. App. 2010) .............................................................................25

**Cases**                                                                                                          **Page(s)**

*Toone v. Wells Fargo Bank, N.A.*,
    No. 2:11-cv-170, 2011 WL 4499299 (D. Utah Sept. 27, 2011) ...............................................33

*U.S. Bank, N.A. v. Collymore*,
    68 A.D.3d 752, 890 N.Y.S.2d 578 (2d Dep't 2009) ................................................................28

*U.S. Bank, N.A. v. Flynn*,
    27 Misc. 3d 802, 897 N.Y.S.2d 855 (Sup. Ct. Suffolk County 2010) .................................4, 24

*U.S. Bank Nat'l Ass'n v. Ibanez*,
    458 Mass. 637 (2011) .........................................................................................................30

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)...................................................................................32

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..............................................................................................................17

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................................................36

*United States v. Turkette*,
    452 U.S. 576 (1981) ............................................................................................................36

*US Bank Nat'l Ass'n v. Boersma*,
    Index No. 6265/2009 (Sup. Ct. Orange County July 20, 2012) (Order).................................28

*Warnock v. State Farm Mut. Auto. Ins. Co.*,
    833 F. Supp. 2d 604 (S.D. Miss. 2011).................................................................................36

*Weizmann Inst. of Science v. Neschis*,
    229 F. Supp. 2d 234 (S.D.N.Y. 2002)...................................................................................30

*Welch v. TD Ameritrade Holding Corp.*,
    No. 07 Civ. 6904(RJS), 2009 WL 2356131 (S.D.N.Y. July 27, 2009) ..................................46

*Wells Fargo Bank, N.A. v. Taormina*,
    Index No. 3469/2009 (Sup. Ct. Queens County Sept. 27, 2011) (Short Form Order)............27

*Wells Fargo Bank NA v. Bradley*,
    Index No. 233421/10 (Sup. Ct. Rensselaer County July 8, 2011) (Decision/Order).........27, 28

*Western Contracting Corp. v. Bechtel Corp.*,
    885 F.2d 1196 (4th Cir. 1989) ..............................................................................................49

**Cases**                                                                                                         **Page(s)**

*Whelan v. Integraph Corp.*,
    889 F. Supp. 15 (D. Mass. 1995) .........................................................................................49

*Witt v. CIT Group/Consumer Fin., Inc.*,
    2010 U.S. Dist. LEXIS 117915, No. 2:10-CV-440 TS (D. Utah Nov. 5, 2010) ...................25

*Young v. Scruggs*,
    No. 1:09-cv-669KS-MTP, 2010 U.S. Dist. LEXIS 60434 (S.D. Miss. May 7, 2010) ...........36

*Zervos v. Ocwen Loan Servicing, LLC*,
    No. 1:11-cv-03757-JKB, 2012 WL 1107689 (D. Md. Mar. 29, 2012)...................................47

*Zipper v. Todd*,
    No. 96 Civ. 5198 (WK), 1997 WL 181044 (S.D.N.Y. Apr. 14, 1997)...................................11

**Statutes and Rules**

18 U.S.C. §§ 1341 .......................................................................................................................32

18 U.S.C. §1343 ..........................................................................................................................32

18 U.S.C. § 1961(1) .....................................................................................................................36

18 U.S.C. § 1961(1)(B).................................................................................................................32

18 U.S.C. § 1961(4) .....................................................................................................................37

18 U.S.C. § 1962(a) .......................................................................................................................6

18 U.S.C. §1962(c) ......................................................................................................................36

18 U.S.C. § 1964(c) ...........................................................................................................6, 21, 38

18 U.S.C. §1983...........................................................................................................................11

28 U.S.C. § 1257(a) .......................................................................................................................8

Mass. Gen. Laws ch. 93A ...............................................................................................6, 22, 41, 42

Mass. Gen. Laws ch. 93A §§ 2, 9 ..........................................................................................21, 39

Mass. Gen. Laws ch. 93A § 9(3) ...........................................................................................41, 42

Mass. Gen. Laws. ch. 244, § 14 ..................................................................................................25

Md. Code § 13-301 ...........................................................................................................21, 39, 42

**Statutes and Rules**                                                                 **Page(s)**

Md. Code § 13-303 .............................................................................6, 21, 39, 42

N.Y. Gen. Bus. Law § 349.....................................................................6, 22, 40

N.Y. Gen. Bus. Law § 349(a) ............................................................21, 22, 39, 40

Fed. R. Civ. P. 9(b) ................................................................................ *passim*

**Other Authorities**

*Formal Op. # 847*, N.Y. State Bar Ass'n, Comm. on Prof'l Ethics  ¶ 14 (Dec. 21, 2010)............28

Siegel, *N.Y. Practice* § 136, at 232 (4th Ed.) ..............................................................14

Defendants Ally Financial Inc. ("Ally"), Aurora Loan Services, LLC ("Aurora"), Bank of America, N.A. ("Bank of America" or "BANA"), Chase Home Finance, LLC ("Chase"), Cincinnati Federal Savings and Loan ("Cincinnati Federal"), Citibank, N.A. ("Citibank"), Citigroup, Inc. ("Citigroup"), CitiMortgage, Inc. ("CitiMortgage") (collectively, "Citi"), Countrywide Home Loans, Inc. ("Countrywide"), Deutsche Bank, AG ("DBAG"), Deutsche Bank National Trust Company ("DBNTC"), First Franklin Loan Services ("First Franklin"), Flagstar Bank, FSB ("Flagstar"), Homeward Residential, Inc. sued herein as Homeward Residential ("Homeward"), JPMorgan Chase & Co. ("JPMC"), JP Morgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC ("Chase") (s/h/a "Chase Home Finance LLC"), Money Warehouse, MortgageIT, Inc. ("MortgageIT"), Ocwen Financial Corporation ("Ocwen Financial"), PHH Mortgage ("PHH"), The PNC Financial Services Group, Inc. ("PNC"), Provident Funding Group, Inc. ("Provident"), U.S. Bank National Association ("USB") and Wells Fargo Bank, N.A., sued herein as Wells Fargo, N.A. ("Wells Fargo") (collectively, "Defendants"), by and through their undersigned counsel, hereby submit their Joint Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC").

## <u>INTRODUCTION</u>

Plaintiffs in this action seek to use this Court to circumvent legitimate, final state court judgments that resulted in the foreclosure of their homes and to unwind valid, completed foreclosure sales. Prior to the foreclosure actions, Plaintiffs knowingly obtained loans and signed mortgages securing repayment thereof, some – but not all – of which named Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee of the lender. They now allege that Defendants, in concert with each other, created and used the MERS system to obtain those foreclosures and deprive Plaintiffs of their properties. Courts, however, have repeatedly rejected Plaintiffs' core argument that MERS cannot assign mortgages in which it is the lender's

nominee, or that MERS itself is inherently unlawful.  And the MERS system is the only thing close to a common denominator among the disparate acts and injuries alleged in the SAC. Plaintiffs' amendments have not cured the deficiencies of their Complaint or First Amended Complaint, and the Court should accordingly dismiss the SAC with prejudice.

Before even considering the merits, this Court should dismiss the SAC as to all – or at least some – Defendants based upon multiple threshold issues.  First, the *Rooker-Feldman* doctrine precludes this Court from taking jurisdiction over these claims.  As they allege in the SAC, Plaintiffs are seeking what amounts to federal appellate review of final state foreclosure judgments.  The *Rooker-Feldman* doctrine exists to preclude exactly this type of case, one "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("*Exxon Mobil*"); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83-92 (2d Cir. 2005) (explicating *Exxon Mobil* and *Rooker-Feldman* doctrine).  This case should be dismissed on this basis alone.

Plaintiffs' claims are similarly barred by *res judicata* and collateral estoppel.  Plaintiffs essentially ask this Court to take judicial notice that 28 foreclosures were wrongfully obtained and based on fraud or other wrongdoing, though Plaintiffs nowhere allege that they appealed, sought to vacate, or in any other way challenged such wrongful foreclosures until now.  Where the so-called "predicate acts" upon which Plaintiffs' claims rely are nothing more than the day-to-day correspondence and fund transfers one would expect to see at institutions involved in the mortgage industry, this Court simply cannot accept, as a *factual* allegation, that all of those foreclosures were improperly obtained.

2

Plaintiffs' claims also cannot be sustained against both those Defendants who acted solely as originators of loans and were not parties to the foreclosure proceedings, and those Defendants who have only been named in their capacity as parent companies.  The entirety of the Plaintiffs' allegations in the SAC relate exclusively to the foreclosure and enforcement of the subject loans, rendering it impossible for the originator defendants to have caused any of the alleged harms against Plaintiffs.  The claims against the originators should therefore be dismissed.  As to the parent company defendants, Plaintiffs do not allege any basis for the Court to pierce their respective corporate veils and hold the named parent companies liable for the alleged acts of their subsidiaries.  These defendants should therefore also be dismissed from the action.

As a final threshold matter, multiple Plaintiffs' claims are time-barred.  Plaintiffs' claims based on Racketeer Influenced and Corrupt Organization Act ("RICO") and the Massachusetts Consumer Protection Act face four-year statutes of limitations, and their claims for violation of New York General Business Law, violation of the Maryland Unfair or Deceptive Trade Practices law, Massachusetts common law fraud, and Maryland common law fraud face three-year statutes of limitations.  Plaintiffs claim that they were allegedly injured when Defendants initiated foreclosure proceedings against them.  *See e.g.*, SAC ¶¶ 212, 320.  Because a number of their foreclosure proceedings were initiated more than three or four years prior to the commencement of this lawsuit, the relevant claims are time-barred and should be dismissed with prejudice.

Even if this Court proceeds to consider the merits of each of Plaintiffs' claims, it will find that Plaintiffs have failed to meet the minimal pleading requirements for any cause of action, and that the entire SAC should be dismissed with prejudice.  Plaintiffs do not plead adequate facts to show that any of Defendants' MERS- or foreclosure-related activities violated New York,

Massachusetts or Maryland law.   Plaintiffs offer *some* information about two of their loan transactions – Troske and Zicaro, SAC ¶¶ 116-137 – but nothing except the counties in which the foreclosed properties are located, mortgage dates, and dates the foreclosure actions were initiated, as to the rest.  They neither provide, identify, nor describe a single "fraudulent" document filed in any court in any state by any Defendant.  Regardless, courts in all three states have consistently upheld MERS's ability to validly assign mortgages as nominee of the lender.[1]

Plaintiffs' causes of action for violation of RICO and common-law fraud fail to allege that Defendants took any improper underlying actions, a required element of both claims.  Their fraud-based RICO claim further fails to plead a predicate racketeering activity, a cognizable enterprise, or proximate cause, and fails to meet the heightened pleading requirements for Federal Rule of Civil Procedure 9(b).  The New York, Massachusetts, and Maryland consumer-protection statutes cited by Plaintiffs do not reach Defendants' alleged foreclosure conduct, which involves private contractual disputes and litigation, not consumer-directed activity or engagement in trade and commerce under those laws.  Finally, Plaintiffs' common-law fraud

---

[1]      *See, e.g. Bank of New York Mellon Trust Co., NA v. Sachar*, 95 A.D.3d 695, 696, 943 N.Y.S.2d 893, 893 (1st Dep't 2012); *Saxon Mortg. Servs., Inc. v. Coakley*, 83 A.D.3d 1038, 1039, 921 N.Y.S.2d 552, 553 (2d Dep't 2011); *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674, 674-75,838 N.Y.S.2d 622, 623-24 (2d Dep't 2007); *Deutsche Bank Nat'l Trust Co. v. Pietranico*, 33 Misc. 3d 528, 551, 928 N.Y.S.2d 818, 834 (Sup. Ct. Suffolk County 2011), *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2d Dep't 2013); *U.S. Bank, N.A. v. Flynn*, 27 Misc. 3d 802, 803, 897 N.Y.S.2d 855, 856 (Sup. Ct. Suffolk County 2010); *Rosa v. Mortg. Elec. Registration Sys.*, 821 F. Supp. 2d 423, 429-30 (D. Mass. 2011); *In re Marron*, 455 B.R. 1, 5-6 (Bankr. D. Mass. 2011); *Kiah v. Aurora Loan Servs., LLC*, No. 10-40161-FDS, 2011 WL 841282, at *3 (D. Mass. Mar. 4, 2011); *Deutsche Bank Nat'l Trust Co. v. Ciccheli*, Nos. 10 MISC. 423350(AHS), 10 MISC 436809(AHS), 2011 WL 3805905, at *4 (Mass. Land Ct. Aug. 24, 2011); *BAC Home Loans Servicing, LP v. Kay*, No. 10-Misc-428719, 2010 Mass. LCR LEXIS 135, at *5 (Mass. Land Ct. Dec. 22, 2010); *Anderson v. Burson*, 35 A.3d 452, 464 (Md. 2011); *Shabazz v. Ocwen Loan Servicing, LLC*, No. JFM-12-3324, 2013 U.S. Dist. LEXIS 2739, at *2 (D. Md. Jan. 8, 2013); *Blum v. Fremont Inv. & Loan*, No. WMN-12-57, 2012 WL 2137962, at *3 (D. Md. June 12, 2012); *Maheu v. Bank of Am., N.A.*, No. ELH-12-508, 2012 WL 1744536, at *7 (D. Md. May 14, 2012); *Suss v. JP Morgan Chase Bank, NA*, No. WMN-09-1627, 2010 WL 2733097, at *5 (D. Md. July 9, 2010).

claims are precluded at the outset by the absence from the pleadings of any specific misrepresentations made *to Plaintiffs* by any Defendant.

Because multiple threshold issues preclude the consideration of Plaintiffs' claims, and because Plaintiffs set forth no viable cause of action of any sort, the Court should dismiss the SAC in its entirety, with prejudice.

## **BACKGROUND**

## I.     **PLAINTIFFS' PROPERTIES UNDERWENT FORECLOSURE.**

Twenty-eight separate borrowers (individuals and couples) bring this suit against 26 named defendants.  Plaintiffs each allege that one or more of the Defendants was "involved with a mortgage or foreclosure proceedings relating to" them for properties located in Massachusetts, New York or Maryland, all of which underwent foreclosure before the commencement of this lawsuit.  SAC ¶ 2.  Some Plaintiffs executed mortgages naming MERS as nominee of the lender, although the SAC acknowledges that not all of the mortgages at issue named MERS as a nominee.  *Id.* ¶ 209.  MERS allegedly assigned those mortgages to various banks which later initiated foreclosure proceedings.  *See id.* ¶¶ 103, 112(a), 117, 209.  Plaintiffs as a group challenge the authority of MERS to assign loans, allege therefore that Defendants all foreclosed on their properties without standing to do so, and assert that the MERS system was created and used by Defendants to achieve the specific end of creating opportunities for Defendants to foreclose.  *See id.* ¶¶ 2-3, 64-65, 83, 103-106, 108-114, 190-193, 211-12.

Plaintiffs allege that they each took out residential mortgage loans between 2003 and 2008, which loans were foreclosed upon between 2006 and 2010.  *See* SAC ¶ 138.  Plaintiffs nowhere allege that they contested the foreclosures in any way.  Nowhere in their SAC do Plaintiffs allege that they did *not* default on their mortgages, or that the subject mortgage contracts are invalid or unenforceable.  Nor do they allege that they were not properly served

with process and notice in connection with any of their respective foreclosure proceedings, or were denied the opportunity to challenge those foreclosure proceedings at the time.

Plaintiffs filed suit in this Court on or about November 26, 2012, amended their complaint on or about January 28, 2013, and pursuant to the Court's pre-motion conference order, amended again on or about April 12, 2013.  They raise claims for violations of RICO, 18 U.S.C. § 1962(a) and (c); violations of New York General Business Law, Section 349, Deceptive Acts and Practices; violations of the Consumer Protection Act, Massachusetts General Laws, Chapter 93A; violations of  the Maryland Consumer Protection Act, Maryland Code, Section 13-303; and common-law fraud.  SAC ¶¶ 197-370.

## II.    MERS AND THE MERS® SYSTEM.

To better understand the context of this action, it is helpful to have an understanding of MERS and the MERS® System.

MERSCORP Holdings, Inc. ("MERSCORP") operates the MERS System, "a private electronic database . . . that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011); *see also MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006); *Jackson v. Mortgage Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490-91 (Minn. 2009).  The shareholders of MERSCORP and the members of the MERS System include "[m]any of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans."  *Cervantes*, 656 F.3d at 1039; *see also In re MERS Litig.*, No. 09–2119–JAT, 2011 WL 4550189, at *3 (D. Ariz. Oct. 3, 2011).

Under the MERS System, the "initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the instrument.  During the lifetime of the mortgage, the beneficial

6

ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system." *Romaine*, 8 N.Y.3d at 96, 828 N.Y.S.2d at 268. MERS does not originate, lend, service, or invest in home mortgage loans. *Cervantes*, 656 F.3d at 1039-40. Instead, "MERS acts as the designated 'common agent' for the MERS member institutions in the land records, which means that MERS . . . acts on [its members'] behalf as mortgagee." *Pietranico*, 33 Misc. 3d at 542, 928 N.Y.S.2d at 828-29.

The MERS System was designed to improve the efficiency and to lower the cost of business in the primary and secondary mortgage markets. *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 287 (1st Cir. 2013); *Jackson*, 770 N.W.2d at 490. This is accomplished by tracking changes in servicing rights and beneficial ownership interests in the promissory note over the life of the loan electronically through the MERS System "[e]very time a note or servicer changes hands." *Pietranico*, 33 Misc. 3d at 543, 928 N.Y.S.2d at 829. Legally, this is nothing new: "The concept of nominees appearing in the land records on behalf of the true owner has long been recognized. It has never been the case that the true owners of interests in real estate could be determined using land records." *Id.*, 33 Misc. 3d at 544, 928 N.Y.S.2d at 829; *see also Culhane*, 708 F.3d at 292-93 (finding the MERS arrangement to "fit comfortably within the structure of Massachusetts mortgage law").

## ARGUMENT

## I.     PLAINTIFFS' CLAIMS ARE BARRED BY MULTIPLE THRESHOLD ISSUES.

### (a)     The *Rooker-Feldman* Doctrine Deprives This Court of Jurisdiction over Plaintiffs' Claims.

This Court lacks jurisdiction to hear Plaintiffs' claims because they improperly purport to seek what amounts to federal appellate review of final state-court foreclosure judgments.

Federal review of state court judgments can be obtained only in the United States Supreme Court under 28 U.S.C. § 1257(a).  The *Rooker-Feldman* doctrine precludes federal jurisdiction over cases brought by plaintiffs "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("*Exxon Mobil*"); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83-92 (2d Cir. 2005) (explicating *Exxon Mobil* and *Rooker-Feldman* doctrine).  The doctrine thus prevents a party who had an opportunity to contest, through the state court system, the propriety of the state court judgment "from seeking what in substance would be appellate review" from a federal district court.  *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

The *Rooker-Feldman* doctrine not only prohibits federal district courts from reviewing matters actually resolved in connection with the state court judgment but also those claims "inextricably intertwined" with the judgment.  *Hoblock*, 422 F.3d at 86 (quoting *District of Columbia Court of Appeal v. Feldman*, 460 U.S. 462, 486-87 n.16 (1983)).  A claim raised in federal court is "inextricably intertwined" whenever it "asserts injury based on a state judgment and seeks review and reversal of that judgment."  *Id*.  More specifically, such claims lie outside of federal jurisdiction when they meet the requirements outlined by the Supreme Court in *Exxon Mobil*:

> (1) [T]he federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 164 (E.D.N.Y. 2010), *aff'd*, 446 Fed. Appx. 36 (2d Cir. 2011) (quoting *Hoblock*, 422 F.3d at 85).

Plaintiffs' claims in the SAC are "inextricably intertwined" with state-court foreclosure judgments and related proceedings. Plaintiffs allege that judgments of foreclosure were entered by state courts in the jurisdictions where their properties were located, prior to the commencement of this action. *See* SAC ¶ 2 ("Plaintiffs are former mortgagors whose homes were foreclosed upon" based on "fraudulent foreclosure judgments [procured] against plaintiffs"). Plaintiffs' claims and alleged injuries rest upon their assertion that these foreclosures were improper.[2] As alleged, Plaintiffs' claims are "inextricably intertwined" with

---

[2]     *See, e.g.*, SAC ¶¶ 2 ("[D]efendants engaged in a coordinated pattern of acts to … expedite foreclosures, and procure foreclosure judgments against plaintiffs."), 3 ("Injuries to plaintiffs include loss of their mortgages and the deprivation of legal protections intended to ensure that property interest[.]"), 36 ("The harm included expedited foreclosure on plaintiffs' homes and procurement [of] fraudulent foreclosure judgments against them."), 64 ("Defendants' scheme consists of originating mortgages of short duration and then accelerating foreclosures for profit."), 108 ("[D]efendants originated, bought and sold loans such as plaintiffs' mortgages, and foreclosed on properties including plaintiffs' homes."), 109 ("Defendants obtained mortgages from plaintiffs that were designed to be of short duration, and then accelerated foreclosures[.]"), 112(a) ("Defendants used the [MERS] system to obtain and transfer or assign mortgages and to facilitate expedited foreclosures[.]"), 112(c) ("[D]efendants financed … activities including accelerated or improper foreclosures, which injured plaintiffs."), 114 ("Plaintiffs suffered injury because defendants' scheme ultimately resulted in expedited foreclosures … including the ultimate result of null or invalid foreclosures."), 123 ("the judgment was a nullity obtained through fraud"), 136 ("[a]gain, the judgment was a nullity obtained through fraud"), 158 (Defendants deceived "courts"), 164 ("Defendants' use of the mails and wires … has the similar purpose of … ultimately obtaining foreclosures of [Plaintiffs'] homes."), 190 ("Defendants' omissions include … failing to disclose material information necessary to establish standing to initiate foreclosure actions against plaintiffs[.]"), 191 ("Defendants failed to make disclosures required to evaluate the propriety of … foreclosure actions concerning plaintiffs."), 192 ("Defendants' omissions misled plaintiffs, public agencies and courts by leading them to believe that defendants held mortgages or had standing to foreclose when they did not[.]"), 193 ("[D]efendants obtained mortgages and foreclosures and related profits generated before and after such foreclosures."), 211 ("Documents presented or filed on behalf of defendants in relation to plaintiffs' mortgages or during the course of foreclosure proceedings against plaintiffs were fraudulent."); 212 ("Defendants used their scheme to originate mortgages and expedite foreclosures … [which] extinguished plaintiffs' property interests and legal protections intended to protect those interests."), 320 ("Plaintiffs suffered injury … including the loss of plaintiffs' mortgages and improper foreclosure on their homes."), 340 ("[D]efendants participated in a scheme to profit from generating mortgages and

these alleged foreclosure judgments because they ask this Court to determine that the judgments were improperly obtained and that Plaintiffs were injured as a result.  Indeed, Plaintiffs could have challenged the foreclosure proceedings initiated against them and asserted as defenses in state court the allegations advanced in the SAC in an attempt to prevent foreclosure and the entry of the state-court foreclosure judgments.  *See Swiatkowski*, 745 F. Supp. 2d at 165 (*Rooker-Feldman* applies where "many of plaintiff's allegations of fraud involve allegedly fraudulent documents or acts that were associated with the state court foreclosure proceeding.").  As such, Plaintiffs' claims and allegations of injury invite "review and rejection" of allegedly injurious state-court foreclosure judgments.

Federal courts in New York, Massachusetts, Maryland – the states where the Plaintiffs' properties were located – have considered and rejected nearly identical attempts to challenge state-court final judgments through subsequent federal court lawsuits.  *See, e.g., Campbell v. Bank of New York Mellon Trust Co., N.A.*, No. 11 Civ. 1588, 2012 WL 2952852 (S.D.N.Y. May 8, 2012); *Swiatkowski*, 745 F. Supp. 2d 150; *Forsberg v. Land Court of the Commonwealth of Massachusetts*, Civ. Action No. 10-11701, 2010 WL 4008571, at *2 (D. Mass Oct. 7, 2010); *Nolan v. Buonassissi, Henning & Lash, P.C.*, No. 12-0325, 2012 WL 3584980, at *1 (D. Md. Aug. 17, 2012).  Federal courts in other jurisdictions have reached the same conclusions.  S*ee, e.g., Figueroa v. MERSCORP, Inc.*, 766 F. Supp. 2d 1305 (S.D. Fla. 2011), *aff'd*, 477 Fed. Appx. 558 (11th Cir. 2012) (affirming that federal court lacked jurisdiction over RICO action where "federal RICO claims could only succeed if the state court's foreclosure judgment was in error"); *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) (affirming dismissal of RICO action under

---

expediting foreclosures … [to] deprive plaintiffs of their property interests and legal protections intended to ensure those interests[.]").

*Rooker-Feldman* because the plaintiff's allegations regarding predicate acts were inextricably intertwined with the state foreclosure).[3]

An examination of several of these holdings illustrates why Plaintiffs cannot establish this Court's jurisdiction to review the propriety of the state-court foreclosure judgments in connection with Plaintiffs' claims.  For example, in *Campbell*, this Court examined "factual allegations set forth in the Complaint focus[ing] on Defendants' conduct in commencing and continuing the foreclosure actions against them," in particular, allegations that the defendants "obtained the judgments of foreclosure and sale by means of a misrepresentation."  2012 WL 2952852, at **2-3.  Like the Plaintiffs in this case, the *Campbell* plaintiffs' "claims alleg[ed] that Defendants brought foreclosure actions against Plaintiffs without legal authority or standing and that Defendants made various misrepresentations in the course of litigating these actions."  *Id.* at *7.  The *Campbell* court held that the plaintiffs "obviously complain of injuries caused by the

---

[3]     *See also Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) ("[Plaintiff] seeks to require this Court to revisit the State Court's foreclosure judgment that resulted in the loss of his property, and to declare that judgment invalid on account of the defendants' allegedly fraudulent actions.  Under *Rooker-Feldman*, however, this Court has no authority to review the . . . judgment.  Nor does the fact that plaintiff alleges that the . . . foreclosure judgment was procured by fraud and conspiracy change that result."); *Zipper v. Todd*, No. 96 Civ. 5198 (WK), 1997 WL 181044, at *3 (S.D.N.Y. Apr. 14, 1997) ("While it is true that plaintiffs never actually raised the federal claims of Section 1983, RICO and SLAPP violations before the state court, *Rooker-Feldman* precludes district court review of claims 'inextricably intertwined' with state court determinations.  The fact that plaintiffs raise new claims under federal statutes does not preclude a finding that they are barred by the *Rooker-Feldman* doctrine.") (internal citation omitted); *Rene v. Citibank NA*, 32 F. Supp. 2d 539, 543 (E.D.N.Y. 1999) (*Rooker-Feldman* applied where plaintiffs asked the court "to review the state court's judgment of foreclosure and eviction, by seeking damages for the loss of their property . . . . "); *Smith v. Wayne Weinberger, P.C.*, 994 F. Supp. 418, 424 (E.D.N.Y. 1998) ( "The fact that the plaintiff alleges that the State Court judgment was procured by fraud does not remove his claims from the ambit of *Rooker-Feldman* ... Smith's claims for conversion are merely a thinly-veiled effort to invalidate the State Court's foreclosure judgment."); *Ashby v. Polinsky*, 328 Fed. Appx. 20 (2d Cir. 2009) *aff'g* No. 06-CV-6778 (DLI), 2007 WL 608268 (E.D.N.Y. Feb. 22, 2007) (*Rooker-Feldman* barred § 1983 claims in response to state court foreclosure order).

state court judgment and invite review and rejection of that judgment," and thus were barred by the *Rooker-Feldman* doctrine.  *Id.*

The *Swiatkowski* Court also examined allegations strikingly similar to those in the SAC. A state-court foreclosure judgment had been entered against the plaintiff and the co-owners of her property.  745 F. Supp. 2d at 158.  The plaintiff subsequently filed a federal action alleging various claims, including RICO, asserting "a pattern of allegedly fraudulent activity" in the foreclosing party's documentation.  *Id.* at 165.  The district court, however, refused to consider the plaintiff's attack on the foreclosure judgment, holding that *Rooker-Feldman* barred those claims.  Indeed, the Court held that plaintiff could not rely upon allegations of fraudulent activity in the foreclosure proceedings or any other allegations of deception.  *Id.* at 166 (citing *Kropelnicki v. Seigel*, 290 F.3d 118, 128 (2d Cir. 2002)).  As the district court explained, the plaintiff's federal court action sought review of the previously obtained, state-court foreclosure judgment, which was the basis of the *Swiatkowski* plaintiff's claims and alleged injury.  *Id.*  The same is true of Plaintiffs' claims and alleged injuries in this case.

Similarly, the district court in Massachusetts considered whether it had subject matter jurisdiction to prevent a foreclosure from proceeding on a Massachusetts property owned by the plaintiff.  *Forsberg*, 2010 WL 4008571, at *2.  The district court held that "to the extent that there is a final order of the state court with respect to foreclosure . . ., this court lacks jurisdiction to review the judgment of the state court, pursuant to the *Rooker-Feldman* doctrine."  *Id.*  The district court explained that "the doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are 'inextricably intertwined' with the state court's decision."  *Id.*; *see also Nott v. Bunson*, No. WMN-09-2613, 2009 WL 3271285 (D. Md. Oct. 9, 2009) (holding that "[c]ourts

have consistently applied the *Rooker-Feldman* doctrine to dismiss claims requesting federal district court review of state court's eviction and foreclosure proceedings").

Plaintiffs' claims in the SAC also rest on allegations that state-court foreclosure judgments were improperly obtained and, therefore, are inextricably intertwined with a request that this Court review the propriety of those judgments.  If there were grounds to contest the propriety of the foreclosures and the resulting judgments, those grounds should have been raised by Plaintiffs before the proper state courts in New York, Massachusetts or Maryland.

For these reasons, Plaintiffs cannot overcome the applicability of the *Rooker-Feldman* doctrine and establish that this Court has jurisdiction to consider Plaintiffs' claims purporting to challenge to state-court foreclosure judgments.  Accordingly, the SAC should be dismissed with prejudice based upon lack of jurisdiction.

        **(b)**       ***Res Judicata* and Collateral Estoppel Preclude Plaintiffs From Asserting That the Foreclosure Judgments Are Invalid.**

There is no allegation in the SAC that any Plaintiff, at any time, in any court of the State of New York, the Commonwealth of Massachusetts or the State of Maryland, sought judicial review of any foreclosing party's standing to foreclose against them, or appellate review of any foreclosure judgments involving them.  The existence of a final judgment presumes that the court issuing that judgment had jurisdiction over the case, and thus that the plaintiff had standing to sue.[4]  Lacking any allegation by Plaintiffs of the existence of any superseding judgments, this

---

[4]     *See Ginther v. Commissioner of Ins.*, 427 Mass. 319, 322 (1998) (Courts in Massachusetts "treat standing as an issue of subject matter jurisdiction."); *Deutsche Bank Nat. Trust Co. v. Francis*, Index No. 10441/09, 30 Misc. 3d 1241(A), 2011 WL 1107080, at *2 (Sup. Ct. Kings County Mar. 25, 2011)) (in a foreclosure matter, where plaintiff lacks standing, the court therefore lacks jurisdiction); *see also* Siegel, *N.Y. Practice* § 136, at 232 (4th Ed.) (in New York, lack of standing amounts to lack of jurisdiction, as plaintiff is "not involved in a genuine controversy").  Maryland courts treat standing and subject matter jurisdiction as separate issues, although they are both threshold matters that concern whether a case can be initiated.  *See Md. Waste Coalition, Inc. v. Maryland Dep't of Environment*, 84 Md. App. 544, 548 (Md. Ct. Spec.

Court must accept each foreclosure judgment (as alleged in the SAC) as *res judicata*; Plaintiffs are collaterally estopped from asserting as fact that their counterparties lacked standing in these matters.[5]

Plaintiffs essentially ask this Court to take judicial notice that with respect to 28 separate judgments of foreclosure, the foreclosing parties all lacked standing to foreclose; that the courts allowed those cases to proceed to final judgment on the merits anyway, and that *all Defendants* (even those not involved in the particular foreclosure(s)) are to blame for *all 28 adverse judgments*. This is much too far-fetched a theory for this Court to accept as a *factual* allegation, let alone as true. Moreover, if Defendants *did* have standing in those completed foreclosure matters and the foreclosures were properly obtained, then Plaintiffs have suffered no compensable injuries. As Plaintiffs provide no other basis but the alleged foreclosures for their purported injuries, the Court should dismiss the SAC with prejudice.

**(c)     Plaintiffs' Claims Against Entities That Played No Role in the Alleged Foreclosure Proceedings Should Be Dismissed.**

In their SAC, Plaintiffs name several entities as defendants that had absolutely no role in the foreclosure proceedings that are the subject of the action. Instead, these defendants were merely the originators of the subject mortgage loans that transferred their interests in the loans prior to the foreclosures and the allegedly wrongful conduct at issue. Specifically, Plaintiffs identify (1) MortgageIT, Inc. as being "involved in a mortgage or foreclosure proceedings relating to Sandra Lapidez and John Lopes," SAC ¶ 47; (2) Cincinnati Federal Savings and Loan

---

App. 1990), *rev'd on other grounds*, 327 Md. 596 (1992) ("Standing is concerned with whether the parties have the right to bring suit. Subject matter jurisdiction is concerned with whether the court has the power to hear a case.").

[5]     *See Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940) (a court's assertion of jurisdiction, "while open to direct review, is *res judicata* in a collateral action").

("Cincinnati Federal") as being "involved in a mortgage or foreclosure proceedings relating to Michael Silver," SAC ¶ 42; and (3) Provident Funding Group ("Provident" and, together with MortgageIT and Cincinnati Federal, the "Originator Defendants") as being "involved in a mortgage or foreclosure proceedings relating to Christine Bernat and Paul Demers."  SAC ¶ 60.

As noted, the entirety of the Plaintiffs' allegations in the SAC relate exclusively to the foreclosure and enforcement of the subject loans, with the possible exception of a single statement that alleges that the mortgages were "designed to be of short duration" – an unsupported allegation based solely on the circumstantial fact that the mortgages described in the action were foreclosed upon, on average, within approximately three years following the origination of the loans.  SAC ¶¶ 109, 138.  Plaintiffs do not identify any causal factor tying the "duration" of the mortgages to the alleged "design" by the originator defendants to have the Plaintiffs default on their loans within a few years, except to state that the mortgages' "brevity … reflects a pattern of coordinated, related and continued activity in furtherance of the defendants' fraudulent scheme."  SAC ¶ 139.

This conclusory allegation is clearly insufficient to satisfy the pleading requirement that a complaint contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Ashcroft*").  In fact, Plaintiffs do not dispute that they defaulted on their loans in that "short" time period, which resulted in the foreclosures now being questioned.  Importantly, there is no dispute that the alleged foreclosure-related actions upon which the SAC is based were not commenced, pursued or concluded by any of the Originator Defendants.  The publicly-available documentary evidence further supports this fact, as it clearly establishes that the Originator Defendants had no role in

15

the foreclosure proceedings with respect to the Lapidez, Lopes, Silver, or Bernat/Demers loans. Specifically:

- In the case of the Lapidez and Lopes loans, it was not MortgageIT but, rather, a subsequent assignee – Wells Fargo – that filed the foreclosure complaints and issued the foreclosure deeds. (*See* Declaration of Michael A. Weiss dated June 20, 2013, ¶¶ 3-8, Exs. B, C, E, F filed contemporaneously in support of MortgageIT and DBAG's Individual Motion to Dismiss the Second Amended Complaint.).

- In the case of the Silver loan, it was not Cincinnati Federal Savings and Loan but rather a subsequent assignee CitiMortgage, Inc. s/b/m/ ABN AMRO Mortgage Group, Inc. that filed the foreclosure complaint and related documents. (See Declaration of Harold F. Damm dated June 20, 2013 ¶¶ 5-6 Exs. A, B and C.).

- In the case of the Bernat/Demers loan, it was not Provident, but, rather, a subsequent assignee – Wells Fargo – that brought the foreclosure complaint. (*See* Declaration of Lisa J. Fried dated June 20, 2013, ¶ 2, Ex. A.)

Thus, it is clear from the publicly-recorded documents that the Originator Defendants were not responsible for the foreclosure of the Lapidez, Lopes, Silver, Bernat/Demers or Schriefer loans. There can be no question, therefore, that the claims brought by those borrowers against MortgageIT (and DBAG, as its parent), Cincinnati Federal, Fremont and Provident should be dismissed.

### (d)    Plaintiffs' Claims Against the Parent Company Defendants Should Be Dismissed.

Plaintiffs' claims against the parent company defendants—Ally, Citibank, Citigroup, DBAG, and JPMC (collectively, the "Parent Company Defendants")—fail because Plaintiffs do not allege any basis for the Court to pierce their respective corporate veils and hold the Parent Company Defendants liable for the alleged acts of their subsidiaries.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). "Disregard of the

corporate form is warranted only in 'extraordinary circumstances,' and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Société d'Assurance de l'Est SPRL v. Citigroup, Inc.*, No. 10-civ-4754 (JGK), 2011 U.S. Dist. LEXIS 103375, at *14 (S.D.N.Y. Sept. 13, 2011) (citing *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 511-12 (S.D.N.Y. 2005)); *see also McCloud v. Bettcher Indus., Inc.*, 90 A.D.3d 1680, 1681, 935 N.Y.S.2d 815, 816 (4th Dep't 2011) ("It is well settled that 'liability can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary.") (citations omitted).

In *Société d'Assurance*, the plaintiffs brought a breach of contract claim against Citigroup Congo S.A.R.L. ("CitiCongo"); its parent, Citibank; and Citibank's parent, Citigroup.  The plaintiffs sought to pierce the corporate veil with respect to Citigroup and Citibank, alleging, among other things:

- "Citigroup Congo was formed by Citigroup and Citibank for the sole purpose of seeking to limit its liability for and carrying out its illegal activities in the DR-Congo," 2011 U.S. Dist. LEXIS 103375, at *16;

- "Citigroup Congo has 'no independence in its operations and operates[] under the direct dominion and control of Defendants Citigroup and Citibank,'" *id.*;

- "Citigroup Congo is 'a shield by which Citigroup and Citibank seek to deflect liability,' in misuse of the corporate form," *id.*;

- "Citigroup Congo took the actions that underlie the plaintiffs' claims 'at the behest of,' 'on the authority of,' or 'at the direction of' Citigroup and Citibank," *id.*; and

- "Citibank operates its foreign offices as if they were branches," *id.*.

The Court found the plaintiffs' allegations to be "bare assertions, offered without support or elaboration" and "entitled to no weight." *Id.*  Further, the Court stated:

> Notably, [the plaintiffs] do not allege that Citigroup Congo failed to observe corporate formalities, that it was inadequately capitalized; that its funds or property were intermingled with those of Citibank; that it did not have discretion to carry out its corporate

17

> affairs, that it did not transact with Citibank at arms' length; that
> Citibank paid or guaranteed its debts; or any of the other facts that
> might warrant a finding that Citigroup Congo was a mere alter ego
> of Citibank, and that its corporate form should thus be disregarded.

*Id.* at *17.  Accordingly, the Court granted Citigroup and Citibank's motion to dismiss.  *Id.* at *24.

In this action, Plaintiffs seek to pierce the corporate veil of the Parent Company Defendants based on far less than the allegations rejected by the Court in *Société d'Assurance*. Plaintiffs do not allege any facts to demonstrate that corporate formalities have been ignored, the subsidiary defendants were inadequately capitalized, funds or property were intermingled, or any of the other facts that might warrant a finding that the subsidiary defendants were mere alter egos of the Parent Company Defendants.  Instead, Plaintiffs' veil-piercing theory is based either on the conclusory allegations that the Parent Company Defendants "exercised dominion" over their subsidiary defendants or allegations that are legally insufficient.  *See* SAC ¶¶ 194-96.

For example, Plaintiffs' claims against JPMC are based solely on the allegation that JPMC was involved in "mortgage or foreclosure proceedings" related to two of the plaintiff groups "[t]hrough a current or prior subsidiary or business arm known as Chase Home Finance." *Id.* ¶ 54.  With regard to Citibank, Plaintiffs allege merely that it shares space and offers services alongside CitiMortgage and in a document referring to Citibank and Citigroup uses the abbreviation, "Citi."  *Id.* ¶ 194.  Similarly, Plaintiffs allege that DBAG "lists DBTNC's address as one of Deutsche Bank's California office locations," that "the phone number provided as Deutsche Bank's contact for mortgage-backed securities is DBNTC's phone number," that "DBNTC and Deutsche Bank share the same telephone number area code and initial four-number exchange," and that, "[o]n the FDIC website, DBTC's corporate website is listed as

Deutsche Bank's website." *Id.*[6]  None of these allegations demonstrates that the subsidiaries were mere alter egos of the Parent Company Defendants.

Accordingly, because Plaintiffs have failed to demonstrate the "extraordinary circumstances" necessary to disregard corporate form, their claims against the Parent Company Defendants should be dismissed in their entirety and with prejudice.

**(e)      Multiple Plaintiffs' State and Federal Claims Are Barred by the Applicable Statutes of Limitations.**

Many Plaintiffs' claims must also be dismissed as they are time-barred by the applicable statutes of limitations.  As further explained below, each of Plaintiffs' state consumer protection, RICO, and common law fraud claims accrued at the time when the Plaintiffs discovered or should have discovered their injury.  Plaintiffs allege that they were injured when "[D]efendants' acts extinguished plaintiffs' property interests and legal protections intended to protect those interests" by instituting foreclosure proceedings.  *E.g.*, SAC ¶¶ 212, 320.  The dates of the foreclosure complaints filed against and served on Plaintiffs are alleged in the SAC.  *Id.* ¶ 138.  These foreclosures both caused the alleged injury and put Plaintiffs on notice of their alleged injury.  As this action was filed on November 26, 2012, much later than the dates alleged in the SAC, the statute of limitations periods for many of the claims asserted by the Plaintiffs have expired.

*(1)      Multiple Plaintiffs' RICO Claims Are Time-Barred.*

Many Plaintiffs are barred by the statute of limitations from asserting their RICO claims. *See* SAC ¶¶ 197-321 (Claims I-IX).  The statute of limitations for a civil RICO claim under 18

---

[6]      Plaintiffs do not make any specific allegations whatsoever regarding DBAG's alleged "dominion" over MortgageIT, relying only on a generalized allegation that "both DBNTC and MortgageIT engaged in a pattern of conduct in furtherance of defendant's fraudulent scheme." *Id.*

U.S.C. § 1964(c) is four years.  *See Frankel v. Cole*, 313 Fed. Appx. 418, 419 (2d Cir. 2009);

*Bernstein v. New York*, 591 F. Supp. 2d 448, 461 (S.D.N.Y. 2008).  The limitations period begins

to run when the plaintiff discovers or should have discovered the alleged RICO injury.  *Frankel*,

313 Fed. Appx. at 419.  Therefore, the RICO claims of those Plaintiffs whose alleged foreclosure

complaints were filed on or before November 25, 2008 are time-barred and should be dismissed

with prejudice.[7]  *See Sammarco v. Big Apple Car, Inc.*, No. 08 Civ. 4099(BMC)(LB), 2008 WL

5111124, at *1 (E.D.N.Y. Dec. 4, 2008) ("The RICO claim is dismissed as barred by the four-

year statute of limitations.") (citing *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483

U.S. 143, 156 (1987)).

### (2)    *Multiple Plaintiffs' State Consumer Protection Claims Are Time-Barred.*

Plaintiffs' claims that the Defendants' conduct violated New York, Massachusetts, and

Maryland consumer protection statutes are also largely barred by the applicable statutes of

limitations.  SAC ¶¶ 322-330, 337-348, 355-363 (Claims X, XII, and XIV, asserting causes of

action pursuant to N.Y. Gen. Bus. Law § 349(a); Mass. Gen. Laws ch. 93A §§ 2, 9; and Md.

Code §§ 13-301, 13-303).

Claims brought pursuant to N.Y. Gen. Bus. Law § 349(a) must be brought within three

years of accrual.  *M & T Mortg. Corp. v. Miller*, No. 02 Civ. 5410, 2009 WL 3806691, at *1

(E.D.N.Y. Nov. 13, 2009) (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 727

N.Y.S.2d 30 (2001)).  Such claims accrue "when plaintiff has been injured by a deceptive act or

practice violating section 349."  *Gaidon*, 96 N.Y.2d at 210, 727 N.Y.S.2d at 35.  Similarly,

---

[7]    These include Plaintiffs Babb, Barbosa, Grillo, Hogan, Jones, Pariseau, Ryan, Terzis, Troske and Zicaro.  *See* SAC ¶ 138.  Therefore, all RICO claims against Flagstar, USB, First Franklin, PNC, DBAG and DBNTC  must be dismissed as time-barred, and some of the RICO claims against Wells Fargo, Ocwen Financial, Bank of America, Countrywide, JPMC and Chase, and Aurora must also be dismissed as time-barred.

Maryland consumer protection claims must be asserted within the default three-year period under Maryland law for statutory civil actions.  *Smith v. Capital One Auto Fin., Inc.*, CIV. JKB-11-1023, 2011 WL 3328565, at *4 (D. Md. Aug. 2, 2011); *Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*, 358 Md. 453, 480 (2000).  Therefore, the consumer protection claims of the New York and Maryland Plaintiffs whose alleged foreclosure complaints were filed on or before November 26, 2009 are time-barred.[8]

"The limitations period for chapter 93A actions [in Massachusetts] is four years from injury."  *Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 326 (1st Cir. 2013).  Therefore, the consumer protection claims of the Massachusetts Plaintiffs whose foreclosure complaints were filed on or before November 26, 2008 are time-barred.[9]

### (3)    *Multiple Plaintiffs' Common Law Fraud Claims Are Time-Barred.*

The Eleventh, Thirteenth, and Fifteenth claims of the SAC allege common law fraud under New York, Massachusetts, and Maryland law, respectively.  The Massachusetts and Maryland fraud claims must be dismissed as time-barred with respect to many of the Plaintiffs.[10]

---

[8]      These include Plaintiffs Crofoot, Hogan, Jorgensen and Troske.  Therefore, all the consumer protection claims against Capital One, First Franklin, PNC, JPMC and Chase must be dismissed as time-barred, and some of the consumer protection claims against DBAG, DBNTC, USB and Wells Fargo must also be dismissed as time-barred.

[9]      These include Plaintiffs Babb, Barbosa, Grillo, Jones, Pariseau, Ryan, Terzis and Zicaro.  Therefore, all the consumer protection claims against Flagstar, DBAG and DBNTC, and JPMC and Chase must be dismissed as time-barred, and some of the consumer protection claims against Wells Fargo, Ocwen Financial, USB, Bank of America, Countrywide, and Aurora must also be dismissed as time-barred.

[10]      Under New York law, parties have "six years in which to bring fraud-based claims."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12 Civ. 3723 RJS, 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013).  As no Plaintiff has alleged a foreclosure filing date prior to November 26, 2006, Defendants do not argue that any New York Plaintiffs' claims should be dismissed as time-barred.

In Massachusetts, there is a three-year statute of limitations for actions in fraud, which accrues when "the plaintiff knows, or should have known, that she has been harmed by the defendant's conduct."  *Neuro-Rehab Assocs., Inc. v. Amresco Commercial Fin.*, LLC, No. CIVA 05-12338 GAO, 2007 WL 2219309, at *2 (D. Mass. July 31, 2007); *see Jolicoeur v. Southern New England Sch. of Law*, 104 F. Appx. 745, 746 (1st Cir. 2004).  Maryland similarly has a three-year statute of limitations for fraud claims that accrues upon discovery of the alleged fraud.  *See Asafo-Adjei v. First Sav. Mortg. Corp.*, RWT 09CV2184, 2011 WL 344613, at *4 (D. Md. Feb. 1, 2011), *aff'd*, 444 F. Appx. 637 (4th Cir. 2011).  Therefore, all fraud claims by Massachusetts and Maryland Plaintiffs whose alleged foreclosure complaints were filed prior to November 26, 2009 are time-barred and must be dismissed.[11]

## II.     PLAINTIFFS' CLAIMS FAIL ON THE MERITS.

### (a)     Plaintiffs' MERS- and Foreclosure-Related Claims Are Meritless.

Even if this Court does exercise jurisdiction over this case, courts in New York, Massachusetts, Maryland and elsewhere have regularly rejected arguments, such as those advanced by Plaintiffs here, that challenge foreclosure proceedings because MERS was identified in the mortgage as the lender's nominee and assigned its interests in the mortgage.  *See, e.g.*, *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013).  Plaintiffs only vaguely allege that, because MERS may have been used to assign interests in their mortgages, any foreclosing party must have lacked standing to foreclose against them and thus could only have procured judgment by fraud.  *See* SAC ¶¶ 190-193.  This contention has no legal merit, and

---

[11]     These include Plaintiffs Babb, Barbosa, Grillo, Jones, Karl and Oksana Jorgensen, Lapidez, Lopes, James McGough and Priscilla McGough, Pariseau,  Ralston, Ryan, Terzis, Thurott, Weber, Williams, and Zicaro.  Therefore, all fraud claims against Ally, Aurora, Flagstar, MortgageIT, DBAG (as parent of MortgageIT), JPMC and Chase must be dismissed as time-barred, and some of the fraud claims against Bank of America, Countrywide, Ocwen Financial, USB and Wells Fargo must also be dismissed as time-barred.

Plaintiffs fail to plead even remotely sufficient facts to support it.  The existence or use of MERS

does not *per se* indicate that any foreclosure plaintiff lacked standing to foreclose or did so

fraudulently, and Plaintiffs plead no additional or specific facts to establish any of their

respective foreclosure counterparties' purported lack of standing in those cases.[12]

### (1)     *Courts Have Repeatedly Upheld MERS's Ability to Assign Interests in Mortgages Pursuant to Its Agreement and Relationship with the Lender.*

Those Plaintiffs who now complain about MERS having been the mortgagee on their

mortgages cannot dispute that New York law has long permitted parties to assign their rights in

contracts.  *Matter of Stralem*, 303 A.D.2d 120, 122, 758 N.Y.S.2d 345, 347 (2d Dep't 2003)

("Under New York law, contracts are freely assignable absent language which expressly

prohibits assignment.").  New York law is likewise clear on the point that the terms of a

mortgage identifying MERS as the lender's nominee create an agency relationship between

MERS and the lender (and the lender's successors and assigns) that includes the right to assign

the mortgage.[13]  The use of MERS, therefore, does not by itself preclude standing to foreclose in

---

[12]     As discussed above, under the *Rooker-Feldman* doctrine this Court may not conduct a quasi-appellate review of those cases even if Plaintiffs did seek such review. *See supra* § I. Yet Plaintiffs cannot prevail without such review, or an arbitrary declaration by this Court that the foreclosing entities lacked standing in those matters. *See infra* § I(b).  If the foreclosing entities *did* have standing, then Plaintiffs still state no claims that entitle them to relief.

[13]     *See, e.g., Bank of New York Mellon Trust Co. N.A. v. Sachar*, 95 A.D.3d 695, 696, 943 N.Y.S.2d 893, 893 (1st Dep't 2012) (holding that "Mortgage Electronic Registration System (MERS) validly assigned the mortgage to plaintiff"); *Saxon Mortg. Servs., Inc. v. Coakley*, 83 A.D.3d 1038, 1039, 921 N.Y.S.2d 552, 553 (2d Dep't 2011) ("MERS was free to assign the note and mortgage, absent any language which expressly prohibited the assignment."); *U.S. Bank, N.A. v. Flynn*, 27 Misc. 3d 802, 806, 897 N.Y.S.2d 855, 858-59 (Sup. Ct. Suffolk County 2010) ("[W]here, as here, an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and the mortgage by MERS, in its capacity as nominee, confers good title to the assignee.").

New York.[14] Similarly, courts in Massachusetts[15] and Maryland[16] have rejected claims that assignments of mortgage interests using MERS necessarily deprive the foreclosing party of standing to foreclose.

---

[14]     *See, e.g., Mortgage Elec. Registration Sys., Inc. v. Coakley,* 41 A.D.3d 674, 674-75, 838 N.Y.S.2d 622, 623-24 (2d Dep't 2007) ("Pursuant to the clear and unequivocal terms of the mortgage instrument, [borrower] expressly agreed without qualification that MERS had the right to foreclose upon the premises in the event of a default"); *Deutsche Bank v. Pietranico*, 33 Misc. 3d 528, 551, 928 N.Y.S.2d 818, 834 (Sup. Ct. Suffolk County 2011), *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2d Dep't 2013) (under New York law, the role of MERS as nominee for the lender "is not an impediment to plaintiff's standing to bring a foreclosure action, particularly where the borrower expressly agreed without qualification that MERS had the right to foreclose in the event of a default").

[15]     *See, e.g., Rosa v. Mortgage Elec. Registration Sys.*, 821 F. Supp. 2d 423, 429-30 (D. Mass. 2011) ("In Massachusetts, courts have generally held that MERS may both foreclose and assign mortgages held in its name. … If MERS is named as mortgagee in a recorded mortgage, it is authorized to conduct a foreclosure by power of sale pursuant to Mass. Gen. Laws. ch. 244, § 14.") (internal quotation marks omitted); *In re Marron*, 455 B.R. 1, 5-6 (Bankr. D. Mass. 2011) (collecting cases); *Kiah v. Aurora Loan Servs., LLC*, No. 10-40161-FDS, 2011 WL 841282, at *3 (D. Mass. Mar. 4, 2011) (rejecting Plaintiffs' argument of wrongful foreclosure where "[t]he plain language of the mortgage … states that MERS was acting as nominee for [the original lender] and its 'successors and assigns.'"); *Deutsche Bank Nat'l Trust Co. v. Ciccheli*, Nos. 10 MISC. 423350(AHS), 10 MISC 436809(AHS), 2011 WL 3805905, at *4 (Mass. Land Ct. Aug. 24, 2011) (Following *Kiah*, borrowers' "argument that MERS was unable to assign the Mortgage to [plaintiff] because MERS lacks the capability to assign mortgages must fail."); *BAC Home Loans Servicing, LP v. Kay*, No. 10-Misc-428719, 2010 Mass. LCR LEXIS 135, at *5 (Mass. Land Ct. Dec. 22, 2010) ("[A]s mortgagee . . . MERS had the authority to assign the mortgage without need to demonstrate the direction of its principal, and its assignee had the right to rely on that authority.").

[16]     *See, e.g.*, *Anderson v. Burson*, 35 A.3d 452, 464 (Md. 2011) (affirming enforcement of default of securitized loan with unendorsed note, where MERS was listed as the nominee in the mortgage and transfer history was established); *Shabazz v. Ocwen Loan Servicing, LLC*, No. JFM-12-3324, 2013 U.S. Dist. LEXIS 2739, at *2 (D. Md. Jan. 8, 2013) (acknowledging that use of MERS is proper and assignments made using MERS are valid); *Blum v. Fremont Inv. & Loan*, No. WMN-12-57, 2012 WL 2137962, at *3 (D. Md. June 12, 2012) (same); *Maheu v. Bank of America, N.A.*, No. ELH-12-508, 2012 WL 1744536, at *7 (D. Md. May 14, 2012) (rejecting plaintiffs' claim that MERS lacked authority to assign Deed of Trust); *Suss v. JP Morgan Chase Bank, NA*, No. WMN-09-1627, 2010 WL 2733097, at *5 (D. Md. July 9, 2010) (finding no merit in plaintiff's criticism of MERS; "the system of recordation is proper and assignments made through that system are valid").

Notably, the First Circuit recently affirmed the dismissal of an action premised on the argument that a foreclosure was ineffective where, like here, MERS had been designated the holder of the mortgage in the mortgage contract, served as nominee for the lender, and assigned the mortgage to the foreclosing entity prior to foreclosure.  *Culhane*, 708 F.3d 282.  Courts around the country have reached the same conclusion.[17]

Because MERS is not inherently unlawful, Plaintiffs fail to allege that MERS, its existence, or its general use by Defendants standing alone constitutes a "fraudulent scheme." Nor do Plaintiffs allege any specific facts to suggest Defendants misused the MERS system with respect to their loans.   Plaintiffs provide no specific facts with respect to any assignment(s) of their loans involving any Defendant or MERS, or any Defendant's actual specific use(s) of MERS, and they therefore fail to allege that Defendants participated in any such "scheme" to acquire standing, wrongfully or otherwise, to foreclose on their properties.

> **(2)** ***Plaintiffs Fail to Allege That Any Foreclosure Judgments Against Them Were Wrongful or Procured by Fraud.***

Plaintiffs set forth no legal or factual basis for any Defendant's purported lack of standing in any foreclosure matter.  The SAC fails to allege any specific facts pertaining to any

---

[17]   *See, e.g., Coyer v. HSBC Mortg. Servs.*, No. 10-14339-BC, 2011 WL 6181916, at *3 (E.D. Mich. Dec. 13, 2011), *aff'd*, 701 F.3d 1104 (6th Cir. 2012) (any assignee of MERS would have rights MERS held under the mortgage); *Henkels v. J.P. Morgan Chase*, No. CV 11-0299-PHX-JAT, 2011 WL 2357874, at *6 (D. Ariz. June 14, 2011) ("Plaintiff's unsupported challenge to the legitimacy and authority of the MERS system and its speculative assertion that MERS did not have authority to assign the Deed of Trust have repeatedly been rejected"); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("MERS . . . may assign its beneficial interest to another party" and collecting similar California cases.); *Witt v. CIT Group/Consumer Fin., Inc.*, 2010 U.S. Dist. LEXIS 117915, No. 2:10-CV-440 TS, at **7-8 (D. Utah Nov. 5, 2010) (MERS may assign its interest because "rights under a contract are freely assignable unless precluded by contract, forbidden by statute, or where the assignment would materially alter the duties and rights of the obligor"); *Jackson v. Mortgage Elec. Registration Sys.*, 770 N.W.2d 487 (Minn. 2009) (approving of the MERS system generally and upholding MERS's power to assign and foreclose); *Taylor v. Deutsche Bank Nat'l Trust Co.*, 44 So. 3d 618, 623 (Fla. Dist. Ct. App. 2010) (MERS may assign its interest in mortgage).

foreclosure involving any Defendant, nor does it set forth the date of, or parties to, any assignment of their mortgages, by MERS or anyone else. Plaintiffs concede that the Grillo, Jones, Jorgensen, Ryan, Schriefer and Silver mortgages did not name MERS. SAC ¶ 209. Plaintiffs set forth no specific allegation that these non-MERS mortgages were assigned, let alone when or by whom, nor do they set forth any independent, non-MERS-related basis for these Plaintiffs' foreclosure counterparties having purportedly lacked standing to foreclose.

Apart from the Troske, SAC ¶¶ 79-86, and Zicaro, SAC ¶¶ 87-100, examples, Plaintiffs allege only that each Defendant was "involved in a mortgage or foreclosure proceedings relating to" one or more of them, and provide the dates of their mortgages and the dates on which foreclosure complaints were filed. SAC ¶¶ 37-63, 138. They do not provide any information about those proceedings or judgments, nor do they provide, identify or describe any documents they allege Defendants filed containing "fraudulent" information. Plaintiffs set forth no facts whatsoever to demonstrate that any of their individual foreclosure counterparties lacked standing to foreclose on their individual mortgages, or acquired such standing by illegal means. The allegations regarding foreclosure actions involving Defendants are therefore so vague and conclusory as to be entirely meaningless.

In the few instances in which Plaintiffs offer some minimal amount of detail, they nevertheless are wrong on the law. The chief problems they cite in connection with Plaintiff Troske's case are that (a) MERS was characterized in a publicly-recorded mortgage assignment as "nominee" as opposed to "mortgagee," SAC ¶ 117; (b) the assignment was "purportedly effected by Elpinki Bechakas" a "robo-signer," *id.* ¶ 118; and (c) "the note was never assigned to U.S. Bank," *id.* ¶ 121. As an initial matter, and as noted above, there is nothing unusual about MERS' being characterized alternatively as "nominee" or "mortgagee". *See MERSCORP v.*

*Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006) (under the MERS System, the "initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's *nominee or mortgagee* of record on the instrument") (emphasis added).  In addition, Plaintiffs' arguments regarding Ms. Bechakas have been specifically addressed by other courts that repeatedly have found there to be nothing improper about a mortgage assignment executed by Ms. Bechakas, who was an appropriately designated officer of MERS.  *See e.g.*, *HSBC Mortg. Corp. (USA) v. Morocho*, Index No. 28995/08, 31 Misc. 3d 1237(A), 2011 WL 2200471 (Sup. Ct. Queens County May 24, 2011), *aff'd*, 106 A.D.3d 875, 965 N.Y.S.2d 570 (2d Dep't 2013). Ms. Bechakas therefore had the authority to execute the Assignment and her doing so to assign other mortgages under similar circumstances has been upheld.  *See*, *e.g.*, *Wells Fargo Bank NA v. Bradley*, Index No. 233421/10, at p. 4-5 (Sup. Ct. Rensselaer County July 8, 2011) (decision/order) (finding nothing improper about the assignment of a mortgage by Bechakas on behalf of MERS prior to Bechakas's firm commencing an action to foreclose that mortgage); *Wells Fargo Bank, N.A. v. Taormina*, Index No. 3469/2009, at p. 3 (Sup. Ct. Queens County Sept. 27, 2011) (short form order) (holding that although Bechakas was an employee of the law firm that commenced the foreclosure action, as an officer of MERS she had been authorized to assign the underlying mortgage in the action, which was registered to Wells Fargo on MERS); *U.S. Bank Nat'l Ass'n v. Boersma*, Index No. 6265/2009, at p. 3 (Sup. Ct. Orange County July 20, 2012) (Order);[18] *see also Formal Op. # 847*, N.Y. State Bar Ass'n, Comm. on Prof'l Ethics ¶ 14 (Dec. 21, 2010) ("An attorney may represent the beneficial owner of a mortgage note and mortgage, and concurrently serve as an officer of

---

[18]     The Decisions/orders issued in *Wells Fargo Bank NA v. Bradley*, *Wells Fargo Bank, N.A. v. Taormina*, and *U.S. Bank Nat'l Ass'n v. Boersma* and cited herein are annexed hereto as Addendum A.

the mortgagee of record, for the purposes of executing a mortgage assignment to the beneficial owner and prosecuting a mortgage foreclosure action in the assignee's name."). Finally, the fact of the note's never having been assigned to USB, even if true, would not render USB's subsequent commencement of foreclosure proceedings improper. While it is true that an assignment of the note to USB would have enabled USB to initiate subsequent foreclosure proceedings, physical delivery of the note would have enabled USB to do so as well. *See U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 753, 890 N.Y.S.2d 578, 580 (2d Dep't 2009) ("Either a written assignment of the underlying note *or the physical delivery of the note* prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident") (emphasis added). The Complaint nowhere acknowledges the possibility that the note could have been physically delivered to USB.

As to Plaintiff Zicaro, Plaintiffs allege, in conclusory fashion, that a foreclosure conducted by Wells Fargo was "invalid" because Wells Fargo "was not the actual holder of the mortgage by way of assignment at the time of notice and sale."[19] SAC ¶ 134. It is not clear, based on Plaintiffs' vague allegations, precisely how they believe the Zicaro foreclosure to have been defective. To the extent that they allege some defect in a trust-to-trust transfer of the mortgage loan, they do not indicate when the supposed second transfer took place, making it impossible to assess the potential consequences of the allegation. If they instead are attacking the assignment of the mortgage to Wells Fargo on the basis of supposed "robo-signing" (SAC ¶ 135), that allegation is wholly unsupported and therefore should be discounted altogether.

---

[19]    Plaintiffs also appear to allege liability predicated on the allegedly invalid foreclosure as against Ocwen Financial, based upon its alleged post-foreclosure purchase of Zicaro's former servicer, HomeEq Servicing. Notably, however, Ocwen Financial is not alleged to have taken any action or had any involvement in the foreclosure at all. SAC ¶¶ 124-137; *see also* Section I.(c) *supra*. Indeed, Ocwen Financial is not alleged to have "purchased" HomeEq Servicing until 2010, well after the Zicaro foreclosure completed.

Moreover, to the extent that Plaintiffs attempt to challenge the assignment of the Zicaro mortgage by alleging non-compliance with certain securitization-related agreements (*see* SAC ¶¶ 125-127), Plaintiffs lack standing to bring these arguments.  *See Jepson v. HSBC Bank USA, Nat'l Ass'n*, No. 12-12179-LTS, 2013 WL 639184, at *5 (D. Mass. Feb. 20, 2013) ("both state and federal courts in Massachusetts have uniformly held that mortgagors may not attack an assignment based on alleged failures to comply with PSAs"); *Springer v. Deutsche Bank Nat'l Trust Co.*, No. 10 MISC 432307 (HMG), 2013 WL 139558, at *3 (Mass. Land Ct. Jan. 11, 2013) (borrower lacked standing to challenge assignment of note and mortgage as allegedly contravening the terms of a PSA); *In re Correia*, 452 B.R. 319, 325 (B.A.P. 1st Cir. 2011).  Even assuming that Plaintiffs had standing, Plaintiffs here rely on nothing more than the conclusory allegation that "the Zicaro Mortgage appears to have remained [in] the 2006-1 Trust."  SAC ¶ 134.  Such unadorned allegations are insufficient to satisfy the federal pleading requirements and should be rejected.  *See Iqbal*, 556 U.S. at 678.  It bears repeating that Zicaro nowhere alleges either that he did not default on his mortgage loan or that he sought to challenge the foreclosure but was prevented from doing so.

       **(b)**     **The Second Amended Complaint Fails to State a Cognizable Claim for Relief Under RICO.**

In their RICO claims,[20] Plaintiffs' *factual* allegations include that some or all Defendants participated in the MBA and MERS, SAC ¶¶ 199, 301, issued mortgages with MERS as a nominee, beneficiary, or mortgagee, *id*. ¶ 209, filed documents relating to foreclosure proceedings against Plaintiffs, *id*. ¶¶ 211, 236, used accounting standards contained in FASB Statement 140, ¶¶ 310-311, submitted quarterly income statements to the FDIC, *id*. ¶¶ 312-315, and received financial benefits from mortgages and foreclosures (*id*. ¶¶ 210, 235, 316).  These

---

[20]     *See* SAC ¶¶ 197-321.

are all standard, proper actions for financial institutions to take.  Plaintiffs therefore in no way

plead a cognizable "enterprise" or predicate act that qualifies as "racketeering activity" under the

RICO statute.  Plaintiffs' RICO allegations are insufficient, vague, and conclusory, and should

therefore be dismissed with prejudice.

A civil RICO plaintiff must plead: "(1) conduct (2) of an enterprise (3) through a pattern

(4) of racketeering activity."  *Bernstein v. New York*, 591 F. Supp. 2d 448, 461 (S.D.N.Y. 2008)

(internal citations omitted).  The Court should dismiss the SAC because it fails to plead predicate

acts that qualify as "racketeering activity," fails to plead an "enterprise" cognizable under the

statute, and fails to plead proximate causation.  During its consideration, the Court should also be

mindful of the devastating effect an assertion of RICO claims may have on the targeted

defendants.[21]  *Id.*

### *(1)     The SAC Fails to Plead Actionable Racketeering Activity.*

Plaintiffs' RICO claims are initially defective because they fail to plead a predicate

pattern of racketeering activity cognizable under the statute.  The Supreme Court has elaborated

that the racketeering activities constituting a predicate act must "amount to or pose a threat of

continued criminal activity."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239

(1989).  The SAC attempts to establish that Defendants committed mail and wire fraud in

violation of 18 U.S.C. § 1961(1)(B), which requires Plaintiffs to show that defendants used the

---

[21]     *See also Weizmann Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 245 (S.D.N.Y. 2002)
("Because the mere assertion of a civil RICO claim has an almost inevitable stigmatizing effect
on those named as defendants courts should strive to flush out frivolous RICO allegations at an
early stage of the litigation.") (internal citations omitted); *Goldfine v. Sichenzia*, 118 F. Supp. 2d
392, 394 (S.D.N.Y. 2000) (observing that courts "must be wary of putative civil RICO claims
that are nothing more than sheep masquerading in wolves' clothing"); *Schmidt v. Fleet Bank,* 16
F. Supp. 2d 340, 346 (S.D.N.Y.1998) (noting that because civil RICO "is an unusually potent
weapon-the litigation equivalent of a thermonuclear device ... courts must always be on the
lookout for the putative RICO case that is really nothing more than an ordinary fraud case
clothed in the Emperor's trendy garb").

mail or wires "for the purpose of executing" a "scheme or artifice to defraud."  18 U.S.C. §§ 1341, 1343.  While the SAC provides a protracted list of all of the instances that Defendants allegedly used the mail or wires to transfer information about Plaintiffs' loans, SAC ¶ 162, it offers only vague, unsubstantiated assertions about how these alleged actions furthered any "scheme or artifice to defraud."[22]  These allegations fall far short of meeting the heightened pleading standard applied to fraud-based RICO claims.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Therefore, "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184-85 (2d Cir. 2008) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)); *see also Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (fraud-based "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements") (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).  Plaintiffs must also allege "the specific intent to deceive necessary to support the predicate acts" of mail and wire fraud.  *McRae v. Norton*, No. 11–CV–2707 (KAM)(SMG), 2011

---

[22]     *See* SAC ¶¶ 105 ("MERS enabled the mortgage industry and defendants to gloss over [] deficiencies and irregularities for the purposes of buying, selling and transferring mortgages and expediting foreclosures."), 110 ("[D]efendants engaged in fraudulent conduct that included: … preparing, executing, notarizing or presenting false or misleading documents…"), 158 ("Defendants have willfully and knowingly mailed or caused to be mailed numerous mailings in furtherance of their scheme to deceive borrowers, courts and the public in relation to mortgages and in order to unlawfully foreclose on homes."), 159 ("Defendants have willingly and knowingly transmitted or caused to be transmitted data, information or documents over the wires in furtherance of their scheme to deceive borrowers…").

WL 3625569, at *3 (E.D.N.Y. Apr. 11, 2011); *see also U.S. Fire Ins. Co. v. United Limousine*

*Serv., Inc.,* 303 F. Supp. 2d 432, 442 (S.D.N.Y. 2004) ("Because these allegations are predicated

on mail and wire fraud ... the circumstances of fraud or mistake shall be stated in particularity as

specified by Rule 9(b).").

 The SAC does not identify a single allegedly fraudulent statement made by any

defendant.  Instead, it generically states that Defendants "accelerated foreclosures with filings

containing misrepresentations designed to cover up deficiencies inherent" in their allegedly

fraudulent scheme.  SAC ¶ 109.  In the "Racketeering Acts Table," ¶ 162 of the SAC, Plaintiffs

purport to identify every allegedly fraudulent mail or wire transaction made by each defendant,

yet allege no facts to indicate that the transactions were fraudulent or part of a fraudulent

scheme.  For example, in SAC ¶ 162 number 10, Plaintiffs allege that Defendant Bank of

America:

> caused to be deposited for the purpose of being sent or delivered by the Postal
> Service or a private or commercial carrier, or caused to be transmitted by means
> of wire, documents concerning the plaintiff [Ferris]'s mortgage from a location in
> California to a location in Massachusetts, and/or documents including an affidavit
> regarding facts relating to the plaintiff's mortgage, from Newton, Massachusetts
> to a location in Hampden County, Massachusetts [sic].

This entry, like all of the other entries in the Table, depicts perfectly legal activity, and therefore

cannot describe a predicate "racketeering act" for the purpose of a RICO claim.[23]  *Purchase Real*

---

[23] Further, there are no "Racketeering Act Table" entries whatsoever for
defendants Countrywide, Citigroup, Inc. or Citibank, N.A., acting on their own
behalf, and entries in the table concerning the remaining defendants do not set forth fraudulent
conduct.  *See* SAC ¶ 162, nos. 4-9 (alleging that Aurora sent by mail or transmitted by wire
mortgage documents, affidavits, mortgage assignments, and loan money), 10-24 (alleging that
Bank of America sent by mail or transmitted by wire mortgage documents, affidavits, mortgage
assignments, and loan money), 29-33 (alleging that CitiMortgage, Inc. sent by mail or
transmitted by wire mortgage related documents, affidavits and loan money), 57-60 (alleging that
MortgageIT sent by mail or wire "documents reflecting" the Lapidez and Lopes mortgages to
MERS and/or to "a location in Wyoming"), 67-69 (alleging that First Franklin sent by mail or

*Estate Grp. Inc. v. Jones*, No. 05 Civ. 10859, 2010 WL 3377504, at *12 (S.D.N.Y. Aug. 24, 2010) (dismissing RICO claim because "[e]ach of these acts, as alleged, is legal, and thus cannot constitute a continued threat of criminal activity"); *see also Boritzer v. Calloway*, No. 10 Civ. 6264(JPO), 2013 WL 311013, at *8 (S.D.N.Y. Jan. 24, 2013) ("[A]s a general rule, even where a complaint directly references various wire or mail transactions, if the allegations of a scheme to defraud are themselves deficient, there will be no plausible claim sounding in fraud.").

Plaintiffs similarly fail to provide any substantive allegations of intent to defraud. Plaintiffs merely state repeatedly that Defendants' "conduct was willful and with full knowledge of the fraudulent scheme."  SAC ¶¶ 207, 221, 232, 245, 257, 269, 281, 293, 309.  But "[a]

---

transmitted by wire loan money, a mortgage assignment, and "a purported assignment relating to a mortgage extended by Martin and Janice Hogan, to a location in Pittsburgh, PA").

To the extent that Plaintiffs attempt to allege in the Ninth Claim that Defendants improperly used FASB Statement 140, Plaintiffs themselves acknowledge that Defendants used accounting methods designed by the FASB.  *See* SAC ¶¶ 91, 93.

To the extent Plaintiffs attempt to base a claim on speculations of "robo-signing," SAC ¶¶ 30, 77, 81, 98, 105(c), 130, 136, their attempt fails both as a matter of law and because they offer no factual support for such a claim.  *See, e.g., Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011) (declining to take judicial notice of alleged "robo-signing" practices); *Cerecedes v. U.S. Bancorp*, No. cv 11-219, 2011 WL 2711071, at *5 (C.D. Cal. July 11, 2011) ("Rule 9(b) and *Twombly* require plaintiffs to set forth more than bare allegations of 'robo-signing' without any other factual support."); *Sembly v. U.S. Bank, N.A.*, No. 11-12322, 2012 WL 32737, at *3 (E.D. Mich. Jan. 6, 2012), *aff'd*, No. 12-1134, 2012 WL 6176968 (6th Cir. Dec. 12, 2012) ("Plaintiffs attempt to ground their quiet title claim in a variety of vague allegations ranging from the 'robo-signing' of affidavits to misleading conduct more generally. This claim fails as a matter of law because Plaintiffs have not pled sufficient facts to raise their right to relief above the speculative level.") (internal footnote omitted); *Orzoff v. Bank of America, N.A.*, 2:10-cv-2202, 2011 WL 1539897, at *3 (D. Nev. Apr. 22, 2011) (dismissing negligence claim for "robo-signing" because "plaintiff does not dispute that she defaulted on her mortgage or that she received notices required" by state law); *James v. ReconTrust Co.*, 845 F. Supp. 2d 1145, 1169 (D. Or. 2012) (dismissing conclusory claims of unauthorized robo-signing of assignment of deed of trust and appointment of successor trustee); *Toone v. Wells Fargo Bank, N.A.*, No. 2:11-cv-170, 2011 WL 4499299, at *2 (D. Utah Sept. 27, 2011) (dismissing claim for declaratory relief based on allegations of "robo-signing," noting that "[t]hough Plaintiffs allege that the supposed invalidity of 'robo-signing' has been 'documented extensively in cases throughout the country,' they fail to provide any supporting citations").

complaint alleging mail and wire fraud must plead *facts* that give rise to a strong inference that

the defendant possessed fraudulent intent." *Mills*, 12 F.3d at 1176 (emphasis added). Just as the

SAC lacks any facts showing that Defendants' communications were fraudulent, it similarly

lacks any facts that "give rise to a strong inference" that Defendants had fraudulent intent.

Plaintiffs' RICO claims should therefore be dismissed with prejudice. *See Boritzer*, 2013 WL

311013, at *8 (dismissing RICO claim because "[a]t bottom, Plaintiffs' assertions of a scheme to

defraud are rooted in speculation … rather than allegations sounding an a particularized narrative

of wrongdoing").

### (2)     *The SAC Fails to Plead a RICO Enterprise.*

Plaintiffs also fail to sufficiently allege the existence of an enterprise – a necessary

element of a civil RICO claim. *Bernstein*, 591 F. Supp. 2d at 461. RICO defines "enterprise" as

"any individual, partnership, corporation, association, or other legal entity, and any union or

group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(1). Here,

Plaintiffs rely on an association-in-fact theory, alleging that Defendants and various other parties

"are, and have been, associated-in-fact, including through common participation in the MBA and

MERS, and via an association among certain defendants with robo-signers at the Harmon Law

Firm," SAC ¶¶ 199, 301, "through their relationship with one another wihin [sic] the mortgage

industry," *id*. ¶ 229, and "through their business relationship with one another and by virtue of

their participation in a scheme to defraud," *id*. ¶ 233. To determine the existence of an

association-in-fact enterprise, courts in the Second Circuit "'look to the hierarchy, organization,

and activities' of the association to determine whether 'its members functioned as a unit.'"

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 134 (E.D.N.Y. 2010) (quoting *First Capital Asset*

*Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 174-75 (2d Cir. 2004)). The Second Circuit has made

clear that "the person and the enterprise referred to must be distinct," and, therefore, "a corporate

34

entity may not be both the RICO person and the RICO enterprise under section 1962(c)."

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994);

*see also United States v. Turkette*, 452 U.S. 576, 583 (1981) (RICO enterprise must be "an entity

separate and apart from the pattern of activity in which it engages").

Plaintiffs' sparse allegations do not suffice for establishing an actionable association-in-

fact enterprise.  Plaintiffs state in the SAC that Defendants participated in MERS and the MBA

and were all in businesses in the mortgage industry. SAC ¶¶ 199, 206, 229, 233, 301, 308, and

then summarily conclude that "[D]efendants, or their assigns, affiliates or successors, comprise

an 'enterprise' as defined in 18 U.S.C. § 1961(4)," *id.* ¶¶ 199, 229, 301, and that "Defendants'

scheme reflects a hierarchy and structure separate and apart from the pattern of racketeering in

which the defendants engaged," *id.* ¶¶ 206, 308.  Plaintiffs have merely parroted back the

statutory language without pleading any details about the nature of Defendants' purported

relationships or how Defendants' "enterprise" differs from their purported racketeering activities.

They do not – and cannot – explain how the transactions described in the "Racketeering Acts

Table" are anything but standard communications from Defendants to Plaintiffs as part of their

business relationship as mortgagees and mortgagors.  Courts routinely dismiss RICO claims in

these circumstances.[24]  Plaintiffs have also failed to meet this Circuit's standard that "[f]or an

---

[24]     *Capital Active Funding, Inc. v. B&L Constr. & Remodeling*, No. 11-CV-257, 2011 U.S.
Dist. LEXIS 140754, at *12 (W.D. Tex. Dec. 7, 2011) (plaintiff "failed to state facts to show that
the association existed for any purpose other than to commit the predicate acts"); *McPeters v.
Edwards*, 806 F. Supp. 2d 978, 988 (S.D. Tex. 2011), *aff'd*, 464 Fed. Appx. 351 (5th Cir.), *cert.
denied*, 133 S. Ct. 277 (2012) ("[p]laintiff has not alleged that the association exists for any
purpose other than to simply commit the predicate acts"); *Warnock v. State Farm Mut. Auto. Ins.
Co.*, 833 F. Supp. 2d 604, 612 (S.D. Miss. 2011) ("because the alleged activities of the
enterprise . . . are also the alleged predicate acts, there can be no RICO enterprise"); *Young v.
Scruggs*, No. 1:09-cv-669KS-MTP, 2010 U.S. Dist. LEXIS 60434, at *19 (S.D. Miss. May 7,
2010) (separateness not met "[w]hen the relationship between members of an alleged enterprise

association of individuals to constitute an 'association in fact' enterprise, they must 'share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" *Purchase Real Estate Grp.*, 2010 WL 3377504, at *6 (quoting *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y.1993), *aff'd* 27 F.3d 763 (2d Cir. 1994)).

Because Plaintiffs fail to allege the necessary facts to establish an association-in-fact enterprise, the First through Ninth Claims of the SAC should be dismissed with prejudice. *See Conte*, 703 F. Supp. 2d at 135 (dismissing plaintiff's RICO claim because "plaintiff fails to allege how each defendant associated with the other defendants in the alleged enterprise, what the defendants' roles were in any alleged enterprise, the structure and functioning of the alleged enterprise, or even a coherent common purpose of the enterprise"); *see also United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007) ("The Amended Complaint contains virtually no allegations regarding the structure and organization of the alleged [enterprise], and leaves a plethora of unanswered questions regarding the membership, purpose, and structure of that entity.").

### (3)    *The SAC Fails to Plead Proximate Causation.*

The SAC also fails to state a RICO claim because it does not meet the standard for causation.  RICO requires Plaintiffs to show that their "asserted injury came about 'by reason of' the allegedly fraudulent conduct.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 8 (2010) (quoting 18 U.S.C. § 1964(c)).  This means that "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but-for" cause of his

does not 'exist[] for purposes other than simply to commit the predicate acts and reap the resultant rewards'") (quoting *In re McCann*, 268 Fed. Appx. 359, 366 (5th Cir. 2008)).

injury, but was the proximate cause as well.'" *Id*. at 9 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). The SAC fails to do so.

Plaintiffs state in the SAC that they "would not have suffered the injuries described herein but for defendants' conduct" and that "defendants' conduct directly caused such injuries, and there were no intervening causes aside from defendants' conduct." *See* SAC ¶¶ 213-14, 237-38, 320-21. Plaintiffs further allege that Defendants' purportedly fraudulent mailings about their mortgages led to them being injured by Defendants' "accelerated foreclosures" on their homes. *E.g., id.* ¶ 109. However, Plaintiffs broke the chain of causation by either failing to pay their loans or declining to challenge their foreclosures. The Second Circuit has consistently refused to find a RICO violation in similar situations. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (denying RICO claim; "the racketeering activities alleged are not a substantial factor in the chain of causation that led to plaintiffs' losses); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 240 (2d Cir. 1999) (pattern of racketeering activity or individual predicate acts must impose a direct injury on plaintiffs); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions."). Plaintiffs' RICO claims should therefore be dismissed with prejudice.

   (c)    **Plaintiffs Fail to State Consumer Protection Claims Are Meritless.**

Plaintiffs' allegations that the Defendants' conduct violated New York, Massachusetts, and Maryland consumer protection statutes are insufficient. *See* SAC ¶¶ 323-30, 338-48, 356-63; *see* N.Y. Gen. Bus. Law § 349(a); Mass. Gen. Laws ch. 93A §§ 2, 9; Md. Code §§ 13-301, 13-303. As a threshold matter, multiple Plaintiffs' state law claims are barred by the applicable statutes of limitations. *See supra* § I(e)(2). The remaining claims must fail because, as

illustrated above, the existence and use of MERS is not in itself unlawful, misleading, unfair or deceptive, and therefore cannot constitute a "deceptive business practice" directed at the public at large.  *See supra* § II(a)(1).  Plaintiffs' claims are predicated on the filing of allegedly "fraudulent" documents in state courts, but they do not identify a single document filed by any Defendant in any court in any state that contained "false information in relation to [any Plaintiff's] mortgage[]" or that involved the "use of robo-signers," let alone identify specifically what information contained in any such document was "false" or provide any facts to demonstrate that such information was false.[25]  (SAC ¶¶ 326, 339, 359.)  Nevertheless, the individual foreclosures themselves and Defendants' alleged conduct with respect thereto do not constitute deceptive business practices under any of these statutes.

### (1)    The SAC Does Not State a Claim for Violation of New York's Deceptive Acts and Practices Law.

Under well-settled New York law, the alleged foreclosure conduct cannot form the basis of a claim under § 349 because foreclosure relates to a private contractual dispute, and is therefore not "consumer-directed" conduct.  Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  N.Y. Gen. Bus. L. § 349(a).  As interpreted by the Court of Appeals, this prohibition applies *only* to consumer-directed activity.[26]  *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290 (1995).  New York courts have found § 349

---

[25]    Plaintiffs' allegations with respect to "robo-signing" are vague and conclusory at best; they allege only that the practice took place as a general matter and that Defendants were somehow "associated" or "affiliated" with alleged "robo-signers."  *See* SAC ¶¶ 33, 110(c), 153, 162, 172, 199, 204, 231, 301, 306, 326, 339, 359.  They fail to provide, identify or describe any specific document filed in any court by any Defendant that was purportedly "robo-signed."

[26]    If anything, Plaintiffs' allegations purport to show that Defendants' foreclosure conduct deceived, and was designed to deceive, the courts adjudicating their foreclosures, not the Plaintiffs (consumers) themselves.  *See* SAC ¶¶ 2-3, 64-65, 83, 103-106, 108-114, 190-193, 211-212.

inapplicable where the conduct alleged was unrelated to a consumer transaction, but rather

related to the enforcement of contractual rights, including enforcement through litigation.[27]

Foreclosure is the enforcement of contractual rights through litigation; therefore § 349 does not

apply.

> ### (2)   The SAC Does Not State a Claim for Violation of the Massachusetts Consumer Protection Act.

Similarly, courts in Massachusetts have determined that the Commonwealth's own

consumer protection statute, Mass. Gen. Laws ch. 93A, is inapplicable to private disputes which

do not constitute "engage[ment] in trade or commerce."[28]   In *Bean v. Bank of N.Y. Mellon*, No.

12-10930-JCB, 2012 WL 4103913, at *8 (D. Mass. Sept. 18, 2012), the court held that an

allegation of wrongful foreclosure challenging validity of assignment, based on documentation

establishing bank's standing to foreclose, without more, failed to state a claim under ch. 93A; *see*

*also Serra v. Quantum Servicing Corp.*, No. 11-11843-DPW, 2012 WL 3548037, at **6-7 (D.

Mass. Aug. 15, 2012) (alleged foreclosure conduct by loan servicer/assignee did not violate ch.

93A).  As in *Bean*, Plaintiffs have failed to state a claim under Chapter 93A.

In addition, "Chapter 93A requires plaintiffs to serve a written demand letter on

prospective defendants at least thirty days prior to filing an action."  *Peterson v. GMAC Mortg.,*

---

[27]      *See DirecTV, Inc. v. Rowland*, No. 04-CV-297S, 2005 WL 189722, at *3 (W.D.N.Y. Jan. 22, 2005) (§ 349 does not apply to defendant's alleged mailing of letters threatening litigation, to enforce contractual rights); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532-33 (1995) ("Private contract disputes, unique to the parties … would not fall within the ambit of [§349]."); *Aurora Loan Servs. v. Grant*, Index No. 35680/06, 17 Misc. 3d 1102(A), 2007 WL 2768915, at *3 (Sup. Ct. Kings County Aug. 29, 2007)) (foreclosure conduct by assignee lacking standing does not state a claim under § 349, failing to allege facts indicating deceptive business practice or advertising causing injury).

[28]      *See Begelfer v. Najarian*, 381 Mass. 177, 191 (1980) (Massachusetts consumer protection statute "does not reach strictly private transactions;" further, "[a] person is not engaged in trade or commerce merely by the exercise of contractual or legal remedies.").

*LLC*, No. 11-11115-RWZ, 2011 WL 5075613, at *5 (D. Mass. Oct. 25, 2011) (citing Mass. Gen.

Laws ch. 93A § 9(3)).  "Not only must such a letter be sent, a plaintiff must plead that he has

complied with this requirement as a prerequisite to suit."  *Kanamaru v. Holyoke Mut. Ins. Co.*, 72

Mass. App. Ct. 396, 407-08 (App. Ct. 2008).  Here, Plaintiffs allege that they sent such a demand

letter on March 12, 2013, *see* SAC ¶ 348, but this action was filed on November 26, 2012, and

the 93A claims were set forth in the original complaint.  *See* Compl. ¶¶ 92-96.  The statute

explicitly requires that such a letter be sent "[a]t least thirty days *prior to the **filing*** of any such

action," and amending the pleading does not cure this defect unless the amendment proffers the

93A claim for the first time and for the sole purpose of doing so.  *See Hansen v. Saxon Mortgage*

*Services, Inc.*, No. 1:11-cv-11128-JLT, 2012 WL 3686448, at **3-4  (D. Mass. Aug. 23, 2012)

(demand letter sent 9 days after initial complaint, 30 days before motion to amend to add 93A

claim, fails to satisfy statutory requirement); *cf. Burns ex. rel. Off. of Pub. Guard. v. Hale &*

*Dorr*, 445 F. Supp. 2d 94, 96-97 (D. Mass. 2006) (post-filing demand letter satisfies ch. 93A §

9(3) requirement when sent more than 30 days in advance of amendment to *add* 93A claim that

was *sole* basis of *subsequent* motion to amend).  Further, the allegation that Plaintiffs provided

the demand letter to "the Massachusetts Defendants" collectively and at once, also fails to meet

the statutory requirement.  *See Ouch v. Federal Nat'l Mortg. Ass'n*, No. 11-12090-RWZ, 2013

WL 139765, at *2 (D. Mass. Jan 10, 2013) (general allegation that defendants were provided

with demands for relief under ch. 93A "is not sufficient to show that this requirement has been

fulfilled as to ***each*** 93A claim alleged against ***each*** *defendant*.") (emphasis added).

### (3)     *The SAC Does Not State a Claim for Violation of Maryland's Unfair or Deceptive Trade Practices Law.*

The Maryland statute cited by Plaintiffs also does not apply here.  *See* SAC ¶¶ 356-363.

The Maryland Consumer Protection Act (MCPA), Maryland Code § 13-301 *et seq.*, requires

*inter alia* consumer-directed activity and reliance thereon by the consumer. *See* Md. Code §§ 13-301, 13-303; *see also Morris v. Osmose Wood Preserving*, 340 Md. 519, 541-42 (1995) ("the deceptive practice must occur in the sale or offer for sale to consumers"; "remote effect" on consumer of alleged deceptive practice not sufficient to invoke MCPA). Nowhere do Plaintiffs allege that they relied on the Defendants' alleged conduct in entering into their respective mortgage contracts, purchasing their properties, or any other acts or forbearances as to their purchasing goods or services from Defendants.[29] Plaintiffs make only vague, generalized accusations of "deceptive acts and practices," and "representations" made by all defendants "*in relation to* mortgages, assignments and foreclosure proceedings against plaintiffs," not any specific representations made by any particular Defendant *to* any particular Plaintiff. SAC ¶ 359 (emphasis added); *see also id.* ¶¶ 357-63; *Stewart v. Bierman*, 859 F. Supp. 2d 754, 769 (D. Md. 2012), *aff'd*, Nos. 12-1723, 12-1746, 2013 WL 2501752 (4th Cir. June 12, 2013) (dismissing MCPA claim alleging forged foreclosure documents where "Plaintiffs fail to allege facts that demonstrate Defendants' actions were material and relied upon *by Plaintiffs*") (emphasis added); *Givens v. CitiMortgage, Inc.*, No. PJM 10-1249, 2011 WL 806463, at *3 (D. Md. Feb. 28, 2011) (conclusory allegations of "misrepresentations to the clerk of the state court during foreclosure proceedings" that "fail to explain specifically which of [defendant's] acts constituted one of the statute's enumerated violations, fall far short of the *Iqbal/Twombly* plausibility standard for pleadings");[30] *see also Marchese v. JPMorgan Chase Bank, N.A.*, No. GLR-12-1480, 2013 WL

---

[29]     Plaintiffs vaguely and generally allege that they "relied upon representations made by defendants in documents, data and information," SAC ¶ 168, but do not specify what any of those representations, documents, data or information were, nor do they provide any specific facts establishing such reliance, viz., acts or forbearances taken *by them* in reliance thereon. Moreover, there is no allegation of reliance in Plaintiffs' MDCPA claim. *See* SAC ¶¶ 357-363.

[30]     The *Givens* court also notes that "to the extent that [plaintiff] asserts claims or raises issues that either were brought, or could have been brought, in the state foreclosure proceedings

136427, at **9-10 (D. Md.  Jan. 8, 2013) (MCPA claim sounds in fraud, therefore must be pled

with particularity under Rule 9(b), including time, place and contents of alleged false

representations, identity of person who made them, and what he obtained thereby).

Accordingly, Plaintiffs' state law claims fail both substantively and procedurally, and

should be dismissed with prejudice.

### (d)     Plaintiffs Do Not State a Claim for Common Law Fraud Under New York, Massachusetts, or Maryland Law.

The Eleventh, Thirteenth, and Fifteenth claims of the SAC allege common law fraud

against all Defendants under New York, Massachusetts, and Maryland law, respectively.

Plaintiffs attempt to allege a broad "fraudulent scheme," outlining this supposed scheme as

follows:

> Defendants' scheme consists of originating mortgages of short
> duration and then accelerating foreclosures for profit.  The scheme
> includes buying and selling the loans or interests in them;
> securitizing mortgages into trusts to be sold to investors;
> transferring interests in mortgages utilizing various methods
> designed to avoid transparency in ownership; servicing loans prior
> to foreclosure and, in some instances, dual-tracking home loan
> modifications and foreclosures; and, [*sic*] employing fraudulent
> practices during foreclosure to expedite the process.

SAC ¶ 64.  Although Plaintiffs label this supposed scheme "fraudulent," they offer no factual or

legal support for this conclusory allegation.  Because Plaintiffs fail to plead any of the elements

of fraud with sufficient particularity, all three fraud claims must be dismissed.

To state a claim for common law fraud under the laws of New York, Massachusetts or

Maryland, Plaintiffs must allege five basic elements: (1) that Defendants made a material false

representation; (2) that Defendants knew that the representation was false, or that they made the

---

… he would almost certainly be precluded from asserting them again here."  2011 WL 806463,
at *4; *see supra* §§ I(a), I(b).

representation with reckless disregard for its truthfulness; (3) that Defendants made the representation with the intent of defrauding Plaintiffs; (4) that Plaintiffs justifiably acted in reliance on the misrepresentation; and (5) that Plaintiffs suffered injury as a result of the misrepresentation.[31]   Failure to plead even one element requires dismissal of Plaintiffs' fraud allegations for failure to state a claim.  *See Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10-CV-3291, 10-CV-3354, 2012 WL 1372260, at *23 (E.D.N.Y. Apr. 18, 2012) (dismissing fraud claim, even though Plaintiff had adequately pled other elements, for failure to specify how her injuries were caused by the purposed material omission); *Redding v. Ameriprise Auto & Home Ins.*, No. DKC 11-3141, 2012 WL 1268327, at **4-5 (D. Md. Apr. 13, 2012) (dismissing fraud claim for failure to state a claim when plaintiff hadn't pled facts suggesting false statement or material concealment).  Because Plaintiffs have not pled the elements of fraud under New York, Massachusetts or Maryland law, all three fraud claims must be dismissed.

---

[31]     New York, Massachusetts, and Maryland each have slightly different statements of the elements of common law fraud, but substantively, the requirements are the same.  *Compare Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (the elements of common law fraud in New York are "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury"), *with Peterson v. GMAC Mortg., LLC*, No. 11-11115-RWZ, 2011 WL 5075613, at *5 (D. Mass. Oct. 25, 2011) ("Common law fraud in Massachusetts requires: (1) a knowingly false statement; (2) intent to deceive; (3) materiality; (4) reliance; and (5) injury as a result of the reliance."), *and Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1047 (Md. 1995) (elements of common law fraud in Maryland are: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation").  Because the elements of common law fraud in each state are substantively the same, Defendants address all three fraud claims in this section, but intend that the arguments presented will apply to the Eleventh, Thirteenth, and Fifteenth claims in the SAC.

### (1)     *Plaintiffs Have Not Met Their Pleading Burden under the Federal Rules of Civil Procedure.*

Plaintiffs must satisfy a heightened pleading standard for their fraud claims, stating "with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This means that the SAC must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *see also Backman v. Smirnov*, No. 08-11148-RGS, 2008 WL 4874949, at *2 (D. Mass. Nov. 12, 2008); *Superior Bank F.S.B. v. Tandem Nat'l Mortg., Inc.* 197 F. Supp. 2d 298, 313 (D. Md. 2000). Because there are multiple Defendants in this case, the SAC must contain sufficient particularity to "inform each defendant of the nature of his alleged participation in the fraud."  *Neely v. RMS Residential Mortg. Solution, L.L.C.*, No. 12-CV-1523, 2013 WL 752636, at *9 (E.D.N.Y. Feb. 26, 2013) (internal quotations omitted); *Iron Mountain Inc. v. Carr*, No. 05-10890-RCL, 2006 WL 6602266, at *8 (D. Mass. Mar. 13, 2006) (when there are multiple defendants, plaintiff must "particularize, at least to some extent, the activities for which it attempts to hold each defendant accountable"); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (same).

Here, the SAC lacks the specificity required to meet Rule 9(b)'s heightened standards.

First, Plaintiffs do not specify what representations were made that Plaintiffs contend were fraudulent, which Defendants made what alleged misrepresentations, or when and where the alleged misrepresentations were made.  This failure alone warrants dismissal under Rule 9(b).  *See Barbara v. MarineMax, Inc.*, No. 12-CV-0368(ARR), 2012 WL 6025604, at *19 (E.D.N.Y. Dec. 4, 2012) (where plaintiffs did not identify specific statements that were alleged to be fraudulent, but instead alleged only generally that representations and advice were false, pleading was insufficient); *Backman*, 2008 WL 4874949, at *2; *Jones v. Stafford*, No. 8:12-cv-

44

00891, 2012 WL 5882588, at *6 (D. Md. Nov. 20, 2012) (because Plaintiff "does not adequately allege the time, place, and contents of the false representations," plaintiff's fraud claim is not cognizable") (internal quotation marks omitted).

Second, Plaintiffs merely recite the elements of fraud in general terms, providing so little detail or factual support that it is difficult to discern what they are claiming each Defendant did wrong. *See* SAC ¶¶ 331-36, 349-354, 364-370. Their allegations do not come close to meeting the level of factual detail required to meet the heightened pleading standards under Rule 9(b). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient."); *see also King v. Wells Fargo Home Mortg.*, No. 11-10781-GAO, 2013 WL 1196664, at *2 (D. Mass. Mar. 25, 2013) ("Plaintiff has not alleged specific facts relating to specific false statements . . . . Instead, the bulk of his allegations are that he was 'duped' into seeking loan modifications based on 'false statements and documents' made by the defendants. Thus, the complaint fails to satisfy the heightened pleading standard of Rule 9(b)."); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 782 (4th Cir. 2013) (dismissing fraud claim for failure to plead elements with required particularity).

Third, the SAC fails to state in any particularized manner the nature of each Defendant's role in the alleged fraud. *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 120 (S.D.N.Y. 2009) ("Normally, a plaintiff's reliance on blanket references to acts or omissions by all defendants fails to provide those defendants with fair notice of the nature of their alleged participation in the fraud."); *King,* 2013 WL 1196664, at *2 ("[W]here there are multiple defendants whose participation in underlying events may differ, it is incumbent on a plaintiff to specify the particulars as to each defendant. Lumping these parties all together as "defendants," as the

plaintiff does, is not sufficient."); *Adams*, 193 F.R.D. at 250 ("A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud.").  Plaintiffs' attempt to rectify their failure of specificity by referring to "the New York Defendants," "the Massachusetts Defendants," and "the Maryland Defendants" is unavailing; they still fail to provide any specifics regarding what representations each Defendant made.  *See Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904(RJS), 2009 WL 2356131, at *6 (S.D.N.Y. July 27, 2009) (noting plaintiff had failed to plead specific facts as to each defendant by "group[ing] all Defendants together through the use of headings that label his allegations as misrepresentations by the 'TD Ameritrade Defendants'"); *King,* 2013 WL 1196664, at *2; *Asafo-Adjei v. First Sav. Mortg. Corp.*, No. RWT 09-cv-2184, 2011 WL 344613, at **3-4 (D. Md. Feb. 1, 2011), *aff'd*, 444 Fed. Appx. 637 (4th Cir. 2011) (finding complaint deficient in part because "it does not allege *who* among defendants" made the alleged misrepresentations) (emphasis in original).

Each of these failures is fatal to Plaintiffs' fraud claims, and therefore the claims must be dismissed with prejudice.

### *(2)     Defendants Did Not Knowingly Make False Representations.*

Plaintiffs' fraud claims also fail because Defendants' alleged representations – which Plaintiffs summarize as "misrepresentations or omissions of material facts in connection with mortgages and foreclosures . . . including but not limited to the status of the mortgage holder, assignee, or transferee, and facts relating to loan modifications" – were not false, as Defendants discussed *supra* § II(b)(1).  *E.g.*, SAC ¶ 332; *see also* SAC ¶¶ 350, 352, 365, 368.

But even if Plaintiffs were correct that Defendants' representations were false (which they are not), Plaintiffs still have not stated a claim for fraud because they have not sufficiently

alleged that Defendants *knew* their representations were false, or that they made them with reckless disregard for their truthfulness.  *See Premium Mortg. Corp.*, 583 F.3d at 108; *Peterson*, 2011 WL 5075613, at *5; *Alleco*, 665 A.2d at 1047.  Plaintiffs state that "Defendants knowingly made false statements," but they do not plead any facts to substantiate this bare allegation.  SAC ¶¶ 350, 365.  Because they do not plead facts supporting an inference that Defendants knew or should have known that they were making false statements, Plaintiffs' fraud claims should be dismissed with prejudice.

### (3)   *Defendants Did Not Intend to Deceive, and Plaintiffs Did Not Rely on Defendants' Representations.*

Similarly, Plaintiffs have not sufficiently pled the third element of fraud – that Defendants made allegedly false representations with the intent to deceive Plaintiffs.  To meet their pleading burden under Rule 9(b), "a complaint must allege facts that give rise to a 'strong inference' of fraudulent intent."  *Huelbig v. Aurora Loan Servs., LLC*, No. 10-Civ-6215 (RJH) (THK), 2011 WL 4348281, at *9 (S.D.N.Y. May 18, 2011); *see also Zervos v. Ocwen Loan Servicing, LLC*, No. 1:11-cv-03757-JKB, 2012 WL 1107689, at *5 (D. Md. Mar. 29, 2012) (finding fraud claim inadequate because "Plaintiffs have alleged no facts from which the Court can infer an intent to defraud"); *Whelan v. Integraph Corp.*, 889 F. Supp. 15, 20 (D. Mass. 1995) (same).  Plaintiffs merely recite the language of the element – that Defendants made their alleged misrepresentations "with the intent to deceive" Plaintiffs.  *See, e.g.,* SAC ¶ 351.  But Plaintiffs offer no *factual* support for this assertion.  This is insufficient to establish intent to defraud, and consequently, Plaintiffs have not stated a claim for fraud.  *See, e.g.*, *JBCHoldings NY, LLC v. Pakter*, No. 12 cv 7555, 2013 WL 1149061, at **13-14 (S.D.N.Y. Mar. 20, 2013) ("We must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations . . . . Rather, plaintiffs

must allege facts that give rise to a 'strong inference of fraudulent intent.'") (internal quotations omitted).

Similarly, although Plaintiffs state that they "reasonably relied on Defendants' alleged misrepresentations, they once again offer no factual support. "Common law fraud claims must be supported by factual allegations demonstrating a plaintiff's actual, direct reliance on the misrepresentation or omission." *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 232 (S.D.N.Y. 2001); *see also Cofield v. Lead Indus. Ass'n, Inc.*, Civ. A MJG-99-3277, 2000 WL 34292681, at **9-10 (D. Md. Aug. 17, 2000) ("[A] plaintiff must [] plead or prove that he or she personally relied upon the allegedly fraudulent misrepresentation."). Here, Plaintiffs do not allege any facts that suggest they relied on Defendants' alleged misrepresentations. Plaintiffs therefore have not sufficiently pled reliance as required to state a claim for fraud. *See Granite Partners L.P. v. Bear, Sterns & Co.*, 58 F. Supp. 2d 228, 258, (S.D.N.Y. 1999) ("Despite [plaintiff's] catch-all allegation that the Funds relied upon [defendant's] statements regarding marks, however, [plaintiff] never ventures to actually plead facts that underlie this reliance."); *Goss v. Bank of America, N.A.*, No. CCB-12-2680, 2013 WL 105326, at *4 (D. Md. Jan. 8, 2013) (dismissing fraud claim in part because plaintiffs could not show that they had taken any action in reliance on defendant's allegedly false statements); *Central Mass. Television, Inc. v. Amplicon, Inc.*, 930 F. Supp. 16, 26 (D. Mass. 1996).

### (4)     *Plaintiffs' Alleged Injuries Did Not Result from Defendants' Representations.*

Finally, Plaintiffs' fraud claims should be dismissed with prejudice because they have not alleged that they suffered any injury as a result of Defendants' purported misrepresentations. The injury Plaintiffs claim they suffered is "the loss of their homes and property interests." SAC ¶¶ 336, 354, 370. But this injury came as a result of Plaintiffs' default on their mortgages, and

48

not because of Defendants' alleged misrepresentations.  To state a claim for fraud, the injury alleged must *directly result* from the alleged misrepresentation.  *See Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (to establish injury element in fraud case, the injury "must be the direct, immediate, and proximate result of the misrepresentation," and "[t]he damages must also be independent of other causes"); *Peterson*, 2011 WL 5075613, at *5 (dismissing fraud claim in part because plaintiffs failed to allege "that any of their injuries are a direct result of the alleged misrepresentations"); *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1203 (4th Cir. 1989) ("[P]laintiff must prove that it was directly and proximately injured as a result of the fraud"); *Hayden Capital USA, LLC v. Northstar Agric. Indus., LLC*, No. 11 Civ. 594(DAB), 2012 WL 2953055, at **4-5 (S.D.N.Y. July 16, 2012) (dismissing fraud claim when damages arose from cost of litigation rather than from misstatement by defendant).  Here, Plaintiffs' properties were not foreclosed on because Defendants named MERS as their nominee in the mortgage documents or because they utilized particular accounting standards, SAC ¶ 108; Plaintiffs' properties were foreclosed on because Plaintiffs defaulted on their loans, and Defendants were contractually entitled to initiate foreclosure proceedings.[32]  Plaintiffs' lack of allegations concerning any injury that resulted from Defendants' purported misrepresentations further dooms their fraud claims, and the Eleventh, Thirteenth, and Fifteenth Claims of the SAC should be dismissed with prejudice.

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Court grant their Motion to Dismiss all claims in the Second Amended Complaint with prejudice.

---

[32] Plaintiffs never allege that they did not default on their individual mortgage loans.

Dated: June 20, 2013    Respectfully submitted,

/s/ Jason O. Braiman
_____
Jason O. Braiman (JB1701)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212-813-8800
F: 212-355-3333
jbraiman@goodwinprocter.com

*Attorney for Defendants Bank of America, N.A., Countrywide*
*Home Loans, Inc., and First Franklin Investment & Loan*

/s/ Jonathan M. Robbin
Jonathan M. Robbin
BLANK ROME, LLP
405 Lexington Ave.
New York, New York 10174
T: (212) 885-5000
F: (917) 332-3747
Jrobbin@blankrome.com
*Attorneys for Defendant Homeward Residential, Inc.*


/s/ Richard G. Haddad
Richard G. Haddad (RH 6438)
OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York 10169-0075
T: (212) 661-9100
F: (212) 682-6104
rhaddad@oshr.com
*Attorneys for Defendant Ally Financial Inc.*


/s/ Bruce Allensworth
/s/ Brian M. Forbes
/s/ Robert W. Sparkes, III
Bruce Allensworth, *pro hac vice*
Brian M. Forbes, *pro hac vice*
Robert W. Sparkes, III, *pro hac vice*
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
T: (617) 261-3100
F: (617) 261-3175
bruce.allensworth@klgates.com
brian.m.forbes@klgates.com
robert.sparkes@klgates.com


/s/ David S. Versfelt
David S. Versfelt
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
T: (212) 536-3900
F: (212) 308-6661

david.versfelt@klgates.com
*Attorneys for Defendant Ocwen Financial Corporation*


/s/ Julian W. Friedman
Julian W. Friedman
STILLMAN & FRIEDMAN, P.C.
425 Park Avenue
New York, NY 10022
T: (212) 223-0200
F: (212) 223-1942
jfriedman@stillmanfriedman.com


/s/ David H. Pittinsky
David H. Pittinsky *(Pro Hac Vice)*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: (215) 864-8117
F: (215) 864-8999
pittinsky@ballardspahr. Com
*Attorneys for The Defendant PNC Financial Services Group, Inc.*


/s/ Elliott C. Mogul
Elliott C. Mogul
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Tel: (202) 942-6375
Fax: (202) 942-5999
elliott.mogul@aporter.com


Anthony D. Boccanfuso
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022-4690
Tel: (212) 715-1000
Fax: (212) 715-1399
anthony.boccanfuso@aporter.com


*Counsel for Aurora Loan Services LLC*


52

/s/ Lisa J. Fried_____
Allison J. Schoenthal (AS5391)
Lisa J. Fried (LF6968)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
T: 212-918-3000
F: 212-918-3100
allison.schoenthal@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendants Flagstar Bank, FSB,*
*Provident Funding Group, Inc.,*
*U.S. Bank, N.A. and Wells Fargo Bank N.A.*


/s/ Michael S. Kraut_____
Michael S. Kraut (MK-4469)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
T: 212-309-6000
F: 212-209-6001
mkraut@morganlewis.com

*Attorney for Defendant Deutsche Bank*
*National Trust Company*


/s/ Joy Harmon Sperling_____
Joy Harmon Sperling (JS2005)
jsperling@daypitney.com
Michael A. Weiss (MW5758)
mweiss@daypitney.com

DAY PITNEY LLP
7 Times Square
New York, NY 10022
T: 212-297-2466
F: 212-881-9042

*Attorney for Defendants MortgageIT, Inc. and*
*Deutsche Bank, AG*

/s/ John M. Falzone
_____

John M. Falzone
PARKER IBRAHIM & BERG LLC
5 Penn Plaza, Suite 2371
New York, NY 10001
T: 908-725-9700
F: 908-333-6230
john.falzone@piblaw.com
*Attorney for Defendants JPMorgan Chase & Co.*
*and JPMorgan Chase Bank, N.A., successor by*
*merger to Chase Home Finance LLC*
*(s/h/a "Chase Home Finance, LLC")*


s/ Michael P. De Simone
_____

Michael P. De Simone
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
T: 212-210-9400
F: 212-210-9444
michael.desimone@alston.com
*Attorney for PHH Mortgage Corp.*


s/ Noah Weissman
_____

Noah Weissman
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY  10104
T:  212-541-2000
F:  212-541-4630
NMWeissman@bryancave.com
*Attorney for Defendants CitiMortgage, Inc., Citibank, N.A. and*
*Citigroup Inc.*


/s/ Harold F. Damm
_____

Harold F. Damm (HD9353)
CIOTTI & DAMM, LLP
1551 Kellum Place
Mineola, NY 11501

T: 516-248-0800
F: 516-746-4709
hdamm@cdkesqs.com
*Attorney for Cincinnati Federal Savings and Loan*

## <u>CERTIFICATE OF SERVICE</u>

I, Michael S. Kraut, hereby certify that a copy of the foregoing documents, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on June 20, 2013.

<u>/s/ Michael S. Kraut</u>

**APPENDIX OF UNPUBLISHED CASES**

SUPREME COURT-STATE OF NEW YORK
IAS PART-ORANGE COUNTY

Present:  HON. ELAINE SLOBOD, J.S.C.

SUPREME COURT : ORANGE COUNTY
----------------------------------------x
US BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR CSAB 2006-4, 3476
Stateview Boulevard, Ft. Mill, SC
29715,



                                    Plaintiff,

        -against-

PIETER BOERSMA, RAJKALLIE SAMIE,
et al.,

                                    Defendants.

To commence the statutory time
period for appeals as of right
(CPLR 5513 [a]), you are
advised to serve a copy of this
order, with notice of entry,
upon all parties.

Index No.  6265-2009
Motion Date: June 11, 2012
----------------------------------------x

The following papers numbered 1 to 11 were read on this motion by
plaintiff for summary judgment:

Notice of Motion-Affidavit-Exhibits A-D-Affirmation-Exhibits 1-
4........................................................... 1-5
Affirmation in Opposition-Exhibits 1-10.....................6-7
Reply Affirmation-Exhibits 1-2.............................8-10
Reply Memorandum of Law.......................................11


        Upon the foregoing papers it is ORDERED that the motion is

granted.

        In this mortgage foreclosure action, plaintiff moves for summary

judgment in its favor.

        The mortgagees, defendants Pieter Boersma and Rajkallie Samie

(hereinafter "defendants") oppose the motion, arguing, first of all,

that plaintiff has not demonstrated its standing to sue.  Defendants'

original mortgagee was New York Mortgage Company, LLC.

1

The note was endorsed over to plaintiff by an allonge which is attached to the note. The mortgage was assigned to plaintiff by the Mortgage Electronic Registration Systems, Inc. ("MERS"), the nominee named in the mortgage instrument, on June 5, 2009.  This assignment was recorded in the office of the Orange County Clerk on July 8, 2009.  This action was commenced by filing on June 16, 2009.

"A plaintiff has standing where it is the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced" (HSBC Bank, USA v Hernandez, 92 AD3d 843 [2012]).  The recording of the mortgage after the action is commenced does not defeat standing (see Aurora Loan Services, LLC v Weisblum, 85 AD3d 95, 108 [2011]; US Bank, NA v Collymore, 68 AD3d 752, 754 [2009]).

Plaintiff has demonstrated its standing to sue.

Defendants also argue that the loan was predatory.  This defense was not raised in the answer. Moreover, they do not seek the remedy of rescission.  In their affidavits, defendants state that defendant Boersema was making a net salary of $35,000.00 annually and that defendant Samie was unemployed at the time they obtained the loan. Their mortgage payments were $2,522.17 a month for the first ten years.  Defendants do not claim that they did not understand this. They ask why they were given a loan they could not afford.  They are silent on the issue of why they obtained a loan they could not afford.  Defendants have failed to make the requisite showing to maintain the defense (see Emigrant Mortgage Co., Inc. v Fitzpatrick,

95 AD3d 1169 [2012]).   They also argue that they had some right to a modification which is not supported by a written agreement.

Plaintiff submits evidence that Elpiniki Bechakas, Esq. a former employee of the law office of Steven Baum, had authority to sign documents on behalf of the Mortgage Electronic Registration Systems, Inc. ("MERS") at the time of the assignment of the mortgage which predates a settlement agreement whereby that law office agreed not to act on behalf of MERS by approximately two years.

The court rejects the argument that an affidavit executed in the State of North Carolina made in a manner prescribed by the laws of the State of New York requires a certificate of conformity pursuant to CPLR 2309 (see La Salle Bank, N.A. v Pace, 31 Misc3d 627 [2011]; Real Property Law § 299; Real Property Law § 311(5); 1975 Op. Atty Gen. 303).

Defendants' other contentions, i.e., that further disclosure is necessary or that their complaint to an agency should stay the action, are without merit.

Order of reference signed as modified by the court.

The foregoing constitutes the decision and order of the court.


Dated: July  20  , 2012          E N T E R
       Goshen, New York

                                 _Elaine Slobod_
                                 HON. ELAINE SLOBOD, J.S.C.

3

FILED

AUG 1 7 2012

ORANGE COUNTY CLERK'S OFFICE

STATE OF NEW YORK
SUPREME COURT                              COUNTY OF RENSSELAER

---

WELLS FARGO BANK. NA,

                                              Plaintiff,

      -against-

PATRICK   BRADLEY,   CORRINE   R.   BRADLEY,
JPMORGAN CHASE BANK, N.A., JOHN DOE (Said name
being fictitious, it being the intention of Plaintiff to designate
any and all occupants, of premises being foreclosed herein, and
any parties, corporations or entities, if any, having or claiming
an interest or lien upon the mortgaged premises.)

                                              Defendant.

---

All Purpose Term
Hon. George B. Ceresia, Jr., Supreme Court Justice Presiding
RJI: 41-0722-10   Index No.  233421

Appearances:    Steven J. Baum, P.C.
                Attorney For Plaintiff
                PO Box 1291
                Buffalo, NY 13240

                Hogan Lovells US LLP
                Attorney For Plaintiff
                875 Third Avenue
                New York, NY 10022

                The Codd Law Firm, PLLC
                Attorney For Defendants
                Patrick Bradley and Corrine R. Bradley
                94 Remsen Street
                Cohoes, NY 12047

**DECISION/ORDER**

George B. Ceresia, Jr., Justice

The defendants Patrick Bradley and Corrine R. Bradley ("defendants") have made a motion to dismiss the complaint in the above-captioned action to foreclose a mortgage pursuant to CPLR 3211 (a)(3) on grounds of plaintiff's lack of standing and lack of capacity, and that the assignment is fraudulent. The plaintiff opposes the motion and has cross-moved pursuant to CPLR 3124 for an order directing defendants to comply with its demand for a bill of particulars.

The Court must first note that defendants' motion was made under the provisions of CPLR 3211, even though issue has been joined through the service of an answer. No objection to this procedure has been raised by the plaintiff. As such, and inasmuch as the parties have charted their own course, the Court will consider the motion under said Rule.[1]

The note in the principal amount of $287,000 and mortgage are both dated March 2, 2007[2]. The lender is SunTrust Mortgage, Inc., however the mortgagee is indicated to be Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee for lender". Plaintiff has submitted an assignment of the subject mortgage dated June 15, 2010 from MERS to the plaintiff. The assignment was executed by one Elpiniki M. Bechakas, Assistant Secretary and Vice President of MERS.

---

[1]For a general discussion concerning service of a CPLR 3211 motion after service of an answer see Siegel, Practice Commentaries, Mc Kinney's Cons Laws of NY, Book 7B, CPLR C3211:52, at 77-79).

[2]The mortgage was executed March 1, 2007.

2

"'Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity concerns a litigant's power to appear and bring its grievance before the court'" (Graziano v County of Albany, 3 NY3d 475, 478-479 [2004], quoting Silver v Pataki, 96 NY2d 532, 537 [2001]).  Standing, on the other hand, "[] involves a determination of whether `the party seeking relief has a sufficiently cognizable stake in the outcome so as to cast[] the dispute in a form traditionally capable of judicial resolution'" (Graziano v County of Albany, supra, at 479, quoting Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 154-155).

> "The two-part standing inquiry is designed to determine whether the party who is bringing suit is a proper party to request an adjudication of the dispute, as follows:
>
> 'first, a plaintiff must show "injury in fact," meaning that plaintiff will actually be harmed by the challenged . . . action. As the term itself implies, the injury must be more than conjectural. Second, the injury a plaintiff asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted'" (Graziano v County of Albany, supra, at 479, quoting New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211, [2004] [citations omitted]).

In actions to foreclose a mortgage, it has been held that "[w]here the plaintiff is the assignee of the mortgage and the underlying note at the time the foreclosure action was commenced, the plaintiff has standing to maintain the action" (Fannie Mae v Youkelsone, 303 AD2d 546 [2d Dept., 2003], citations omitted).  As recently observed by the Appellate Division, Third Department:

3

> "[a]n assignment of a mortgage does not have to be in writing
> and can be effective through physical delivery of the mortgage
> (see Flyer v Sullivan, 284 App Div 697, 699 [1954]). However,
> if it is in writing, the execution date is generally controlling and
> a written assignment claiming an earlier effective date is
> deficient *unless it is accompanied by proof that the physical
> delivery of the note and mortgage was, in fact, previously
> effectuated* (see Bankers Trust Co. v Hoovis, 263 AD2d [937]
> at 938)." (LaSalle Bank National Association v Ahearn, 59
> AD3d 911 [2009], emphasis supplied)

In this instance, the complaint, supplemented by a copy of the assignment and

promissory note, the latter of which appears to be endorsed by SunTrust Mortgage, Inc. in

blank, are sufficient to establish plaintiff's standing, as the holder of the note and mortgage.

The assignment dated June 15, 2010 predates the commencement of the action (June 17,

2010).  Nothing in CPLR Article 30 requires that a copy of the note, mortgage or assignment

be annexed to the complaint in an action to foreclose a mortgage.  In addition, nothing

submitted by defendants suggests that plaintiff does not have the  power to appear and bring

its grievance before the court.  On its face, the Court finds that the plaintiff adequately

alleged standing and capacity to enforce the note and mortgage.

As a part of their argument, the defendants point out that the individual who executed

the assignment of mortgage on behalf of MERS, Elpiniki M. Bechakas, is also a member of

the law firm of Steven J. Baum, P.C. Defendants argue that, as a consequence, the law office

of Steven J. Baum, P.C. and/or plaintiff have submitted a "fraudulent" assignment of the

mortgage.  Plaintiffs have submitted documentation to establish that Elpiniki M. Bechakas

was appointed a corporate officer of MERS on July 19, 2007.  The Court discerns nothing

4

ostensibly improper with this arrangement, and that defendants failed to demonstrate that the assignment is fraudulent.

Lastly, defendants allege that an allonge needed to be attached to the promissory note at the time of the closing.  Under Uniform Commercial Code ("UCC") 3-302 (2) entitled "negotiation", "[a]n indorsement must be written by or on behalf of the holder and on the instrument <u>or on a paper so firmly affixed thereto as to become a part thereof</u>" (emphasis supplied).  The Official Comment to UCC 3-202 recites, in part, as follows:

> "3. Subsection (2) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge." (Official Comment to UCC 3-202).

The copy of the note submitted by plaintiff, as noted, is endorsed in blank by Deborah P. Ellis, Vice President of SunTrust Mortgage, Inc.  The defendants have not demonstrated the necessity of an allonge.

The Court concludes that defendants' motion to dismiss under CPLR 3211 (a) (3) must be denied.

Turning to plaintiff's cross-motion, plaintiff has presented evidence that defendants have not served a response to its demand for a bill of particulars served on September 15, 2010.  The defendants rejected the demand for a bill of particulars by letter dated September 22, 2010.  The Court has adopted a long-standing policy of staying a foreclosure action while

5

the parties are engaged in settlement negotiations mandated under CPLR 3408. For this reason the Court if of the view that the settlement conference procedure set forth in CPLR 3408 should be permitted to take its course before defendants are required to submit a response. The Court will therefore deny the motion without prejudice. Once the settlement conference process is finalized (and assuming the action is not discontinued) the Court will direct that a preliminary conference be held to establish a schedule for the completion of discovery and the filing of a note of issue.

Accordingly, it is

**ORDERED**, that the motion of defendants Patrick Bradley and Corrine R. Bradley, pursuant to CPLR 3211 (a) (3) is denied; and it is further

**ORDERED**, that plaintiff's cross-motion pursuant to CPLR 3124 is denied; and it is further

**ORDERED**, that a settlement conference with plaintiff's counsel, defendants' counsel and the defendants be and hereby is scheduled to be held on **Thursday, August 4, 2011 at 9:45 a.m.** at the Rensselaer County Courthouse, Troy, New York.

This shall constitute the decision and order the Court. The original decision/order is returned to the attorney for the plaintiff. All other papers are being delivered to the Supreme Court Clerk for delivery to the County Clerk or directly to the County Clerk for filing. The signing of this decision/order and delivery of this decision/order does not constitute entry or filing under CPLR Rule 2220. Counsel is not relieved from the applicable provisions of that

6

rule respecting filing, entry and notice of entry.

Dated:       July 8, 2011
             Troy, New York

                                            George B. Ceresia, Jr.
                                            Supreme Court Justice


Papers Considered:

    1.    Plaintiff's Notice of Motion dated November 8, 2010, Supporting Papers
         and Exhibits

    2.    Affirmation of Douglas C. Weinert, Esq. Dated November 23, 2010

    3.    Notice of Cross-Motion dated November 26, 2010

    4.    Defendants' Reply To Plaintiff's CrossClaims filed March 10, 2011

    5.    Affirmation of Nicole E. Schiavo, Esq. Dated March 19, 2011

7

Short Form Order

NEW YORK SUPREME COURT - QUEENS COUNTY

Present:  HONORABLE JAIME A. RIOS                    IA PART  8
                        Justice

---------------------------------------X
WELLS FARGO BANK, N.A.,                      Index
                          Plaintiff,         Number: 3469/09

          - against -                        Motion
                                             Date: August 31, 2011

CIRO TAORMINA, CHERYL TAORMINA,              Sequence
et al.,                                      Number: 1
                          Defendants.
---------------------------------------X

The following papers numbered 1 to 6 were read on this motion,
inter alia, for summary judgment and an order of reference and
this cross-motion to dismiss.

                                                     Papers
                                                     Numbered

     Notice of Motion-Motion-Affidavits-Exhibits................   1-2
     Notice of Cross Motion-Cross-Motion-Affidavits-Exhibits....   3-4
     Opposition................................................   5
     Reply.....................................................   6


     Upon the foregoing papers, it is ordered that the motion and
cross-motion are resolved as follows.

     The plaintiff Wells Fargo Bank, N.A. commenced this action
seeking to foreclose a mortgage held on certain property located
at 97-18 Bristol Avenue, Ozone Park, New York (the property).

     The papers reveal that on or about July 26, 2007, defendants
Ciro and Cheryl Taormina (defendants) applied to refinance their
existing mortgage loan with a loan from Somerset Investors Corp.
As a result, they obtained a loan for $286,700.00, secured by the
property[1].  When defendants failed to make their mortgage
payments, plaintiff sent them a default notice in May of 2008.
By February of 2009, four additional notices of default were sent
to defendants.  On or about February 13, 2009, plaintiff
commenced this foreclosure action, alleging that defendants

_____

[1] The mortgage was assigned to plaintiff on February 2, 2009,
along with a properly endorsed note.

failed to make the required monthly payments beginning September 1, 2008 and that $283,644.53 plus interest was due as of August 1, 2008.  On or about May 1, 2009, defendants served their answer with affirmative defenses and counterclaims, including violations of the Truth in Lending Act.  Plaintiff initially rejected their answer as untimely, but ultimately entered into a stipulation wherein it accepted the answer.

Plaintiff currently moves for, inter alia, an order striking the answer, granting it summary judgment, striking John Doe from the caption, appointing a referee to compute the sums due and owing and determine whether the premises can be sold in one or more parcels.

In her affidavit in support, Jaime Walls, a default litigation specialist at Wells Fargo avers, inter alia, that defendants failed to make the monthly loan payments pursuant to the mortgage.  With respect to the counterclaim, Walls also notes that the defendants signed the Truth in Lending Disclosure Statement and provides a copy.

The defendants cross move to dismiss the complaint, arguing that plaintiff has no standing as the assignment was defective since the plaintiff's attorney had no authority to execute an assignment of the mortgage from another entity to her own client. Defendants explain that the assignment of mortgage was executed by Elpiniki M. Bechakas, an attorney from the office of plaintiff's co-counsel (Steven J. Baum, P.C.) which commenced the action but who is also alleged to be "Assistant Secretary and Vice President" of Mortgage Electronic Registration Systems, Inc. (MERS).

In opposition to the cross-motion, plaintiff submits the "Agreement for Signing Authority" and "Mortgage Electronic Registration Systems, Inc. Corporate Resolution", both dated July 19, 2007, which appoint Elpiniki Bechakas, an attorney with Steven Baum, as Assistant Secretary and Vice President for MERS. The Corporate Resolution specifically authorizes Elpiniki Bechakas to "[e]xecute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS system" and to "[a]ssign the lien of any mortgage loan registered on the MERS System that is shown to be registered to Wells Fargo Home Mortgage a Division of Wells Fargo Bank NA or its designee".  Plaintiff notes that Steven J. Baum, P.C. does not represent MERS in this action and that Bechakas acted within her sole and limited capacity as corporate officer of MERS to assign the loan.

-2-

In further support of its motion for summary judgment, plaintiff notes that it submitted the note, mortgage, and notices of default as evidence of defendants' failure to make contractually required loan payments. Further, plaintiff submits the assignment and indorsed note and an affidavit affirming that the indorsed note and mortgage were physically transferred to it, to show it has standing.

In their reply, defendants reiterate their argument that plaintiff lacks standing and argues that plaintiff's opposition to their motion merely raises more questions of fact.

Plaintiff was the assignee and holder of the note and mortgage prior to the commencement of this action, and thus, has standing (see Matter of Mers Corp. v Romaine, 8 NY3d 90 [2006]; Federal National Mortgage Association v Youkelsone, 303 AD2d 546 [2d Dept., 2003]). Contrary to defendants' contentions, there was never an attorney-client relationship between MERS and Steven J. Baum, P.C. Moreover, since the loan herein is registered to Wells Fargo Home Mortgage a Division of Wells Fargo Bank NA on the MERS system, Elpiniki·Bechakas, as its duly appointed corporate officer, had authority to execute the assignment of mortgage at issue in this action. Thus, the cross-motion is denied.

Although the defendants' loan did not initially qualify for a court supervised loan modification conference, the amendment of 2008 NY law, Chapter 472, Section 3-a now dictates that such an opportunity be afforded the defendants (see CPLR 3408).

Accordingly, the motion is denied without prejudice, so that a settlement conference pursuant to the amended statute may be conducted at defendants' request. The plaintiff may renew the application upon submission of an affirmation stating that the defendants were apprised by the Office of Court Administration of their right and failed to request a settlement conference, or that upon being notified of the settlement conference, failed to appear or did not qualify for a loan modification package.

Dated: September 27, 2011
Index No.: 3469/09

J.S.C.

-3-