**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN ANCTIL, et al.,       :
            :
      Plaintiffs,   :  Case No. 12-cv-8572-CS
            :  Hon. Cathy Seibel
   v.         :
            :
ALLY FINANCIAL, INC., et al.,   :
            :
      Defendants.  :
            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANT THE PNC FINANCIAL SERVICES GROUP, INC. IN SUPPORT OF ITS <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

David H. Pittinsky
pittinsky@ballardspahr.com
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

Julian W. Friedman
jfriedman@stillmanfriedman.com
**Stillman & Friedman, P.C.**
425 Park Avenue
New York, NY 10022
Telephone: 212.223.0200
Facsimile: 212.223.1942

*Attorneys for Defendant The PNC*
*Financial Services Group, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    PROCEDURAL HISTORY AND ALLEGATIONS OF THE SECOND
AMENDED COMPLAINT ......................................................................................... 1

II.    STATEMENT OF FACTS APPLICABLE TO PNC ..................................................... 3

    A.    The Schriefers' Loan History ............................................................................ 3

    B.    PNC Did Not Participate In The Schriefer Foreclosure ..................................... 5

    C.    PNC's Only Role Herein Is Limited To Its Role As Successor To Its
Predecessor's Origination Of The Schriefers' Refinanced Loan ......................... 6

III.    ARGUMENT ............................................................................................................... 6

    **A.**    Legal Standard ................................................................................................. 6

    **B.**    Plaintiffs' Claims Fail As A Matter Of Law Against PNC ................................. 6

        1.    RICO Claim (Count One) ...................................................................... 6
        2.    MCPA Claim (Count Fourteen) .............................................................. 7
        3.    Maryland Common Law Fraud (Count Fifteen) ..................................... 10

IV.    CONCLUSION .......................................................................................................... 12

<u>**TABLE OF AUTHORITIES**</u>

**<u>Pages</u>**

FEDERAL CASES

*Adams v. NVR Homes, Inc.*,
    193 F.R.D. 243 (D. Md. 2000)..................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 137 (2009)........................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007)......................................................6

*Bezmenova v. Ocwen Financial Corp.*,
    2013 U.S. Dist. LEXIS 43621 (D. Md. March 27, 2013)........................7

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)....................................................................4

*Brown v. Bank of America, N.A.*,
    2012 U.S. Dist. LEXIS 13168 (D. Md. Feb. 3, 2012) ........................7, 8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................4

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)......................................................................4

*Farwell v. Story*,
    2010 U.S. Dist. LEXIS 126661 (D. Md. Dec. 1, 2010).........................10

*Fitzgerald v. Chase Home Finance, LLC*,
    2011 U.S. Dist. LEXIS 156395 (S.D.N.Y. Feb. 28, 2011).....................11

*Goss v. Bank of Am., N.A.*,
    2013 U.S. Dist. LEXIS 2510 (D. Md. Jan. 8, 2013) .............................10

*Marchese v. JPMorgan Chase Bank, N.A.*,
    2013 U.S. Dist. LEXIS 3349 (D. Md. Jan. 8, 2013)............................8, 9

*Onwumbiko v. JP Morgan Chase Bank, N.A.*,
    2012 U.S. Dist. LEXIS 170299 (D. Md. Nov. 30, 2012) ........................7

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)......................................................................4

*Petry v. Wells Fargo Bank*,
597 F. Supp. 2d 558 (D. Md. 2009) ................................................................................7

*Reid v. New Century Mortgage Corp.*,
2012 U.S. Dist. LEXIS 176765 (D. Md. Dec. 13, 2012) ..........................................11

*Schlenger v. Fidelity Employer Servs. Co., LLC*,
785 F. Supp. 2d 317 (S.D.N.Y. 2011) ........................................................................11

*Spaulding v. Wells Fargo Bank, N.A.*,
2013 U.S. App. LEXIS 7866 (4th Cir. Apr. 19, 2013) ....................................8, 9, 11

*Willis v. Countrywide Home Loans Servicing, L.P.*,
2009 U.S. Dist. LEXIS 120010 (D. Md. Dec. 23, 2009) ............................................9

**STATE CASES**

*Bank of Am., N.A. v. Schriefer*,
No. C-10-151926 (Md. Cir. Ct. May 7, 2010) ...........................................................5

*Fowler v. Benton*,
229 Md. 571, 185 A.2d 344 (Md. 1962) ...................................................................11

*Lloyd v. Gen. Motors Corp.*,
916 A.2d 257 (Md. 2007) ...........................................................................................9

**FEDERAL STATUTES**

18 U.S.C. § 1962(a) and (c) .....................................................................................1, 2

**STATE STATUTES**

Mass. Gen. Laws Chapter 93A § 2 ...............................................................................2

Md. Code Ann., Com. Law § 13-301 ...........................................................................8

Md. Code Ann., Com. Law § 13-303 ...........................................................................2

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ...........................................................8, 11

Md. Real Property Code Ann. § 7-105.1(d) and § 14-207(b)(3) .................................5

NY Gen. Bus. Law § 349 ..............................................................................................2

**RULES**

Federal Rule of Civil Procedure 9(b) ..............................................................3, 8, 9, 11

iii

## I.     PROCEDURAL HISTORY AND ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

As a preliminary matter, Defendant The PNC Financial Services Group, Inc. ("PNC") has joined Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint filed on June 20, 2013 and adopted the arguments contained therein.  Pursuant to the Court's February 20, 2013 Scheduling Order, PNC respectfully submits this Supplemental Memorandum of Law and Affidavit of David H. Pittinsky to address the individual issues pertaining to PNC in this action.  *See* Transcript of Pre-Motion Conference before Judge Cathy Seibel, Feb. 20, 2013 ("Pre-Motion Tr."), pp. 9-11.

Plaintiffs are 35 former mortgagors of residential properties located in Maryland, Massachusetts and New York, who filed the instant Complaint against 26 mortgage lenders and servicers.  On January 28, 2013, Plaintiffs amended their complaint for the first time. (Dkt. No. 32.)  On February 20, 2013, during the Pre-Motion Conference before this Court, Plaintiffs were given until April 12, 2013 to file their Second Amended Complaint (the "SAC").  *See* Pre-Motion Tr., pp. 8-9.

As filed on April 12, 2013, the SAC generally – and only generally – alleges that the Defendants unlawfully foreclosed upon the Plaintiffs' properties by engaging in a coordinated pattern of acts to originate and refinance mortgage loans.  (SAC at ¶ 2.)  Plaintiffs further allege that Defendants presented false and/or misleading documents to public agencies and courts and simultaneously engaged in entertaining loan modifications while also pursuing foreclosures.  (*Id.*)  Based on these non-particularized allegations, Plaintiffs purport to bring claims against Defendants for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(a) and (c), the consumer protection acts of New York, Massachusetts, and Maryland, and the common law of fraud for the same three states.  PNC is

named as a defendant only in counts one (RICO, 18 U.S.C. § 1962(c)), ten (NY Gen. Bus. Law

§ 349), eleven (New York common law fraud), twelve (Mass. Gen. Laws ch. 93A § 2), thirteen

(Massachusetts common law fraud), fourteen (Md. Code Ann., Com. Law § 13-303) and fifteen

(Maryland common law fraud).

       Despite being named as a Defendant, the SAC fails to identify PNC's role in the

alleged scheme or specify PNC's actions in connection with the underlying foreclosures.   The

few allegations against PNC relate solely to PNC's role as a successor to two former mortgage

companies that allegedly originated two of the underlying loans.  (SAC at ¶ 59.)  Thus, the SAC

alleges that PNC is the successor to National City Corporation, which previously owned First

Franklin Loan Services ("First Franklin").  (*Id.* at ¶¶ 50, 59.)  According to the SAC, "First

Franklin was involved in a mortgage or foreclosure proceeding relating to [Plaintiffs] Martin and

Janice Hogan" (the "Hogans").  (*Id.*)  In 2006, however, National City sold First Franklin to

Merrill Lynch.  (*Id.* at ¶¶ 50, 194c.)  Defendant Bank of America ("BofA"), the acquirer of

Merrill Lynch and hence First Franklin, will therefore defend the Hogans' claims.

       The SAC further alleges that PNC is the successor to FNMC, a division of

National City Bank, which "was involved in a mortgage or foreclosure proceeding[ ] relating to

[Plaintiffs] Benita and William Schriefer" (the "Schriefers").  (*Id.* at ¶ 59.)  The specific causes

of action that relate to the Schreifers' loan and foreclosure are only counts one (RICO, 18 U.S.C.

§ 1962(c)), fourteen (Md. Code Ann., Com. Law § 13-303) and fifteen (Maryland common law

of fraud), since they were residents only of Maryland (SAC at ¶ 28).   Accordingly, PNC's

motion to dismiss only addresses counts one, fourteen and fifteen.

       Significantly, the SAC contains no specific factual allegations describing any

purported wrongdoing by PNC, FNMC or National City with respect to the Schriefers' loan and

foreclosure and PNC acquired National City only **after** the Schriefers originated their loans with FNMC.  (SAC at ¶ 194c.)  Therefore, it appears that the sole basis for naming PNC as a Defendant in this action is the allegation that PNC is the successor to National City and FNMC.  (SAC at ¶¶ 59, 194c.)  Moreover, Plaintiffs' claims against National City and FNMC under the Maryland Consumer Protection Act ("MCPA") and the Maryland common law of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  The SAC neither provides PNC with notice of the claims asserted against its predecessors nor informs PNC of the allegations surrounding their alleged participation in the alleged wrongdoing and, therefore, falls far short of satisfying the requirements of Rule 9(b).  In addition, both Maryland claims are barred by the applicable Maryland statute of limitations.  Simply stated, Plaintiffs' claims are fatally deficient as a matter of law.

Given the fact that the SAC marks Plaintiffs' third attempt to state a cognizable claim against PNC, the SAC should be dismissed with prejudice as to PNC without leave to amend yet again.  As this Court stated during the Pre-Motion Conference, "[s]ince the issues are on the table, I would like [plaintiff] to amend first on the understanding **this is your last best shot, and then there won't be any amendment afterwards**."  *See* Pre-Motion Tr., p. 7 (emphasis added).

## II.   STATEMENT OF FACTS APPLICABLE TO PNC

### A.   The Schriefers' Loan History

On March 15, 2006, the Schriefers obtained a mortgage loan from FNMC, a division of National City Bank of Indiana, in the amount of $750,000 (the "First Loan").  The Schriefers executed a note evidencing their obligation to repay the First Loan at a 6.875% interest rate and a deed of trust securing the First Loan against real property located at 8129

Ventnor Road, Pasadena, Maryland 21122 (the "Property").[1]   On the same date, the Schriefers

obtained a second mortgage loan from FNMC, a division of National City Bank of Indiana, in

the amount of $150,000 (the "Second Loan").   They also executed a note evidencing their

obligation to repay the Second Loan at an 8.5% interest rate and a deed of trust securing the

Second Loan against the Property.[2]   Subsequently, on December 19, 2006, the Schriefers

refinanced their First Loan and Second Loan, with a mortgage loan in the amount of $905,000

from FNMC, a division of National City Bank (the "Refinanced Loan").   The Schriefers

executed a third note evidencing their obligation to repay the Refinanced Loan at a 6.625%

interest rate – a lower interest rate than the First Loan and the Second Loan – and a deed of trust

securing the Refinanced Loan against the Property.[3]   The deed of trust for the Refinanced Loan

was then assigned to National City Mortgage Company.   The assignment was recorded on July 5,

2007 with the Circuit Court for Anne Arundel County in volume 19273, page C454.[4]   FNMC's

---

[1]      True and correct copies of the note and deed of trust for the First Loan are attached as Exhibits A
and B, respectively, to the Affidavit of David H. Pittinsky (the "Pittinsky Aff."). The Court may consider
documents that are relied upon by the plaintiff and are integral to the complaint, as well as publicly
available information when deciding a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152-53 (2d Cir. 2002); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Cortec
Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). The note and deed of trust are integral
to the Complaint because the Plaintiffs' claims are predicated on the terms and effect of those documents.
*See Chambers*, 282 F.3d at 153; *Cortec*, 949 F.2d at 48. The deed of trust also is publicly available since
it has been recorded. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212, 217 (2d Cir. 2004) (courts can "look to public records . . . in deciding a motion to
dismiss"); *Pani*, 152 F.3d at 75 (same).

[2]      True and correct copies of the note and deed of trust for the Second Loan are attached as Exhibits
C and D, respectively, to the Pittinsky Aff. The Court may consider documents that are integral to the
complaint and publicly available information on a motion to dismiss. *See supra*, n.1.

[3]      True and correct copies of the note and deed of trust for the Refinanced Loan are attached as
Exhibits E and F, respectively, to the Pittinsky Aff. The Court may consider documents that are integral
to the complaint and publicly available information on a motion to dismiss. *See supra*, n.1.

[4]      A true and correct copy of the Assignment of the Deed of Trust for the Refinanced Loan is
attached as Exhibit G to the Pittinsky Aff. The Court may consider documents that are integral to the
complaint and publicly available information on a motion to dismiss. *See supra*, n.1.

involvement in the Schriefers' Refinanced Loan was limited to making a loan at a **lower** interest rate than the interest rates for their prior two loans.  According to the SAC, PNC did not acquire National City and FNMC until October 2008 (SAC at ¶ 194c), nearly two years **after** FNMC's origination of the Refinanced Loan.  Thus, it is indisputable that PNC's role herein is limited to its role as a successor to National City and FNMC.

Moreover, contrary to paragraph 209 of the SAC, the deeds of trust for the First, Second and Refinanced Loans unambiguously evidence that the Mortgage Electronic Registration System ("MERS") was not a mortgagee or trustee on any of such Loans.  On the contrary, the trustee on the deeds of trust for each of the three loans was Lawyers Title Services Inc., a Virginia Corp. (Pittinsky Aff., Exs. B, D and F.)  Accordingly, since MERS was not a trustee or mortgagee at the time of the origination of the First, Second and Refinanced Loans by FNMC, all of Plaintiffs' allegations concerning the role of MERS in the claims contained in the SAC are irrelevant so far as PNC is concerned.  *See, e.g.*, SAC at ¶¶ 69-81, 103-107.

### B.    PNC Did Not Participate In The Schriefer Foreclosure

The Schriefers' Refinanced Loan was the subject of a foreclosure action that BofA brought against the Property **four years later**.  *See Bank of Am., N.A. v. Schriefer*, No. C-10-151926 (Md. Cir. Ct. May 7, 2010).[5]  The affidavit pursuant to Md. Real Property Code Ann. § 7-105.1(d) and § 14-207(b)(3), which was attached to the foreclosure complaint, identifies BofA as the owner/holder of the debt. (Pittinsky Aff., Ex. I.)  Moreover, the notice of intent to foreclose, which was also attached to the foreclosure complaint, identified BofA as the secured

---

[5]    True and correct copies of the docket for the Schriefers' foreclosure and the foreclosure complaint with exhibits are attached as Exhibits H and I, respectively, to the Pittinsky Aff.  The Court may consider documents that are integral to the complaint and publicly available information on a motion to dismiss. *See supra*, n.1.

party. (*Id.*) Accordingly, BofA, the foreclosing party, will defend the Schriefers' foreclosure claims.

    **C.**    **PNC's Only Role Herein Is Limited To Its Role As Successor To Its Predecessor's Origination Of The Schriefers' Refinanced Loan**

        BofA is defending the Hogans' loan and foreclosure and the Schriefers' foreclosure. Accordingly, PNC's defense herein is limited to its role as the successor to its predecessor's – FNMC's – role as the originator of the Refinanced Loan, which **lowered** the interest rate on the Schriefers' prior First and Second Loans. The only conclusion given this indisputable fact is that no good deed goes unpunished.

**III.**    **ARGUMENT**

    **A.**    **Legal Standard**

        In two decisions in the last six years – *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 137 (2009) – the Supreme Court established more rigorous standards for complaints to survive motions to dismiss. Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1964-65. In order to defeat a dismissal motion, a plaintiff must allege facts that are sufficient to raise his right to relief "above the speculative level." *Twombly*, 127 S.Ct. at 1965. In sum, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *Iqbal*, 129 S.Ct. at 1949.

    **B.**    **Plaintiffs' Claims Fail As A Matter Of Law Against PNC**

        **1.**    **RICO Claim (Count One)**

        Plaintiffs base their RICO claim on the Defendants' purported fraudulent use of MERS during the origination of Plaintiffs' respective loans and their subsequent foreclosures.

(SAC at ¶¶ 197-214.)  However, as is readily apparent from the Schriefers' loan documents, for all three of their loans – the First, Second and Refinanced Loans – the lender was FNMC and the trustee was Lawyers Title Services Inc. (Pittinsky Aff., Exs. A through F.)  MERS was not involved as a mortgagee or trustee in any of the three loans.  *Id.*  For this reason alone, count one should be dismissed as to PNC.

To the extent Plaintiffs pursue their count one claim against PNC notwithstanding the foregoing undisputed facts, PNC has joined in Defendants' Joint Motion to Dismiss Count One of Plaintiffs' SAC.

### 2.     MCPA Claim (Count Fourteen)

"Maryland courts have not yet extended the scope of . . . assignee liability to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability." *Petry v. Wells Fargo Bank*, 597 F. Supp. 2d 558, 565 (D. Md. 2009).  The MCPA does not expressly impose assignee liability.  *Id.*  Accordingly, "it is undisputable that Maryland common law rejects implied assignee liability" for MCPA claims.  *Onwumbiko v. JP Morgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 170299, at *8 (D. Md. Nov. 30, 2012).  In *Onwumbiko*, plaintiff brought MCPA and common law fraud claims against JPMorgan Chase Bank, N.A. ("JPMorgan") as successor-in-interest to Long Beach Mortgage Company ("Long Beach") based upon Long Beach's alleged fraud.  2012 U.S. Dist. LEXIS at *4, *8.  However, since "Maryland common law rejects implied assignee ability," the court held that plaintiff had "no basis for imputing Long Beach's . . . alleged liability to JPMorgan."  *Id.* at *8; *see also Bezmenova v. Ocwen Financial Corp.*, 2013 U.S. Dist. LEXIS 43621, at *9-10 (D. Md. March 27, 2013) and *Brown v. Bank of America, N.A.*, 2012 U.S. Dist. LEXIS 13168, at *15 (D. Md. Feb. 3, 2012).  For the same reason, there is no basis for imputing any fraud allegedly perpetrated by FNMC or National City to their successor PNC.  Thus, Plaintiffs' MCPA claim

should be dismissed for this reason alone, as PNC admittedly had no involvement in the Schriefers' loans or foreclosure proceedings.

Furthermore, this action was not filed until November 26, 2012. (Dkt. 1.) At that time, the Schriefers were not even plaintiffs. The amended complaint was filed on January 28, 2013. (Dkt. 32.) The Schriefers were added as plaintiffs to the amended complaint, but it did not assert a claim under the MCPA. It was not until the second amended complaint was filed on April 12, 2013 that a claim was asserted on behalf of the Schriefers under the MCPA. (Dkt. 74.) The Schriefers' Refinanced Loan was originated by FNMC on December 19, 2006. (Pittinsky Aff., Exs. E and F.) Accordingly, the Schriefers' MCPA claim against PNC, as the successor to National City and FNMC, is barred by Maryland's three year statute of limitations. *Brown*, 2012 U.S. Dist. LEXIS 13168, at *15; Md. Code Ann., Cts. & Jud. Proc. § 5-101.

In addition, Plaintiffs have failed to state a claim pursuant to the MCPA against PNC. The MCPA prohibits "unfair or deceptive trade practices." *See* Md. Code Ann., Com. Law § 13-301. As an initial matter, because Plaintiffs' MCPA claim sounds in fraud, it is subject to the heightened pleading standard of Rule 9(b). *Spaulding v. Wells Fargo Bank, N.A.*, 2013 U.S. App. LEXIS 7866, at *27 (4th Cir. Apr. 19, 2013) (recognizing that MCPA claims, which sound in fraud, are subject to Rule 9(b)); *Marchese v. JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 3349, at *27 (D. Md. Jan. 8, 2013) ("For the MCPA claims, [plaintiff] is, therefore, required to allege the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (citations omitted).

Here, Plaintiffs group PNC with four other Defendants and refer to them in unison as the "Maryland Defendants." (SAC at ¶ 358.) Plaintiffs assert broad allegations that the

Maryland Defendants made misrepresentations in connection with Plaintiffs' loan originations and foreclosures (*Id.* at ¶ 359.).   Rule 9(b), however, precludes Plaintiffs from lumping Defendants together when pleading fraud. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) ("A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud.").   Plaintiffs' MCPA claim necessarily fails because they have not identified the time, place, and contents of PNC's predecessors' misrepresentations.  Such vague pleading consistently results in the dismissal of an MCPA claim.  *See, e.g., Marchese*, 2013 U.S. Dist. LEXIS 3349, at *28 (dismissing MCPA claim where plaintiff "made no allegations of false statements related to the Foreclosure Action beyond missing or incorrect signatures"); *Spaulding*, 2013 U.S. App. LEXIS 7866, at *28-29 (affirming dismissal of MCPA claim because appellants' "vague generalization" about appellee's purported misrepresentations did not comply with Rule 9(b)).

Additionally, to state a claim under the MCPA, a plaintiff must allege that an "actual injury or loss occurred." *See, e.g., Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) ("establish[ing] that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable"); *Willis v. Countrywide Home Loans Servicing, L.P.*, 2009 U.S. Dist. LEXIS 120010, at *6 (D. Md. Dec. 23, 2009).  In *Willis*, the Court dismissed the MCPA claim because the plaintiff failed to allege that the defendant caused any specific harm apart from the debt that the plaintiff already owed. *Id.*  Similarly, here, Plaintiffs have failed to sufficiently plead an actual injury or loss as a result of PNC's predecessors' alleged misrepresentations apart from the debts they owed.

Moreover, to the extent Plaintiffs' MCPA claim is predicated on allegedly unconsummated loan modifications under the federal Home Affordability Modification Program ("HAMP") (SAC at ¶ 360), such claim similarly fails. *Farwell v. Story*, 2010 U.S. Dist. LEXIS 126661, at *8-9 (D. Md. Dec. 1, 2010) (dismissing MCPA claims arising out of alleged HAMP violation where plaintiff did not allege that she relied on defendant's actions to her economic detriment); *Goss v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 2510, at *10-11 (D. Md. Jan. 8, 2013) (dismissing MCPA claim based on purported misleading representations regarding a HAMP loan modification where plaintiffs could not prove they reasonably and detrimentally relied on such statements).

Here, the purported misrepresentation in connection with the loan modifications is the allegation that PNC simultaneously engaged in loan modification discussions while also pursuing foreclosure. (SAC at ¶ 360.) This claim founders for two reasons. First, PNC could not have "simultaneously" engaged in loan modification discussions and foreclosure because National City, FNMC and PNC were not involved in the foreclosure of the Schriefers' loan. *See* p. 5, *supra*, and Pittinsky Aff. Exs. H and I. Second, Plaintiffs have failed to specify what misrepresentations were allegedly made by National City, FNMC or PNC in connection with any loan modification discussions, much less any reliance upon such non-particularized misrepresentations. Thus, the Schriefers' MCPA claim fails as a matter of law and should be dismissed.

### 3.    Maryland Common Law Fraud (Count Fifteen)

As set forth above with respect to Count Fourteen predicated on the MCPA, there is no assignee liability under Maryland common law. Accordingly, Plaintiffs common law fraud claim against PNC, as the successor to National City and FNMC, should be dismissed for this reason alone. *See* p. 7, *supra*.

Moreover, since the same three year statute of limitations – Md. Code Ann., Cts. & Jud. Proc. § 5-101 – applies to the Schriefers' common law fraud claim, this claim is also barred for this reason. *See* p. 8, *supra*, and *Reid v. New Century Mortgage Corp.*, 2012 U.S. Dist. LEXIS 176765, at *14 n.2 (D. Md. Dec. 13, 2012).

Like their MCPA claim, the Schriefers' claim for common law fraud under Maryland law is required to be pled with specificity in accordance with Rule 9(b). *Spaulding*, 2013 U.S. App. LEXIS 7866, at *30 ("Moreover, a common law fraud claim is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).") Plaintiffs generally allege that PNC knowingly made misrepresentations or omissions in connection with the foreclosure proceedings. (SAC at ¶ 365.) However, National City, FNMC and PNC were not involved in the foreclosure of the Schriefers' loan. *See* p. 5, *supra*. Accordingly, none of them could have made any misrepresentations or omissions in connection therewith.

Moreover, Plaintiffs' fraud claim consists only of bare-boned allegations and a recitation of the elements that constitute a fraud claim. (*Id.* at ¶¶ 365-70.) However, "mere vague, general, or indefinite statements are insufficient" to state a claim for fraud under Maryland law. *Fowler v. Benton*, 229 Md. 571, 185 A.2d 344, 349 (Md. 1962). Plaintiffs have not identified a single specific misrepresentation made by National City, FNMC or PNC and, therefore, their Maryland common law fraud claim fails as a matter of law and should be dismissed. *Schlenger v. Fidelity Employer Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) (Seibel, J.) ("Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9.") (collecting cases)); *Fitzgerald v. Chase Home Finance, LLC*, 2011 U.S. Dist. LEXIS 156395, at *15-18 (S.D.N.Y. Feb. 28, 2011) (Seibel, J.) (dismissing fraud claim pursuant to Rule

9(b) when plaintiffs failed to specify which of the three defendants made the alleged fraudulent statement).

## IV.    CONCLUSION

For the foregoing reasons, Defendant PNC respectfully requests that its Motion to Dismiss be granted and Judgment of Dismissal be entered in its favor and against Plaintiffs with prejudice and without leave to amend.

Respectfully submitted,

DATED:  June 20, 2013
        New York, New York

/s/ Julian W. Friedman
Julian W. Friedman
jfriedman@stillmanfriedman.com
STILLMAN & FRIEDMAN, P.C.
425 Park Avenue
New York, NY  10022
T:  212.223.0200
F:  212.223.1942

/s/ David H. Pittinsky
David H. Pittinsky (*Pro Hac Vice*)
pittinsky@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
T: 215.864.8117
F: 215.864.8999

*Attorneys for The Defendant PNC Financial Services Group, Inc.*