**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| JOHN ANCTIL, et al., ) | ECF Case |
| ) | |
| Plaintiffs, ) | **Civil Action No. 7:12-cv-08572 (CS)** |
| ) | |
| v. ) | Hon. Cathy Seibel |
| ) | |
| ALLY FINANCIAL, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

_____ )


**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.      PLAINTIFFS' CLAIMS ARE BARRED BY MULTIPLE THRESHOLD
       ISSUES. ................................................................................................................ 2

       A.      The Rooker-Feldman Doctrine Bars Plaintiffs' Claims......................................... 2

       B.      Res Judicata Precludes Plaintiffs From Asserting That the Foreclosure
              Judgments Are Invalid. ........................................................................................ 4

       C.      Plaintiffs' Claims Against Entities That Played No Role in the Alleged
              Foreclosure Proceedings Should Be Dismissed........................................................ 6

       D.      Plaintiffs' Claims Against the Parent Company Defendants Should be
              Dismissed............................................................................................................. 8

       E.      Multiple Plaintiffs' State and Federal Claims Are Barred by the
              Applicable Statutes of Limitations........................................................................ 9

II.     PLAINTIFFS' CLAIMS FAIL ON THEIR MERITS...................................................... 13

       A.      Plaintiffs Concede that Their MERS-Related and Foreclosure-Related
              Claims Are Meritless. ......................................................................................... 13

       B.      The Second Amended Complaint Fails to State a Cognizable Claim for
              Relief Under RICO. ............................................................................................. 13

       C.      Plaintiffs' State Consumer Protection Law Claims Are Meritless. .................... 15

       D.      Plaintiffs Do Not State a Claim for Common Law Fraud Under New York,
              Massachusetts, or Maryland Law. ....................................................................... 18

III.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE. ......................................... 20

CONCLUSION................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*101 McMurray, LLC v. Porter*,
    No. 10-CV-9037, 2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) (Seibel, J.) ........................... 20

*Apple v. Atlantic Yards Dev. Co. LLC*,
    No. 11-CV-5550, 2012 WL 2309028 (E.D.N.Y. June 18, 2012) .................................... 17, 16

*Bean v. Bank of N.Y. Mellon*,
    No. 12-CV-10930, 2012 WL 4103913 (D. Mass. Sept. 18, 2012) ........................................ 17

*Burns ex rel. Off. of Pub. Guard v. Hale & Dorr LLP*,
    445 F. Supp. 2d 94 (D. Mass. 2006) ..................................................................................... 18

*Campbell v. Bank of New York Mellon Trust Co., N.A.*,
    No. 11-CV-1588-CS, 2012 WL 2952852 (S.D.N.Y. May 8, 2012) .................................... 2, 3

*Casale v. Tillman*,
    558 F.3d 1258 (11th Cir. 2009) .............................................................................................. 4

*Case Fin., Inc. v. Alden*,
    No. 1184-VCP, 2009 WL 2581873 (Del. Ch. Aug. 21, 2009) ................................................ 8

*Chevron Corp. v. Donzinger*,
    886 F. Supp. 2d 235 (S.D.N.Y. 2012) .................................................................................... 6

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008) .................................................................................................. 16

*Corley v. Rosewood Care Center, Inc. of Peoria*,
    142 F.3d 1041 (7th Cir. 1998) ........................................................................................ 14, 15

*Dodds v. Cigna Secs. Inc.*,
    12 F.3d 346 (2d Cir. 1993) .................................................................................................... 10

*Domino Media, Inc. v. Kranis*,
    9 F. Supp. 2d 374 (S.D.N.Y. 1998) ........................................................................................ 5

*Dwoskin v. Bank of America, N.A.*,
    No. 11-CV-1109, 2013 WL 427362 (D. Md. Jan 31, 2013) .................................................. 17

*Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005) ................................................................................................................ 4

## TABLE OF CONTENTS
(continued)

**Page**

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006)....................................................................................................10

*Figueroa v. MERSCORP, Inc.*,
766 F. Supp. 2d 1305 (S.D. Fla. 2011), *aff'd*, 477 Fed. App'x 558 (11th Cir. 2012)........3, 4, 5

*Fletcher v. Atex, Inc.*,
68 F.3d 1451 (2d Cir. 1995).......................................................................................................8

*Goddard v. Citibank, NA*,
No. 04-CV-5371, 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006)...............................................5

*Hinds v. Option One Mortg. Corp.*,
No. 11-CV-06149, 2012 WL 6827477 (E.D.N.Y. Dec. 6, 2012)..............................................5

*Hoblock v. Albany Cnty. Bd. of Elections*,
422 F.3d 77 (2d Cir. 2005)........................................................................................................2

*In re UBS AG Secs. Litig.*,
No. 07-CV-11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).........................................13

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012).....................................................................................................10

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999).....................................................................................................15

*Lama Holding v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996)...............................................................................................................20

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003).....................................................................................................15

*M&T Mortg. Corp. v. White*,
736 F. Supp. 2d 538 (E.D.N.Y. 2010) ................................................................................16, 17

*Md. Envtl. Trust v. Gaynor*,
803 A.2d 512 (Md. 2002) .........................................................................................................20

*O'Brien v. Nat'l Prop. Analysts Partners*,
719 F. Supp. 222 (S.D.N.Y. 1989) ............................................................................................9

*Ouch v. Federal Nat'l Mortg. Ass'n*,
No. 11-CV-12090, 2013 WL 139765 (D. Mass. Jan 10, 2013)...............................................18

TABLE OF CONTENTS
(continued)

Page

*Papasan v. Allain*,
  478 U.S. 265 (1986)................................................................................6

*Putter v. N. Shore Univ. Hosp.*,
  7 N.Y.3d 548 (2006) ............................................................................12

*Rotella v. Wood*,
  528 U.S. 549 (2000)..............................................................................14

*S.E.C. v. Wyly*,
  No. 10-CV-5760, 2013 WL 2450545 (S.D.N.Y. June 6, 2013) ............10

*SEC v. Syron*,
  No. 11-CV-9201, 2013 WL 1285572 (S.D.N.Y. Mar. 28, 2013) ..........13

*Secured Sys. Tech. v. Frank Lill & Son, Inc.*,
  No. 08-CV-6256, 2012 WL 4599722 (W.D.N.Y. Oct. 1, 2012) .............8

*Simpson v. Putnam Cnty. Nat'l Bank of Carmel*,
  20 F. Supp. 2d 630 (S.D.N.Y. 1998).....................................................5

*Slaney v. Westwood Auto, Inc.*,
  322 N.E.2d 768 (Mass. 1975) ..............................................................20

*Swiatkowski v. Citibank*,
  745 F. Supp. 2d 150 (E.D.N.Y. 2010), *aff'd*, 446 Fed. App'x 36 (2d Cir. 2011).....................3

*Sykes v. Mel Harris & Assocs., LLC*,
  757 F. Supp. 2d 413 (S.D.N.Y. 2010)..................................................17

*U1IT4less, Inc. v. FedEx Corp.*,
  896 F. Supp. 2d 275 (S.D.N.Y. 2012) (Seibel, J.) ................................20

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998).................................................................11

STATUTES

18 U.S.C.
  § 1962(a) ...............................................................................................15

Mass. Gen. Laws
  ch. 93A............................................................................................17, 18
  Ch. 93A, § 9(3) .....................................................................................18

**TABLE OF CONTENTS**
(continued)

**Page**

New York's Gen. Bus. Law
  § 349.................................................................................................................16, 18

OTHER AUTHORITIES

MERS: MY MORTGAGE INFO, http://www.mersinc.org/information-for-homeowners/my-
  mortgage-info (last visited Sept. 11, 2013)............................................................10

Defendants hereby respectfully submit this Joint Reply in further support of their Joint Motion to Dismiss (the "Joint Motion" or "Joint Mot.").  Plaintiffs' Second Amended Complaint ("SAC").[1]

## INTRODUCTION

In their Opposition, Plaintiffs offer neither arguments nor authorities sufficient to save their claims from dismissal, nor to escape the consequences of defaulting on mortgage loans they knowingly obtained.  Plaintiffs' theme is exceedingly simple: Defendants conspired to create the MERS system as part of a grand, secret, "fraudulent scheme" to take their homes away.  Yet courts across the country have repeatedly held that neither MERS itself, nor the naming of MERS as a lender's nominee, nor the assignment of loans using MERS, is unlawful.  Plaintiffs offer no persuasive argument or authority to the contrary; they ignore key facts and principles of law, and rely upon irrelevant authorities or strained interpretations of relevant cases.  Plaintiffs have even sued Defendants that played no role in the alleged foreclosures.  This lawsuit is a desperate, generalized grievance against the entire mortgage industry, not a viable claim for redress of specific harms arising from specific misconduct.  For this reason, the reasons set forth below, and those reasons set forth in the Joint Motion, Plaintiffs' claims should be dismissed. Because this Court has given Plaintiffs ample warning and opportunity to cure the defects in their pleadings, and they have failed to do so, dismissal should be *with prejudice*.

## ARGUMENT

**I.    PLAINTIFFS' CLAIMS ARE BARRED BY MULTIPLE THRESHOLD ISSUES.**

**A.    The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims.**

As Defendants explained in their Joint Motion, this Court lacks subject matter

---

[1]      Terms not defined in this memorandum have the same meaning as in the Joint Motion. Plaintiffs' Response to the Joint Motion is referred to herein as the "Opposition" or "Opp'n."

jurisdiction over Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine because they are predicated on adverse state court foreclosure judgments.  (*See* Joint Mot. at 7-13.)  Plaintiffs concede that their claims satisfy two of *Rooker-Feldman*'s four elements:  (i) Plaintiffs have already lost in state court, and (iv) their foreclosure judgments were rendered before this action was commenced.  *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  Plaintiffs dispute that they (ii) "complain[] of an injur[y] caused by [a] state-court judgment" and (iii) seek "review and rejection of [that] judgment."  *Id.*  The essence of Plaintiffs' claims, however, is the loss of their properties as a result of the foreclosure judgments, and any award of damages arising out of the foreclosure of any property necessarily requires a review and rejection of that judgment.  "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine."  *Campbell v. Bank of New York Mellon Trust Co., N.A.*, No. 11-CV-1588-CS, 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012).

A review of the substance of the SAC demonstrates that Plaintiffs have failed to identify ***any*** economic loss apart from the loss of their properties following the foreclosure judgments. Plaintiffs attempt to camouflage this *Rooker-Feldman* infirmity by making vague and unspecified allegations regarding the origination of the mortgages, supposed breaks in chain of title, and submission of purportedly false documents to county clerk's offices.  (*See* Opp'n at 10.) Yet, Plaintiffs do not allege any specific economic injury caused by these alleged actions and instead vaguely assert that such alleged actions were "detrimental to Plaintiffs' property interests" and resulted in "null or invalid foreclosures."  (SAC ¶¶ 115, 114.)  In other words, even Plaintiffs acknowledge that the only alleged loss that ***they themselves*** have suffered flows from the foreclosure judgments, and that any award of damages would necessarily rest upon a review and rejection of those prior final judgments.

Plaintiffs unsuccessfully attempt to distinguish the cases cited by Defendants in support of the application of the *Rooker-Feldman* doctrine.  Plaintiffs contend that *Swiatkowski* is inapplicable because the plaintiff there sought reversal of a foreclosure judgment, not money damages.  (*See* Opp'n at 10.)  Plaintiffs, however, misread *Swiatkowski*.  As that court recognized, "[a]lthough plaintiff has labeled the relief in the complaint as seeking monetary damages, it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment."  *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd*, 446 Fed. App'x 36 (2d Cir. 2011).  Similarly, the whole purpose of Plaintiffs' action here is to undo the economic impact of having lost their properties through foreclosure.

In the same vein, Plaintiffs fail to distinguish *Campbell*, in which the plaintiffs argued that they sought only money damages, not equitable relief vacating the foreclosure judgment.  *See Campbell*, 2012 WL 2952852 at *6.  The court there concluded that the alleged injuries stemming from similar claims of fraud and misrepresentations were nonetheless caused by the state court judgment.  *See id. at* *7.  Similarly, the Southern District of Florida in *Figueroa* held that the plaintiff and putative class members could only have been "damaged" by the loss of their homes if the foreclosure judgments, determined to be proper by the state courts, were wrongful.  *See Figueroa v. MERSCORP, Inc.*, 766 F. Supp. 2d 1305, 1323 (S.D. Fla. 2011), *aff'd*, 477 Fed. App'x 558 (11th Cir. 2012) ("This suit is barred by *Rooker-Feldman* because Plaintiff's claims can only succeed if the Court implicitly or explicitly determines the … state court wrongly decided the foreclosure issue."); *id.* at 1320 & n.20 (citing cases).  The same applies here.

Plaintiffs also cannot avoid the *Rooker-Feldman* doctrine by arguing that their claims are based upon "fraud in the procurement of the judgment."  (*See* Opp'n at 8-9.)  Although some cases support this general legal principle in limited circumstances, Plaintiffs' allegations are

insufficient to establish that any of their foreclosure judgments was procured by fraud.  *See infra* § I.B.  The SAC primarily consists of sweeping generalizations and offers only two discrete "examples" involving two Defendants.  Plaintiffs cannot satisfy their obligation to plead fraud in the procurement of a judgment with particularity against **each** Defendant by their allegations regarding only the mortgages of Plaintiffs Troske and Zicaro.  Moreover, as Defendants demonstrated in their Joint Motion, these examples do not include factual allegations sufficient to establish fraudulent procurement of the foreclosure judgments.  (*See* Joint Mot. at 25-29.)

Under *Rooker-Feldman*, federal district courts cannot review state court judgments because "that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court."  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).  This Court cannot decide this case without reviewing those judgments.  Therefore, the *Rooker-Feldman* doctrine bars Plaintiffs' claims.

**B.**     ***Res Judicata* Precludes Plaintiffs From Asserting That the Foreclosure Judgments Are Invalid.**

Because the only plausible injuries alleged by Plaintiffs arise out of adverse state court judgments, *Rooker-Feldman* and preclusion principles apply.  *See Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-93 (2005); *Figueroa*, 766 F. Supp. 2d at 1323.  Plaintiffs admit, as they must, that they all had valid mortgages on which they defaulted.  (*See* Opp'n at 39.)  Thus, the foreclosures were proper so long as the counterparty in each case was the correct one.  Lack of standing is, therefore, the only plausible basis upon which Plaintiffs could assert that they suffered legal injury as a result of those judgments.  (*See id* at 3; SAC ¶¶ 110, 192.)[2]  The foreclosure courts all resolved the threshold and jurisdictional issues, including standing, in

---

[2]     *See also Figueroa*, 766 F. Supp. 2d at 1324 n.27 ("[I]f the foreclosures were proper, [plaintiffs] would not be 'damaged' by the foreclosures even though they lost their homes because those losses would be a *proper* legal result.") (emphasis in original).

Defendants' favor.  Absent any superseding judgments, Plaintiffs are collaterally estopped from asserting as fact that any legal or jurisdictional issue in those cases was wrongly decided.  (*See* Joint Mot. at 13-14); *accord Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) ("[E]ven if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding.").

Plaintiffs cite two cases from the Eastern District of New York[3] for the proposition that a prior judgment may be collaterally attacked upon a demonstration that such judgment was "fraudulently procured."  (Opp'n at 11-12.)  These cases are inapposite for the simple reason that Plaintiffs in this case make no such demonstration.  They allege only a grand "fraudulent scheme" (*see* SAC ¶¶ 2, 36, 160, 193, 211, 212; Opp'n at 7-9, 11) without a single specific *factual* allegation that would even raise an inference, let alone demonstrate, that any one of Plaintiffs' foreclosure judgments was fraudulently procured.  (*See* Joint Mot. at 4-5, 38-39); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 388 (S.D.N.Y. 1998) (quoting *Bell v. Town Bd. of Town of Pawling*, 146 A.D.2d 729, 730 (N.Y. 2d Dep't 1989)) ("Collateral attack [on a prior judgment] on the grounds of fraud must demonstrate 'fraud in ***the very means by which the judgment was procured***[.]'") (emphasis added)).  As courts throughout the country have repeatedly held, and as Defendants amply demonstrated in the Joint Motion, MERS is not a "fraudulent scheme."  (*See* Joint Mot. at 22-25, nn.13-17.)  Certainly its mere existence cannot raise the inference that any particular borrower's foreclosure judgment was procured by fraud.[4]

---

[3]     *Hinds v. Option One Mortg. Corp.*, No. 11-CV-06149, 2012 WL 6827477 (E.D.N.Y. Dec. 6, 2012); *Goddard v. Citibank, NA*, No. 04-CV-5371, 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006).

[4]     Neither would it shift the burden of proof to Defendants to show that any such judgment was ***not*** procured by fraud.  *See Chevron Corp. v. Donzinger*, 886 F. Supp. 2d 235, 279

The naked assertion that Plaintiffs' foreclosure judgments were fraudulently procured is "a legal conclusion couched as a factual allegation," which this Court is "not bound to accept as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Nothing in the SAC or the Opposition demonstrates to this Court that ***any*** of the Plaintiffs' foreclosure judgments was procured by fraud or that any Defendant in any one of those cases lacked standing to foreclose.  Accordingly, Plaintiffs are collaterally estopped from making a ***factual*** allegation to the contrary before ***this*** Court.

### C.   Plaintiffs' Claims Against Entities That Played No Role in the Alleged Foreclosure Proceedings Should Be Dismissed.

Defendants have established that Plaintiffs' claims against those Defendants that originated certain of the subject loans, but played no role in the alleged foreclosure proceedings (*i.e.*, the "Originator Defendants"), should be dismissed because, *inter alia*, Plaintiffs' alleged injuries relate exclusively to the foreclosure and enforcement of the subject loans.  (*See* Joint Mot. at 14-16.)

Plaintiffs do not dispute that the Originator Defendants had no role in the foreclosure proceedings, but rather reiterate their entirely unsupported argument that a viable cause of action exists against the Originator Defendants because they made mortgages "designed to be brief." (Opp'n at 7, 10, 13.)  Once again, Plaintiffs do not identify any cause of action they can possibly allege against a lender for making a mortgage "designed to be of short duration."  (SAC ¶ 109, 138.)  Beyond the circumstantial fact of the mortgages' average duration (*see* SAC ¶¶ 109, 138), there is no allegation of any conduct by any of the Originator Defendants to support the claim that the loans were made with the ***intent*** that they would quickly go into default, or that such

(S.D.N.Y. 2012) ("[A] party resisting enforcement of a foreign judgment on the ground of fraud in its procurement bears the burden of proving the alleged fraud.").

default was a consequence of any actions of the Originator Defendants.

Plaintiffs also fail to identify any benefit obtained by the Originator Defendants, or the entities that purchased the loans, from the allegedly "short duration" of the loans.  The mortgages themselves do not provide for any potential enhanced recovery to the lender resulting from a foreclosure.  (*See, e.g.*, Declaration of Michael A. Weiss dated June 20, 2013 and included with Defendants' Joint Motion (the "Weiss Decl.") ¶¶ 3, 6, Exs. A, D.)  Thus, Plaintiffs' arguments are not plausible and make no sense.  Further, Plaintiffs' allegation that the Originator Defendants benefited from the loans going into default and then being foreclosed upon within a few years of origination is wholly inconsistent with their allegations that such defendants "originat[ed] mortgages" and then quickly "s[old] the loans . . . to investors."  (SAC ¶¶ 64, 67, 105.)  If the loans were sold, then the Originator Defendants would not be affected by or reap any benefit from the foreclosures.

Plaintiffs also assert in their Opposition that the assignments from MERS of the Lopes, Lapidez, and Bernat/Demers mortgages were dated ten days after (in the case of Lopes) and one day before (in the case of Lapidez and Bernat/Demers) the respective foreclosures were filed.  (*See* Opp'n at 14-15.)  Even if these facts were true, they do not prove that originators were still the owners of these loans at the time the foreclosures were filed or when the requisite notices were sent.  Rather, according to Plaintiffs' own allegations, the originators engaged in "selling and transferring" the loans they made within the MERS system to other MERS members shortly after the loans were made.  (*See* SAC ¶¶ 64, 67, 105.)  Plaintiffs ignore that assignments allegedly dated prior to the closing could have been prepared beforehand in order to be released for recording after the closing, and fail to cite any authority that would prohibit such a practice.  And in any event, these issues should have been raised by Plaintiffs in their respective state

foreclosure proceedings.  *See supra* § I.B.

Accordingly, and as described in Defendants' Joint Motion, Plaintiffs' claims against the Originator Defendants fail as a matter of law and should be dismissed.

### D.    Plaintiffs' Claims Against the Parent Company Defendants Should be Dismissed.

The SAC falls far short of satisfying the heavy burden required to pierce the corporate veils of the Parent Company Defendants, and the Opposition fails to show otherwise.[5]  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995).  Assuming that Delaware law applies here, "[t]o prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present.'"  *Id.* (citation omitted).  When deciding whether to pierce the corporate veil under Delaware law, courts consider the following factors:

> Whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a façade for the dominant shareholder.

*Fletcher*, 68 F.3d at 1458.[6]

Here, Plaintiffs argue that DBAG and DBNTC are "indistinguishable" based on allegations that the area code and first four digits of their telephone numbers are allegedly the same; "they ***apparently*** share offices;" and DBNTC is allegedly DBAG's contact for mortgage-backed securities, so, in other words, the parent and subsidiary companies may have business

---

[5]      Plaintiffs argue that Pennsylvania law applies as to PNC; however, PNC is not included within the Parent Company Defendants.

[6]      "Delaware law disfavors alter ego claims, and requires a strong showing in order to pierce the corporate veil."  *Secured Sys. Tech. v. Frank Lill & Son, Inc.*, No. 08-CV-6256, 2012 WL 4599722, at *3 (W.D.N.Y. Oct. 1, 2012); *see also Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009).

dealings.[7]  (*See* Opp'n at 16 (emphasis added).)  Plaintiffs argue that Citibank and Citigroup "are essentially a single corporate entity" based on the allegation that "CitiMortgage operates out of Citibank branch locations."  (*Id.*)  Plaintiffs make no argument with regard to JPMC's alleged dominion over Chase.  (*See id.*)  None of these allegations touches upon any of the factors that courts consider in a veil-piercing analysis, nor even suggests that the Parent Company Defendants and their subsidiaries "operated as a single economic entity" or that there is an "element of injustice or unfairness" present.

Plaintiffs also argue that the Parent Company Defendants have not challenged the Ninth Cause of Action in the SAC.  This argument is a red herring.  The Parent Company Defendants—the same as all other Defendants—have moved to dismiss the SAC in its entirety. *See infra* § II.B.

E.   **Multiple Plaintiffs' State and Federal Claims Are Barred by the Applicable Statutes of Limitations.**

Plaintiffs do not deny that many of their claims were filed beyond the applicable statutes of limitations.  (*See* Joint Mot. at 19-22.)  Instead, they argue that these statutes of limitations should be tolled by Defendants' alleged fraudulent concealment.  (*See* Opp'n at 17-20.) Plaintiffs, however, meet none of the requirements for tolling.  Plaintiffs fail to demonstrate that "the [D]efendants *actively prevented* [them] from discovering the basis of [their] claim[s]." *Dodds v. Cigna Secs. Inc.*, 12 F.3d 346, 352 (2d Cir. 1993) (emphasis added); *S.E.C. v. Wyly*, No. 10-CV-5760, 2013 WL 2450545, at *4 n.53 (S.D.N.Y. June 6, 2013) ("fraudulent concealment is available only where defendant took affirmative steps *beyond the allegedly*

---

[7]     The SAC does not assert these alleged contacts—or any specific contacts—as between DBAG and MortgageIT (*see* SAC ¶ 194(b)), and Plaintiffs are not permitted to add new allegations now.  *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

*wrongful activity* itself to conceal its activity from the plaintiff") (emphasis in original; internal quotation marks and alteration omitted)).  Neither do Plaintiffs establish, as they must, that they "exercised due diligence in pursuing the discovery of the claim[s] during the period [they] seek[] to have tolled."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012).  Thus, Plaintiffs' conclusory allegations of fraudulent concealment (*see* SAC ¶¶ 187-91) do not defeat Defendants' statute of limitations defense.

*First*, many of the "facts" that Plaintiffs argue were "concealed" were never, in fact, hidden from Plaintiffs, and no allegation in the SAC plausibly indicates that they were.  As an initial matter, the existence and use of MERS itself were never concealed.  Where MERS is named as the lender's nominee in a mortgage, it is plainly identified on the face of the actual instrument that the borrower signs, on the very first page.  (*See* Weiss Decl., Ex. A at 1.) Plaintiffs were, therefore, on notice from the outset of the involvement and role of MERS.

Plaintiffs' argument that Defendants' use of MERS "concealed" from Plaintiffs the transfers and identities of assignees of their mortgages, is belied by the SAC.  (Opp'n at 18-19.) While MERS is a private system insofar as it is not operated by a public authority, MERS is *not* closed to the public.  The MERS website provides information to borrowers, including "current servicer and investor" via a secure website and toll-free number.[8]  Indeed, Plaintiffs used MERS to gather information about their mortgages for this lawsuit.  (*See* SAC ¶ 57 ("According to information *publicly available through the Mortgage Electronic Registration System website* . . . .") (emphasis added).)  Plaintiffs' characterization of MERS as an instrument of

---

[8]      *See* MERS: MY MORTGAGE INFO, http://www.mersinc.org/information-for-homeowners/my-mortgage-info (last visited Sept. 11, 2013).  The Court may consider the MERS website in connection with the Joint Motion because Plaintiffs have cited it extensively, incorporating it into their pleadings as well as their Opposition brief.  (*See* SAC ¶¶ 144-45, 149, 170; Opp'n at 19, 32, 33.); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

"concealment" is thus belied by their own pleadings.

Plaintiffs also fail to allege concealment of other facts that only now, in the Opposition, they say were "concealed." Plaintiffs make no allegation in the SAC that Defendants' alleged "dual-tracking home loan modifications and foreclosures" were concealed. (*See* Opp'n at 19.) Plaintiffs' indecipherable statement that "Defendants' omissions include . . . dual-tracking" (SAC ¶ 190), without any explanation of how the act of dual-tracking itself can be an "omission," does not amount to an allegation of fraudulent concealment. Similarly, the SAC is devoid of any allegations explaining how "failing to disclose material information necessary to establish standing to initiate foreclosure actions" constitutes fraudulent concealment. (Opp'n at 19 (citing SAC ¶ 190).) Plaintiffs cannot now, in their Opposition, venture beyond the SAC by introducing new allegations of concealment. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (a party cannot amend his or her complaint through an opposition brief).

Plaintiffs also fail to demonstrate how Defendants' use of MERS wrongfully "concealed" the alleged existence of "robo-signers," or how "robo-signing" caused them any injury.[9] Plaintiffs make no plausible allegation that absent the general existence of "robo-signing," any plaintiff would have avoided foreclosure. Plaintiffs' allegation that Defendants "issu[ed] income statements that reflected accounting standards to further the fraudulent scheme" also does not bear on Plaintiffs' defaults or the subsequent foreclosures. (Opp'n at 19.)

Moreover, any "concealment" of the identity of any Plaintiff's mortgage assignee has no bearing on their claimed injury, viz., the "extinguish[ment of] plaintiffs' property interests and legal protections intended to protect those interests" when Defendants instituted foreclosure

---

[9]     The exceptions are plaintiffs Weber, Troske, and Zicaro, for whom Plaintiffs do allege—cursorily—that someone "robo-signed" documents in connection with their mortgage. (*See* SAC ¶¶ 33, 118, 135.) Nevertheless, for even these plaintiffs, the SAC contains no allegation that absent "robo-signing," these plaintiffs would have avoided foreclosure.

proceedings.  (*See* SAC ¶¶ 212, 320.)  Whether or not Plaintiffs were made aware of transfers of their mortgages or the identity of assignees, they still would have defaulted on their loans and "suffered" the foreclosure of their properties.  More importantly, federal courts have upheld the use of MERS to effect assignments and dismissed related fraud claims time and time again.  (*See* Joint Mot. at 23-25, nn.14-17); *infra* § II.A.

Finally, Plaintiffs oddly argue that a discrete statement on MERS's website exemplifies Defendants' fraudulent concealment.  (Opp'n at 19.)  As discussed below, MERS is not a defendant in this case, and Plaintiffs do not establish how a ***true*** statement made by a non-party can be imputed to Defendants as proof of the latter's fraudulent concealment.  *See infra* § II.D.  In the same vein, statements made by the former CEO of MERS about the knowledge of MERS and the actions of MERS officers (*see* Opp'n at 19 (citing SAC ¶ 175)), are not plausible allegations of fraudulent concealment by Defendants here.

Plaintiffs cannot demonstrate that they were "prevented from filing an action within the applicable statute of limitations due to [their] reasonable reliance on deception, fraud or misrepresentations by" Defendants.  *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552-53 (2006); (*see also* Opp'n at 17-18 (citing the same standard in the Second Circuit, Maryland, and Massachusetts courts)).  Indeed, the public nature of the foreclosure process inherently disproves Plaintiffs' allegations, as the allegedly wrongful foreclosure proceedings and the harm allegedly flowing therefrom – *i.e.*, foreclosure and loss of their properties – cannot be affirmatively concealed.  A contrary conclusion defies logic.  Thus, their claims should not be equitably tolled.

## II.     PLAINTIFFS' CLAIMS FAIL ON THEIR MERITS.

### A.     Plaintiffs Concede that Their MERS-Related and Foreclosure-Related Claims Are Meritless.

Plaintiffs' Opposition includes a section corresponding to each of the arguments made by

Defendants in their Joint Motion—except one. Plaintiffs do not address Defendants' arguments that their MERS-related and foreclosure-related claims are meritless. (*See* Joint Mot. at 22-29.) Thus, Plaintiffs have apparently conceded them. *See SEC v. Syron*, No. 11-CV-9201, 2013 WL 1285572, at *19 (S.D.N.Y. Mar. 28, 2013) (failure to address argument in opposition to motion to dismiss effectively conceded it); *In re UBS AG Secs. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (a plaintiff who does not respond to a point raised by a defendant on a motion to dismiss "concedes" that point "through silence").

### B.  The Second Amended Complaint Fails to State a Cognizable Claim for Relief Under RICO.

Plaintiffs' Opposition does nothing to bolster their RICO claims, which should be dismissed for failure to allege the existence of an enterprise, any racketeering activity or proximate causation. Plaintiffs respond by simply repeating the defective allegations of the SAC, which were already demonstrated to be insufficient in Defendants' Joint Motion. (*See* Opp'n at 25; *cf.* Joint Mot. at 29-37.) Nothing in the SAC or Opposition demonstrates that Defendants shared a common purpose to engage in a particular fraudulent course of conduct, or worked together to achieve such purposes. Plaintiffs' disparate allegations that several of the Defendants allegedly have "been associated-in-fact" with "robo-signers" are conclusory, vague and—as concerns *these specific plaintiffs*—wholly unsubstantiated. Moreover, they are a far cry from the type of allegations necessary to sufficiently allege the existence of a RICO enterprise. Plaintiffs offer nothing to suggest (a) that any of these Defendants actually worked with any of the other Defendants toward a common goal, or (b) that any of the Defendants did anything other than lawfully pursue their own business interests and contractual rights as permitted by relevant loan documents.

Plaintiffs stand on even thinner ice when they point to pages 33 through 55 of the SAC,

which they characterize as "enumerating specific racketeering acts comprising mail or wire fraud." (Opp'n at 25.)  A simple review of those allegations, however, shows that they do not include *any* allegations of conduct amounting to anything even remotely resembling mail or wire fraud.  At most, the SAC alleges that various unrelated defendants separately engaged in unrelated activity aimed solely at pursuing their own distinct contractual rights.  Plaintiffs nowhere explain—nor could they—how "failing to identify foreclosing parties accurately," "inappropriately dual-tracking foreclosures and home loan modifications," or "using MERS and accounting standards to further defendants' objectives," among others, constitute racketeering activity.  (Opp'n at 25.)  Even if such activities could somehow constitute racketeering activity, Plaintiffs' allegations are so vague that it is impossible to discern which acts they are alleging with respect to which Defendants.  As discussed in the Joint Motion, these allegations are wholly inadequate.  (Joint Mot. at 29-37.)

Perhaps recognizing this fact, Plaintiffs assert that they are entitled to "further discovery," implicitly acknowledging that they have not alleged facts sufficient to support their RICO claims.  (Opp'n at 26.)  Plaintiffs, however, fail to meet their burden of setting forth *what* additional discovery they need that might clarify their wire and mail fraud allegations.  In any event, the authorities they cite for the proposition that further discovery might flesh out their claims are either inapposite or undermine their case.  Specifically, *Rotella v. Wood*, 528 U.S. 549 (2000), concerns the statute of limitations under RICO.  In *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041 (7th Cir. 1998), the court explained that, "in addition to at least two predicate acts, a RICO plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'"  *Id.* at 1048 (citation omitted).  As demonstrated above, Plaintiffs do not allege that any of the supposed acts of any one of the

Defendants is "related" to any of the alleged acts of any of the other Defendants.

Plaintiffs do not even address the argument that they broke the chain of causation by either failing to pay their loans or declining to challenge their foreclosures.  No RICO claim lies under such circumstances.  *See, e.g., Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (denying RICO claim where "the racketeering activities alleged [we]re not a substantial factor in the chain of causation that led to plaintiffs' losses); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 240 (2d Cir. 1999) (pattern of racketeering activity or individual predicate acts must impose a direct injury on plaintiffs).  Plaintiffs' RICO claims should, therefore, be dismissed with prejudice.

Finally, Plaintiffs' argument that "the Ninth Claim, which arises under 18 U.S.C. § 1962(a) . . . , is essentially unchallenged" (Opp'n at 27) is wrong.  Plaintiffs' argument is that "Defendants used the financial positions they created to generate racketeering income, which they invested into mortgage-related activities directed against plaintiffs . . . ." (*Id.* at 28.) ***Nothing*** about that allegation withstands scrutiny, particularly the completely unsubstantiated assertion that Defendants, through their limited relationships with various Plaintiffs, "generate[d] racketeering income." *Id.*  The Ninth Claim should be dismissed since it, like Plaintiffs' other RICO claims, relies on the existence of racketeering activity, which is not sufficiently alleged in the SAC.

### C.    Plaintiffs' State Consumer Protection Law Claims Are Meritless.

Nowhere does the SAC or the Opposition contend that any Plaintiff was induced, duped, tricked, fooled, enticed, or persuaded by any Defendant, via an alleged "scheme" or any alleged actions, into purchasing their property, choosing their mortgage lender, taking out their mortgage loan, signing their mortgage documents, agreeing to their mortgage terms, making their mortgage payments, or purchasing any product or service of any kind from any Defendant.

Thus, the state consumer-protection statutes invoked by Plaintiffs do not apply to Plaintiffs' claims.

In arguing to the contrary, Plaintiffs merely recite the text of the respective statutes and repeat verbatim various allegations from the SAC, treating the latter as self-validating. (*See* Opp'n at 28-31.)  Plaintiffs do not cite a single New York, Massachusetts or Maryland case establishing the applicability of any of the invoked statutes to the allegations they present.

Plaintiffs assert that ***they*** may recover under those statutes so long as "the public as a whole" (*id.* at 30) might have been harmed or deceived by Defendants' alleged conduct. (*See id.* at 30-32.)  Yet, Plaintiffs do not cite a single case to support this proposition.[10]  The Second Circuit in *Smokes-Spirits.com* stated only that where the plaintiff is a business and ***not*** a consumer, it "could sue its ***competitor*** under GBL § 349 as it had alleged injury to the public interest." *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008) (emphasis in original).  The court in *White* noted that "harm[] to the public interest" might be part of the threshold inquiry as to whether the conduct at issue was "consumer-oriented," but also made clear that the statute requires the ***person*** suing to connect the conduct alleged to ***his*** specific injury. *M&T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 570-71 (E.D.N.Y. 2010).  The issues in *Apple* concerned only whether § 349 applied in the employment context, viz., a suit against an employer for using deceptive practices to recruit employees, including promising jobs and union memberships that were never provided.  *Apple v. Atlantic Yards Dev. Co. LLC*, No. 11-CV-5550, 2012 WL 2309028, at *4-5 (E.D.N.Y. June 18, 2012).  And, *Sykes* did not concern harm to the general public at all.  It involved a debt-collection scheme in which plaintiffs were able to

---

[10]     The cases cited by Plaintiffs address only New York's Gen. Bus. Law § 349.  Plaintiffs cite no cases discussing Massachusetts' or Maryland's consumer-protection laws vis-à-vis this proposition.  (*See* Opp'n at 30-32.)

demonstrate, *inter alia*, that defendants' actions harmed them **directly**, which Plaintiffs here fail to do.  *See Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 419-20 (S.D.N.Y. 2010). In all of these cases, the alleged deceptive practices were a **direct cause** of **specific harm** to the **plaintiffs themselves**, whereas here, the alleged practices are so remote and attenuated from any plausible harm alleged by these Plaintiffs that they have practically nothing to do with one another.

Plaintiffs further argue that they may invoke these statutes so long as Defendants' alleged actions are somehow "relat[ed] to real property" (Opp'n at 31), but the statutes and the cases Plaintiffs cite require substantially more than that.  In *Bean*, an action for wrongful foreclosure based on a bank's purported failure to establish standing, the plaintiff failed to state a claim under Mass. Gen. Laws ch. 93A because the plaintiff, as here, "ha[d] not sufficiently alleged that [defendant's] actions **relating to the foreclosure** were improper."  *Bean v. Bank of N.Y. Mellon*, No. 12-CV-10930, 2012 WL 4103913, at *8 (D. Mass. Sept. 18, 2012) (emphasis added).  *White* contained lengthy and specific allegations as to how the plaintiffs were deceived by the defendants' practices into **purchasing their properties**.  *See White*, 736 F. Supp. 2d at 546-51. Similarly, *Dwoskin* involved allegations pertaining to the bank's marketing, and the plaintiffs' resulting acquisition, of their particular mortgage loan.  *See Dwoskin v. Bank of America, N.A.*, No. 11-CV-1109, 2013 WL 427362, at *1-2 (D. Md. Jan 31, 2013).  Plaintiffs make no such allegations here.

Plaintiffs' Opposition offers no facts, argument or case law to rebut Defendants' position set forth in the Joint Motion that New York's § 349 does not apply to the enforcement of contractual rights through litigation, that Massachusetts' Chapter 93A is inapplicable to private

contractual disputes,[11] and that Maryland's MCPA is only applicable to practices that "occur in the sale or offer for sale to consumers" of commercial products or services.  (*See* Joint Mot. at 38-42 (citing cases).)  As Defendants have repeatedly pointed out herein, the only plausible injuries alleged by Plaintiffs are the foreclosure judgments, viz., the loss of their property rights as a consequence of their admitted loan defaults, ***contractual remedies*** enforced by Defendants through litigation.  Plaintiffs fail to connect the dots between the conduct and injuries they allege, and thus fail to state a claim under any of the invoked state consumer-protection laws.

### D.  Plaintiffs Do Not State a Claim for Common Law Fraud Under New York, Massachusetts, or Maryland Law.

Plaintiffs' Opposition does not clarify or remedy the deficiencies of their common law fraud claims.  The majority of the Opposition merely quotes verbatim from the pleadings or reiterates generalized, conclusory and unsupported claims regarding Defendants' purported knowledge that their so-called "scheme" was "fraudulent."  (*See* Opp'n at 32-34; *cf.* Joint Mot. at 42-49.)  Indeed, Plaintiffs still fail to allege a single specific misrepresentation made ***by*** any Defendant ***to*** any Plaintiff at any time.  That omission alone is fatal to Plaintiffs' fraud claims.

The only "fraudulent" statement that Plaintiffs allege with any particularity is a solitary, esoteric provision gleaned from the MERS website, stating that "[a]ny loan registered on the

---

[11]  Plaintiffs also fail to establish that they satisfied the demand letter requirement of Chapter 93A, § 9(3).  (*See* Opp'n at 29 n.2; *cf.* Joint. Mot. at 39-40.)  In the one case cited by Plaintiffs, "[t]he ***sole basis*** for plaintiff's motion to amend her complaint, to which defendants offered no opposition, was to perfect her Chapter 93A claim." *Burns ex rel. Off. of Pub. Guard v. Hale & Dorr LLP*, 445 F. Supp. 2d 94, 97 (D. Mass. 2006) (emphasis added).  The letter also preceded the filing of the plaintiff's ***first*** amended complaint by two months.  *See id.* at 96.  Here, no such "sole basis"—and no such motion—exist, and Plaintiffs filed both initial ***and*** amended complaints in this matter long before attempting to satisfy the demand requirement.  Further, Plaintiffs fail to satisfy the statutory requirement because they allege only that a single letter was sent to all of "the Massachusetts defendants," whereas the statute requires that the requirement be "fulfilled as to ***each*** 93A claim alleged against ***each*** defendant."  *Ouch v. Federal Nat'l Mortg. Ass'n*, No. 11-CV-12090, 2013 WL 139765, at *2 (D. Mass. Jan 10, 2013) (emphasis added).

MERS system is inoculated against future assignments because MERS remains the nominal

mortgagee no matter how many times servicing is traded" (the "Statement").   (Opp'n at 32; SAC

¶ 170.)  Plaintiffs fail to explain how this statement by a nonparty is false, how it indicates an

intent to defraud, how any Plaintiff acted in reliance on it, or how any plausible injury to any

Plaintiff was caused by it.

First, the Statement is not false; it is an accurate explanation of how secured-transaction

priority rules work with regard to MERS and county land records.[12]  Second, the Statement

appears to have been directed at lenders and servicers, not at Plaintiffs, homeowners or

borrowers.  Third, Plaintiffs do not allege that any one of them ever actually visited the MERS

website or read the statement, nor how doing so led any one of them to act or forbear,

irrespective of what they thought it meant.[13]  As such, Plaintiffs cannot reasonably have relied on

it.  In any event, the Statement has no bearing on any plausible injury, viz., the loss of their

property interests after default.  (*See* SAC ¶¶ 336, 354, 370.)  Finally, Plaintiffs' unsubstantiated

assertion that the Statement was somehow made "on behalf of Defendants" (Opp'n at 5 (citing

SAC ¶ 177), 6, 31 (citing SAC ¶¶ 169-93), 32-33) is of no consequence.[14]

---

[12]     Paragraph 171 of the SAC alleges that the Statement "is false and misleading because
purported MERS assignments have been invalidated by a break in the chain of title or another
infirmity that rendered an assignment null or void."  Plaintiffs also contend that the Statement
"led [them] . . . to believe that assignments of mortgages involving MERS were automatically
insulated by the MERS system" (Opp'n at 4), and that the Statement "falsely indicates MERS'
status and the integrity of all loans registered on MERS" (SAC ¶ 172).  These contentions have
nothing to do with whether a recorded MERS loan retains lien priority when servicing is traded,
which it does even if an assignment of servicing rights is subsequently invalidated.

[13]     Plaintiffs make no allegation that this Statement, or any other statement made by any
Defendant at any time, induced or persuaded them to purchase their properties, select their
lender, or take out their mortgage loan, nor that they would not have done so but for the
Statement.  They allege not a single act or forbearance that any one of them took but would not
have taken had this Statement not appeared on the MERS website.

[14]     *See, e.g., Lama Holding v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (action for
fraud in New York requires plaintiff to "prove a misrepresentation or a material omission of fact

Because this cherry-picked statement from the MERS website is in no way "fraudulent" under New York, Massachusetts or Maryland law, and Plaintiffs allege no actual misrepresentation of material fact made by any Defendant to any Plaintiff, the SAC's common-law fraud claims should be dismissed.

## III.   <u>LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.</u>

This Court has already admonished Plaintiffs that they would not be permitted a fourth opportunity to plead their claims.  (*See* Pre-Motion Conference Tr. at 7:18-20 (Feb. 20, 2013).) Having had ample opportunity to allege facts sufficient to state their claims, and having failed to do so, any further amendment would be futile.  *See U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 295-96 (S.D.N.Y. 2012) (Seibel, J.) (denying leave to amend where the court at pre-motion conference gave plaintiff a second chance to amend and stated that there would be no further leave to amend); *101 McMurray, LLC v. Porter*, No. 10-CV-9037, 2012 WL 997001, at *14 (S.D.N.Y. Mar. 26, 2012) (Seibel, J.) (same).  Thus, the Court should deny Plaintiffs' request for leave to amend.

## <u>CONCLUSION</u>

For all of the foregoing reasons and those set forth in Defendants' Joint Motion, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice.

---

. . . by *defendant*" (emphasis added)); *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975) (elements of common-law fraud in Massachusetts include "proof that *the defendant made* a false representation of a material fact . . . ." (emphasis added; citation and internal quotation marks omitted)); *Md. Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (Md. 2002) (action for fraud in Maryland requires plaintiff to prove "that *the defendant made* a false representation *to the plaintiff*" (emphasis added; citations omitted)).

Dated: New York, New York
       September 26, 2013

Respectfully submitted,

*/s/ Jason O. Braiman*
Jason O. Braiman (JB1701)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212-813-8800
F: 212-355-3333
jbraiman@goodwinprocter.com

*Attorneys for Defendants Bank of America,*
*N.A., Countrywide Home Loans, Inc., and First*
*Franklin Investment & Loan*

*/s/ Jonathan M. Robbin*
Jonathan M. Robbin
BLANK ROME, LLP
405 Lexington Ave.
New York, New York 10174
T: (212) 885-5000
F: (917) 332-3747
Jrobbin@blankrome.com

*Attorneys for Defendant Homeward*
*Residential, Inc.*

*/s/ Richard G. Haddad*
Richard G. Haddad (RH 6438)
OTTERBOURG, STEINDLER, HOUSTON &
ROSEN, P.C.
230 Park Avenue
New York, New York 10169-0075
T: (212) 661-9100
F: (212) 682-6104
rhaddad@oshr.com

*Attorneys for Defendant Ally Financial Inc.*

*/s/ Bruce Allensworth*
*/s/ Brian M. Forbes*
*/s/ Robert W. Sparkes, III*
Bruce Allensworth, pro hac vice
Brian M. Forbes, pro hac vice
Robert W. Sparkes, III, pro hac vice
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
T: (617) 261-3100
F: (617) 261-3175
bruce.allensworth@klgates.com
brian.m.forbes@klgates.com
robert.sparkes@klgates.com

*/s/ David S. Versfelt*
David S. Versfelt (DV 8935)
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
T: (212) 536-3900
F: (212) 308-6661
david.versfelt@klgates.com

*Attorneys for Defendant Ocwen Financial Corporation*

*/s/ Julian W. Friedman*
Julian W. Friedman
BALLARD SPAHR STILLMAN & FRIEDMAN, LLP
425 Park Avenue
New York, NY 10022
T: (212) 223-0200
F: (212) 223-1942
friedman@bssfny.com

_/s/ David H. Pittinsky_
David H. Pittinsky (Pro Hac Vice)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: (215) 864-8117
F: (215) 864-8999
pittinsky@ballardspahr.com

_Attorneys for Defendant PNC Financial
Services Group, Inc._

_/s/ Elliott C. Mogul_
Elliott C. Mogul
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Tel: (202) 942-6375
Fax: (202) 942-5999
elliott.mogul@aporter.com

Anthony D. Boccanfuso
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022-4690
Tel: (212) 715-1000
Fax: (212) 715-1399
anthony.boccanfuso@aporter.com

_Attorneys for Defendant Aurora Loan Services
LLC_

*/s/ Lisa J. Fried*
Allison J. Schoenthal (AS5391)
Lisa J. Fried (LF6968)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
T: 212-918-3000
F: 212-918-3100
allison.schoenthal@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendants Flagstar Bank, FSB,*
*Provident Funding Group, Inc., U.S. Bank,*
*N.A. and Wells Fargo Bank N.A.*

*/s/ Michael S. Kraut*
Michael S. Kraut (MK-4469)
Laya R. Kaigh (LS2779)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
T: 212-309-6000
F: 212-209-6001
mkraut@morganlewis.com
lkaigh@morganlewis.com

*Attorneys for Defendant Deutsche Bank*
*National Trust Company*

*/s/ Joy Harmon Sperling*
Joy Harmon Sperling (JS2005)
jsperling@daypitney.com
Michael A. Weiss (MW5758)
mweiss@daypitney.com
DAY PITNEY LLP
7 Times Square
New York, NY 10022
T: 212-297-2466
F: 212-881-9042

*Attorneys for Defendants MortgageIT, Inc. and*
*Deutsche Bank, AG*

*/s/ John M. Falzone*
John M. Falzone
PARKER IBRAHIM & BERG LLC
5 Penn Plaza, Suite 2371
New York, NY 10001
T: 908-725-9700
F: 908-333-6230
john.falzone@piblaw.com

*Attorneys for Defendants JPMorgan Chase &*
*Co. and JPMorgan Chase Bank, N.A.,*
*successor by merger to Chase Home Finance*
*LLC (s/h/a "Chase Home Finance, LLC")*

*/s/ Michael P. De Simone*
Michael P. De Simone
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
T: 212-210-9400
F: 212-210-9444
michael.desimone@alston.com

*Attorneys for Defendant PHH Mortgage Corp.*

*/s/ Noah Weissman*
Noah Weissman
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
T: 212-541-2000
F: 212-541-4630
NMWeissman@bryancave.com

*Attorneys for Defendants CitiMortgage, Inc.,*
*Citibank, N.A. and Citigroup Inc.*

*/s/ Harold F. Damm*
Harold F. Damm (HD9353)
CIOTTI & DAMM, LLP
1551 Kellum Place
Mineola, NY 11501
T: 516-248-0800
F: 516-746-4709
hdamm@cdkesqs.com

*Attorneys for Cincinnati Federal Savings and Loan*

This document was filed with the consent of the foregoing counsel.

## **CERTIFICATE OF SERVICE**

I, Michael S. Kraut, hereby certify that a copy of the foregoing documents, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on September 26, 2013.

*/s/ Michael S. Kraut*