UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHN ANCTIL, LEE BABB, GISELE BARBOSA,
CHRISTINE BERNAT, GEORGE BRANCH, GARY
CROFOOT, PAUL DEMERS, CHARLES and CONSUELO
FERRIS, JULIO GRILLO, MARTIN and JANICE HOGAN,
MARY JONES, KARL and OKSANA JORGENSEN,
DONALD KADLEC, SANDRA LAPIDEZ, JOHN LOPES,
JAMES and PRISCILLA MCGOUGH, FRANCIS PARISEAU,
MARK and LISA PERRY, REBECCA RALSTON,
DOROTHY CARPENTER-REID, MICHAEL RYAN,
BENITA and WILLIAM SCHRIEFER, MICHAEL SILVER,
FLAVIO TERZIS, JONATHAN THURROTT, NANCY
TROSKE, INGRID WEBER, KELLY WILLIAMS, and
MATTHEW ZICARO,

Plaintiffs,

- against -                                          **OPINION AND ORDER**

ALLY FINANCIAL, INC., AURORA LOAN SERVICES,          No. 12-CV-8572 (CS)
LLC, BANK OF AMERICA, N.A., CHASE HOME FINANCE,
LLC, CINCINNATI FEDERAL SAVINGS AND LOAN,
CITIBANK, N.A., CITIGROUP, INC., CITIMORTGAGE,
INC., COUNTRYWIDE HOME LOANS, INC., DEUTSCHE
BANK, AG, DEUTSCHE BANK NATIONAL TRUST CO.,
DEUTSCHE BANK TRUST CO., FIRST FRANKLIN LOAN
SERVICES, FLAGSTAR BANK, FSB, FREMONT
INVESTMENT AND LOAN CORP., HOMEWARD
RESIDENTIAL, JPMORGAN CHASE & CO., MONEY
WAREHOUSE, MORTGAGEIT, INC., OCWEN FINANCIAL
CORP., PHH MORTGAGE, THE PNC FINANCIAL
SERVICES GROUP, INC., PROVIDENT FUNDING GROUP,
INC., SIGNATURE GROUP HOLDINGS, INC., U.S. BANK,
N.A., and WELLS FARGO, N.A.,

Defendants.
------------------------------------------------------------------------x

<u>Appearances</u>:
Zoe J. Dolan
Law Offices of Zoe Dolan
New York, New York

Scott A. Kamber
KamberLaw, LLC
New York, New York
*Counsel for Plaintiffs*

Jason O. Braiman
Goodwin Procter LLP
New York, New York
*Counsel for Defendants Bank of America, N.A., Countrywide*
*Home Loans, Inc., and First Franklin Loan Services*

Jonathan M. Robbin
Blank Rome, LLP
New York, New York
*Counsel for Defendant Homeward Residential*

Richard G. Haddad
Otterbourg, Steindler, Houston & Rosen, PC
New York, New York
*Counsel for Defendant Ally Financial, Inc.*

Bruce Allensworth
Brian M. Forbes
Robert W. Sparkes, III
K&L Gates LLP
Boston, Massachusetts

David S. Versfelt
K&L Gates LLP
New York, New York
*Counsel for Defendant Ocwen Financial Corp.*

Julian W. Friedman
Stillman & Friedman, PC
New York, New York

David H. Pittinsky
Ballard Spahr LLP
Philadelphia, Pennsylvania
*Counsel for Defendant PNC Financial Services Group*

Elliott C. Mogul
Arnold & Porter LLP
Washington, District of Columbia

Anthony D. Boccanfuso
Arnold & Porter LLP
New York, New York
*Counsel for Defendant Aurora Loan Services, LLC*

Lisa J. Fried
Allison J. Schoenthal
Hogan Lovells US LLP
New York, New York
*Counsel for Defendants Flagstar Bank, FSB, Provident Funding Group, Inc., U.S. Bank, N.A., and Wells Fargo, N.A.*

Michael S. Kraut
Morgan, Lewis & Bockius LLP
New York, New York
*Counsel for Defendant Deutsche Bank National Trust Co.*

Joy Harmon Sperling
Michael A. Weiss
Day Pitney LLP
New York, New York
*Counsel for Defendants MortgageIT, Inc. and Deutsche Bank A.G.*

John M. Falzone
Parker Ibrahim & Berg LLC
New York, New York
*Counsel for Defendants JPMorgan Chase & Co. and Chase Home Finance, LLC*

Michael P. De Simone
Alston & Bird LLP
New York, New York
*Counsel for Defendant PHH Mortgage*

Noah Weissman
Bryan Cave LLP
New York, New York
*Counsel for Defendants CitiMortgage, Inc., Citibank, N.A., and Citigroup, Inc.*

Harold F. Damm
Ciotti & Damm, LLP
Mineola, New York
*Counsel for Defendant Cincinnati Federal Savings and Loan*

Seibel, J.

Before the Court are several Motions to Dismiss, including one Joint Motion filed by all Defendants and several additional Motions filed by individual Defendants.  (Docs. 90, 93.)[1]  For the reasons set forth below, the Joint Motion to Dismiss is GRANTED and the individual Motions are DENIED AS MOOT.

## I. <u>BACKGROUND</u>

For purposes of the instant Motions to Dismiss, I accept as true the facts, but not the conclusions, as set forth in the Second Amended Complaint ("SAC").  (Doc. 74.)[2]

Plaintiffs are former mortgagors of homes in New York, Massachusetts, and Maryland. (SAC ¶¶ 9-35.)  Each Plaintiff's home was foreclosed upon between December 2006 and November 2010.  (*Id.* ¶ 138.)  In essence, the SAC alleges that the entire mortgage industry is engaged in a massive racketeering scheme designed to mislead mortgagors, the public, and various government entities in order to illegally foreclose on homes.  To support this conclusion, much of the SAC is devoted to recounting the history and development of the mortgage securitization industry, the creation of the Mortgage Electronic Registration System ("MERS"), the role of the Mortgage Bankers Association ("MBA"), and the development of certain accounting standards by the Financial Accounting Standards Board ("FASB").[3]  (*See id.* ¶¶ 66-107.)  This Opinion will recite only those facts that are necessary to understand my ruling.

---

[1] Only one of the individual Defendants' separate Motions was filed on the electronic docket as a "motion" in need of a formal decision; the others were filed as individual briefs.

[2] The parties have submitted numerous documents for me to consider in connection with the instant Motions.  (*See, e.g.*, Doc. 95 Exs. A-B; Doc. 96 Exs. A-I; Doc. 101 Exs. A-C; Doc. 116 Exs. A-N.)  There are some situations in which a court may consider documents outside of the pleadings on a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  In this case, however, I need not consider these additional documents in light of my rulings on other issues as described below.

[3] The SAC repeatedly alleges that the mortgage industry, through the MBA, lobbied FASB to develop accounting standards that were favorable to the mortgage industry's interests, (*see, e.g.*, SAC ¶¶ 89-92, 96, 107, 112(b)), and that Defendants' use of the resulting standards, which made their balance sheets more opaque, (*see id.* ¶¶ 97-102),

MERS is a digital registration system designed to simplify the tracking of transfers in ownership of home mortgages and transfers in servicing rights to the associated loans. (*Id.* ¶¶ 74, 77.) This system is administered by an entity composed of many players in the mortgage industry. (*Id.* ¶ 75.) Prior to use of the MERS system, when a mortgage was issued, the lender would record its identity and interest in the local public land records for the mortgaged property, and if the mortgage was subsequently assigned to a different entity, the transfer (and the identity of the new holder) would also be recorded in the land records. (*Id.* ¶ 78.) Lenders who participate in the MERS system, however, typically name MERS as the lender's nominee in the land records. (*Id.* ¶ 79.) Assignments and transfers of the mortgage among MERS members are tracked in the MERS database, but those assignments are not recorded in the land records; MERS remains listed as the named nominee of the holder of the mortgage. (*Id.*) Thus, "MERS acts as the designated common agent for the MERS member institutions in the land records, which means that MERS acts on its members' behalf as mortgagee." (Ds' Joint Mem. 7 (internal quotation marks and alterations omitted).)[4] The MERS system facilitates the securitization of mortgage loans. (SAC ¶ 103.)

The crux of Plaintiffs' allegations is that (1) Defendants used the MERS system to conceal transfers of Plaintiffs' mortgages among various companies, which transfers did not comply with state law; (2) as a result, the chains of title to the mortgages were broken; and (3) when Plaintiffs' homes were ultimately foreclosed upon, the entities that initiated those

---

somehow constitutes coordinated activity that supports Plaintiffs' allegations of fraud and racketeering, (*see, e.g.*, *id.* ¶ 107 ("The success of the MBA in influencing the FASB, combined with the use of MERS, demonstrates defendants' coordinated activity through an association-in-fact in furtherance of their scheme.")). While jointly lobbying for industry-friendly standards may have been a coordinated activity, it is not clear to the Court how such activity plausibly furthered the alleged fraud. The SAC does not include any mention of how this alleged decreased transparency in the applicable accounting standards led to any injury to Plaintiffs. I find these allegations of dubious relevance to the causes of action asserted, and irrelevant to my disposition.

[4] "Ds' Joint Mem." refers to Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. 94.)

foreclosure proceedings (a) used false and misleading documents and affidavits to do so, and (b) did not hold valid title to the mortgages in question, thus rendering those foreclosures invalid. (*See id.* ¶¶ 108-14.)  Although the SAC contains a chart listing purported racketeering acts committed by each Defendant in connection with Plaintiffs' foreclosures, (*id.* ¶ 162), detailed factual allegations are only included as to two of the individual Plaintiffs' mortgages by way of "example," (*id.* ¶¶ 116-23 (regarding Plaintiff Troske and Defendant U.S. Bank); *id.* ¶¶ 124-37 (regarding Plaintiff Zicaro and Defendants Ocwen and Wells Fargo)).

Plaintiffs now assert several claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as state law claims under New York, Massachusetts, and Maryland law for common law fraud and violations of those states' consumer protection statutes.

## II.  SUBJECT MATTER JURISDICTION

### A.  Legal Standard

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Id.* (citation omitted) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this

determination." *Id.* (citations and internal quotation marks omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks, citations, and alteration omitted), *aff'd on other grounds*, 561 U.S. 247 (2010). When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### B.  The *Rooker-Feldman* Doctrine

Defendants contend that this Court lacks subject matter jurisdiction over Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine, (*see* Ds' Joint Mem. 7-13), which bars lower federal courts from reviewing judgments of state courts. *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). In 2005, the Supreme Court narrowed the previously held view of this carve-out of the district courts' subject matter jurisdiction, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005); *see Green*, 585 F.3d at 101 (recognizing that *Exxon Mobil* narrowed the Second Circuit's previously expansive interpretation of the *Rooker-Feldman* doctrine).

The Second Circuit thereafter identified four requirements that must be met for *Rooker-Feldman* to divest a district court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock*, 422 F.3d at 85 (internal quotation marks, footnote, and alterations omitted).  The first and fourth requirements are "procedural," while the second and third are "substantive"; the requirement that the plaintiff "*complain of an injury* caused by a state judgment . . . is the core requirement from which the others derive."  *Id.* at 85, 87 (emphasis in original).  If all four requirements are met, the case must be dismissed.

**C.  Procedural Requirements**

It is clear that the procedural requirements of the *Rooker-Feldman* doctrine are met in this case.  Each of the Plaintiffs "lost" in state court when the relevant foreclosure judgment was entered.  (*See* SAC ¶ 36 ("Each plaintiff was individually harmed by fraud perpetrated in furtherance of defendants' scheme.  The harm included expedited foreclosure on plaintiffs' homes and procurement [of] fraudulent foreclosure judgments against them.").)  Further, while the exact dates of the various foreclosure judgments are not included in the Complaint, it is evident from the pleading in its entirety that each Plaintiff lost his or her home pursuant to a judgment of foreclosure issued prior to the initiation of this lawsuit.  (*See, e.g.*, *id.* ¶ 2 ("Plaintiffs are former mortgagors whose homes were foreclosed upon."); *id.* ¶ 3 ("Injuries to plaintiffs

include loss of their mortgages."); *id.* ¶ 114 ("Plaintiffs suffered injury because defendants'
scheme ultimately resulted in expedited foreclosures that violated state laws, including the
ultimate result of null or invalid foreclosures.").)

### D. <u>Substantive Requirements</u>

I also conclude that both substantive *Rooker-Feldman* requirements are met in this case.
First, Plaintiffs here are "complain[ing] of an injury caused by a state judgment."  *Hoblock*, 422
F.3d at 87 (emphasis omitted).  This causal requirement is satisfied "where, as in *Feldman*, the
state court itself is the decision-maker whose action produces the injury."  *Sindone v. Kelly*, 439
F. Supp. 2d 268, 272 (S.D.N.Y. 2006).  "*Exxon Mobil* and *Hoblock* [ ] make clear [ ] that the
applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-
court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion
law), but rather on the *causal relationship* between the state-court judgment and the injury of
which the party complains in federal court."  *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir.
2007) (emphasis in original).  For example, "a party is not complaining of an injury 'caused by'
a state-court judgment when the exact injury of which the party complains in federal court
existed prior in time to the state-court proceedings, and so could not have been 'caused by' those
proceedings."  *Id.* at 98 (emphasis omitted).  Additionally, a plaintiff's injuries are not caused by
the judgment when the state court "simply ratified, acquiesced in, or left unpunished" the actions
of a third party.  *Hoblock*, 422 F.3d at 88.

Here, prior to the state court foreclosure proceedings, Plaintiffs in this case had yet to
suffer any injury.  Defendants' allegedly fraudulent *conduct* may have preceded the entry of the
foreclosure judgments, but the *injury* complained of – loss of Plaintiffs' homes – was effected by
the judgments, not by any previous direct actions taken by Defendants.  *See Gunn v. Ambac*

9

*Assurance Corp.*, No. 11-CV-5497, 2012 WL 3188849, at *12-13 (S.D.N.Y. Jun. 26, 2012)

(internal quotation marks omitted) (dismissing, under *Rooker-Feldman*, allegations of

racketeering and fraud by mortgage bank in connection with foreclosure where plaintiff sought

damages for loss of home), *report and recommendation adopted*, 2012 WL 3188849 (S.D.N.Y.

Aug. 6, 2012).  I agree with Defendants' observation that "[a] review of the substance of the

SAC demonstrates that Plaintiffs have failed to identify any economic loss apart from the loss of

their properties following the foreclosure judgments."  (Ds' Joint Reply 2 (emphasis omitted).)[5]

This is not a case where the injuries complained of were caused by actions of a third party that

the state court "simply ratified, acquiesced in, or left unpunished."  *Hoblock*, 422 F.3d at 88.

Rather, Plaintiffs suffered injury only because the various state courts entered judgments of

foreclosure.  *See, e.g.*, *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010)

(dismissing RICO claims on *Rooker-Feldman* grounds where plaintiff complained of "financial

. . . distress as a result of . . . the judgment" of foreclosure allegedly procured through pattern of

fraudulent activity), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (summary order); *Caldwell v.*

*Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 348-49 (E.D.N.Y. 2010)

(dismissing complaint alleging "pattern of vexatious litigation" on *Rooker-Feldman* grounds

where financial injuries were caused by foreclosure judgment); *Webster v. Wells Fargo Bank,*

*N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *6 (S.D.N.Y. Dec. 23, 2009) (dismissing

allegations of fraud occurring prior to foreclosure when "the harm [plaintiffs] consistently

identify is the judgment permitting foreclosure to take place"), *aff'd sub nom. Webster v.*

*Penzetta*, 458 F. App'x 23 (2d Cir. 2012) (summary order).

---

[5] "Ds' Joint Reply" refers to Joint Reply Memorandum of Law in Further Support of Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint.  (Doc. 124.)

Second, Plaintiffs "invite district court review and rejection" of the state court judgments. *Hoblock*, 422 F.3d at 85 (alteration omitted). A finding for Plaintiffs on any of their claims would necessarily entail a finding that various mortgage judgments were fraudulently obtained by entities that did not hold valid title to the mortgages in question. Although Plaintiffs' allegations of fraud and racketeering do not appear to have been asserted in the state court proceedings, "a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court," *id.* at 87, if the injury suffered stems from the state court judgment. An action seeking damages in connection with a state court foreclosure proceeding is properly dismissed where "the state court judgment was the cause of plaintiff's injuries, and this Court would necessarily have to review that judgment to decide plaintiff's [constitutional and RICO] claims." *Swiatkowski*, 745 F. Supp. 2d at 165, *aff'd*, 446 F. App'x at 361 ("The validity of the proof of claim at issue, however, depended entirely on the validity of the underlying state court foreclosure judgment such that a decision in [plaintiff's] favor would effectively amount to declaring the state court judgment fraudulently procured and thus void.") (alteration and internal quotation marks omitted); *see generally Mickens v. 10th Judicial Circuit Court*, 458 F. App'x 839 (11th Cir. 2012) (unpublished) (affirming *Rooker-Feldman* dismissal of action seeking damages for conspiracy to fraudulently obtain state court judgments of foreclosure); *Laychock v. Wells Fargo Home Mortg.*, 399 F. App'x 716 (3d Cir. 2010) (unpublished) (affirming *Rooker-Feldman* dismissal of action seeking damages for wrongful foreclosure because granting relief sought would necessarily involve determining that state court foreclosure judgment was erroneous); *Figueroa v. MERSCORP, Inc.*, 766 F. Supp. 2d 1305, 1323 (S.D. Fla. 2011) ("This suit is barred by *Rooker-Feldman* because Plaintiff's claims can only succeed if the Court

implicitly or explicitly determines the . . . state court wrongly decided the foreclosure issue."),

*aff'd*, 477 F. App'x 558 (11th Cir. 2012) (unpublished).

While Plaintiffs in this case do not explicitly seek vacatur of any of the state court

judgments of foreclosure, they do seek compensatory damages for the wrongful loss of their

homes.  (*See* SAC ¶ 114 ("Plaintiffs suffered injury because defendants' scheme ultimately

resulted in . . . null or invalid foreclosures."); *id.* ¶ 115 ("[D]efendants' fraudulent scheme

operated to the detriment of plaintiffs' property interests."); *id.* ¶ 320 ("Plaintiffs suffered injury

. . . including the loss of plaintiffs' mortgages and improper foreclosure on their homes.").)

Plaintiffs cannot avoid the *Rooker-Feldman* doctrine based on this choice of remedy.  They seek

the liquidated value of the wrongful loss of their homes.  *Rooker-Feldman* bars actions for

compensatory damages for injuries caused by state court judgments as well as actions seeking

explicit reversal of those judgments.  *See, e.g.*, *Gunn*, 2012 WL 2401649, at *6, 11-12 (applying

*Rooker-Feldman* to dismiss RICO action alleging fraudulent foreclosure that sought both

injunctive relief and compensatory damages); *Webster*, 2009 WL 5178654, at *6 ("This Court

does not have jurisdiction either to overturn the [state court] decision or to compensate Plaintiffs

for [the bank's] foreclosure pursuant thereto."), *aff'd*, 458 F. App'x 23; *Garvin v. Bank of N.Y.*,

No. 05-CV-2760, 2005 WL 1377953, at *2-3 (E.D.N.Y. Jun. 9, 2005) (dismissing, on *Rooker-*

*Feldman* grounds, action seeking both injunctive relief and compensatory damages alleging

injuries in connection with state court foreclosure proceedings), *aff'd*, 227 F. App'x 7 (2d Cir.

2007) (summary order).

In opposition to the instant Motions, Plaintiffs argue that much of the harm caused by

Defendants predated, and is independent of, the foreclosure proceedings.  (*See* P's Opp. 10

("Defendants' scheme is broad in scope, ranging from the origination of mortgages designed to

be brief to the fraudulent procurement of judgments.").)[6]  To the extent the Complaint alleges

Defendants used accepted accounting standards to shroud their balance sheets and that Plaintiffs'

mortgages were "designed to be of short duration," (*e.g.*, SAC ¶ 138), these allegations are

vague, generalized, conclusory, and unmoored to any concrete injury to Plaintiffs.  I agree with

Defendants that these allegations are best understood as "generalized grievance[s] against the

entire mortgage industry, not [ ] viable claim[s] for redress of specific harms arising from

specific misconduct."  (Ds' Joint Reply 1.)  In any event, and as noted earlier, that the

Defendants' misconduct may have predated the foreclosure proceedings does not change the fact

that it was the judgments of foreclosure that caused the loss of the homes, and thus the injuries to

Plaintiffs.  That same alleged misconduct has caused no injury to homeowners who remained

current on their mortgages and were not foreclosed upon.

        In short, I conclude that the *Rooker-Feldman* doctrine's two substantive requirements are

met in this case.  Plaintiffs complain of injuries caused by state court judgments – namely, the

wrongful loss of their homes pursuant to state court judgments of foreclosure.  Additionally,

Plaintiffs invite review and rejection of those judgments by seeking compensation for the

wrongful loss of their homes.  Any finding in Plaintiffs' favor on their RICO claims here

necessarily entails a finding that the foreclosure judgments in question were wrongfully granted

and are void.  Whether those foreclosure judgments are susceptible to collateral attack based on

Defendants' alleged fraud involve questions of *res judicata* and collateral estoppel which I need

not reach; *Rooker-Feldman* asks only whether such attacks may be brought in federal court

rather than the state court in which the judgments complained of were rendered.  In this case,

---

[6] "P's Opp." refers to Plaintiffs' Response to Defendants' Motions to Dismiss.  (Doc. 116.)

*Rooker-Feldman* divests this Court of subject matter jurisdiction to entertain the allegations in the Complaint.

### E. **Fraudulent Procurement Exception**

On the reasoning described above, "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly banned by the *Rooker-Feldman* doctrine." *Gunn*, 2012 WL 3188849, at *2 (internal quotation marks omitted); *see Ashby v. Polinsky*, 328 F. App'x 20 (2d Cir. 2009) (summary order); *Scott v. Capital One Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *2-3 (S.D.N.Y. Apr. 17, 2013).  Plaintiffs argue, however, that their claims are not barred by *Rooker-Feldman* because an exception to that doctrine exists where the federal court action includes allegations that the prior state court judgment was procured through fraud.  (*See* Ps' Opp. 8-11.)

The Courts of Appeals are currently divided on the question of whether a fraudulent procurement exception to *Rooker-Feldman* exists.  *Compare Int'l Christian Music Ministry Inc. v. Ocwen Fed. Bank, FSB*, 289 F. App'x 63, 65 (6th Cir. 2008) (unpublished) (recognizing exception) *and Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (recognizing exception for allegations of "extrinsic" fraud only) *with Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231 (4th Cir. 2013) (unpublished) (no such exception exists) *and Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999) (same).  Some courts, such as the Third Circuit, have reached different conclusions in different cases.  *Compare Pondexter v. Allegheny Cnty. Hous. Auth.*, 329 F. App'x 347, 350 (3d Cir. 2009) (unpublished) ("[Plaintiff] alleges that [Defendant] committed fraud in the state courts by misleading the court regarding the amount of rent he owed.  As this claim does not allege harm caused by a state court judgment, but instead challenges the manner in which the state court judgment was procured, *Rooker-Feldman* does

not apply.") *with Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263, 266 (3d Cir. 2009) (unpublished) (ordering dismissal, under *Rooker-Feldman*, of RICO claims alleging conspiracy to fraudulently obtain state court divorce judgment).

The question is still technically an open one in the Second Circuit. The Court itself so noted in 2004, *see Neshawat v. Salem (In re Salem)*, 94 F. App'x 24, 24 (2d Cir. 2004) (summary order) (recognizing circuit split but declining to reach issue where no plausible allegations made of fraud in state court proceedings), and it has not had occasion to address the matter explicitly since. Several other Second Circuit decisions, however, indicate the Court's general unwillingness to recognize a fraudulent procurement exception to *Rooker-Feldman*. *See, e.g.*, *Castiglione v. Papa*, 423 F. App'x 10 (2d Cir. 2011) (summary order) (allegations that defendants attempted to fraudulently probate a will in state court, including allegations that they had bribed the judge, were barred by *Rooker-Feldman*); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("Kropelnicki's claim regarding this misrepresentation sounds in fraud [in connection with procuring prior state court judgment], yet we have never recognized a blanket fraud exception to *Rooker-Feldman*.") (internal quotation marks and citations omitted); *Ford v. U.S. Dep't of Treasury Internal Revenue Serv.*, 50 F. App'x 490 (2d Cir. 2002) (summary order) (allegations that foreclosure judgment was procured through fraud were barred by *Rooker-Feldman*). Some of these cases pre-date the Supreme Court's 2005 decision in *Exxon Mobil* narrowing the reach of the *Rooker-Feldman* doctrine. *See Exxon Mobil*, 544 U.S. at 284. But I see nothing in the *Exxon Mobil* decision that would affect the presence or absence of an exception to *Rooker-Feldman* for allegations of fraud on the state court in procuring the prior judgment.

The above Second Circuit cases notwithstanding, a handful of district court decisions from the Eastern District of New York have recognized a fraudulent procurement exception to *Rooker-Feldman*. *See W & D Imps., Inc. v. Lia*, No. 11-CV-4144, 2013 WL 1750892, at *5 (E.D.N.Y. Apr. 22, 2013); *Marshall v. Grant*, 521 F. Supp. 2d 240, 245 (E.D.N.Y. 2007); *Mac Pherson v. State Street Bank & Trust Co.*, 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006); *Goddard v. Citibank, NA*, No. 04-CV-5317, 2006 WL 842925, at *6 (E.D.N.Y. Mar. 27, 2006). Those cases, however, all rely on *Goddard* (the earliest such case) for the proposition that a fraudulent procurement exception exists.[7]  The *Goddard* Court cites *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986), for the existence of a fraudulent procurement exception to *Rooker-Feldman*, reading the Supreme Court's *Exxon Mobil* decision as supporting that conclusion. *See Goddard*, 2006 WL 842925, at *5-6 (noting that *Exxon Mobil* allows "independent" claims even if they deny a state court's legal conclusion and finding conversion and emotional distress claims from allegedly fraudulently procured foreclosure judgments to be independent).

I respectfully disagree with the *Goddard* Court's analysis. It appears as if the *Sun Valley Foods* case cited in *Goddard* was the first time a fraudulent procurement exception was recognized. *See, e.g., Marshall v. Wash. State Bar Ass'n*, No. 11-CV-5319, 2012 WL 1884680, at *9 (W.D. Wash. May 23, 2012) ("[T]here is good reason to balk at the *Rooker-Feldman* exception enunciated in *Sun Valley*.") (internal quotation marks and citation omitted), *aff'd*, 523 F. App'x 451 (9th Cir. 2013) (memorandum decision). In *Sun Valley Foods*, the Sixth Circuit – in the context of discussing *Rooker-Feldman* – stated, "A federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake.'" *Sun Valley Foods*, 801 F.2d at 189 (quoting *Resolute Ins. Co.*

---

[7] The *Marshall* decision does not cite *Goddard*, but it cites *Mac Pherson*, which in turn relies on *Goddard*. *See Marshall*, 521 F. Supp. 2d at 245; *Mac Pherson*, 452 F. Supp. 2d at 140.

*v. State of N. Carolina,* 397 F.2d 586, 589 (4th Cir.1968)).  The language the Sixth Circuit quotes

from *Resolute Insurance*, however, concerns an exception to the doctrine of *res judicata*, not

*Rooker-Feldman*.  The *Sun Valley Foods* Court does not discuss – nor does it appear to even

realize – that it is creating new law in importing a *res judicata* exception into the *Rooker-*

*Feldman* doctrine.  *See, e.g.*, *West v. Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 (10th

Cir. 2007) (unpublished) (noting that *Sun Valley Foods* relies on a "case addressing *res judicata*,

not *Rooker-Feldman*").

      As other courts have noted, the important rationale behind a fraud-on-the-court exception

to *res judicata* doctrine has no applicability to *Rooker-Feldman*:

> [The Tenth] [C]ircuit has not held that *Rooker-Feldman* may be
> circumvented by a collateral attack of the sort suggested in the cases
> discussed above.  There is good reason to balk at such a step.  State rules
> of procedure provide various means to attack a wrongfully obtained
> judgment.  Construing *Rooker-Feldman* to permit federal reconsideration
> and nullification of state judgments on grounds that could have been
> pursued in state court arguably allows under the rubric of collateral attack
> just another mechanism for lower federal court review unauthorized under
> [28 U.S.C.] § 1257.

*Evergreen Highlands Ass'n*, 213 F. App'x at 674 n.3 (citation omitted); *see Fielder*, 188 F.3d at

1035-36 ("[T]he district court alluded to, and plaintiffs argue on appeal, a fraud-on-the-court

exception to the *Rooker-Feldman* doctrine.  There are multiple problems with this contention. . . .

In general, we have been unwilling to create piecemeal exceptions to *Rooker-Feldman*.").  To the

extent Plaintiffs wish to argue that their foreclosures were procured through fraud, *Rooker-*

*Feldman* and 28 U.S.C. § 1257 require them to do so in the state courts that rendered those

judgments.  *See Castiglione*, 423 F. App'x at 13; *Kropelnicki*, 290 F.3d at 128; *Ford*, 50 F.

App'x at 490.

*   *   *

All four *Rooker-Feldman* requirements are met.  *See Hoblock*, 422 F.3d at 85.  Plaintiffs' allegations regarding the propriety of the state-court judgments of foreclosure against them are more appropriately entertained by the state courts, which are of competent jurisdiction both to hear allegations of fraud in the procurement of their own judgments and to hear federal RICO claims.[8]  I decline Plaintiff's invitation to create an exception to *Rooker-Feldman* for judgments allegedly procured through fraud on the court – an exception that has never been recognized by the Second Circuit and is unwarranted in light of the history and purpose of the doctrine.  This Court is without subject matter jurisdiction to entertain Plaintiffs' claims that the foreclosure judgments against them were fraudulently obtained, and as such the Complaint must be dismissed under Rule 12(b)(1).

## III.  <u>FAILURE TO STATE A CLAIM</u>

Even if the *Rooker-Feldman* doctrine did not bar Plaintiffs' claims, I would nevertheless dismiss the only federal claims – for racketeering – under Rule 12(b)(6) for failure to plead sufficient facts to render the claims plausible.[9]  *See Iqbal*, 556 U.S. at 678.

Plaintiffs assert nine RICO claims against various Defendants – eight claims pursuant to 18 U.S.C. § 1962(c) ("Section 1962(c)") and one pursuant to 18 U.S.C. § 1962(a) ("Section 1962(a)").  Section 1962(c) makes it unlawful for "any person employed by or associated with

---

[8] In light of this ruling, I need not address Defendants' additional arguments regarding claim and issue preclusion, which require individualized assessment of each Plaintiff's prior foreclosure litigation under New York, Massachusetts, or Maryland law.  I leave these issues to the state courts that may entertain these allegations should Plaintiffs decide to re-file in courts of competent jurisdiction.

[9] I note also that several Defendants are not proper parties to this case.  The SAC contains no allegations that Defendants Citibank, Citigroup, Deutsche Bank AG or PNC engaged in any racketeering acts.  (*See* SAC ¶ 162 (table of alleged racketeering acts).)  Rather, the SAC identifies these corporate entities as "[p]arent company defendants" and alleges that "[p]arent company defendants operated with their respective subsidiaries as a single entity for the purposes of furthering the fraudulent scheme."  (*Id.* ¶ 194.)  For substantially the reasons stated by Defendants in their joint memorandum of law, (*see* Ds' Joint Mem. 16-19), I find that the SAC has not alleged sufficient grounds to justify the extreme step of holding the parent company defendants liable for the acts of their subsidiaries.  Accordingly, Defendants Citibank, Citigroup, Deutsche Bank AG and PNC would be dismissed on this independent ground.

any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  Section 1962(a) makes it unlawful, in relevant part, for

> any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

*Id.* § 1962(a).  Defendants argue – and the Court agrees – that Plaintiffs' RICO claims fail as a matter of law because the allegations in the SAC are conclusory as to the existence of a RICO enterprise and racketeering activity.  (*See, e.g.*, Ds' Joint Mem. 30-37.)

## A.  **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## B.  RICO Enterprise

One required element of a RICO claim is the existence of an "enterprise" that Defendants either administered via a pattern of racketeering activity (under Section 1962(c)) or into which Defendants invested money derived from racketeering activity (under Section 1962(a)).  18 U.S.C §§ 1962(a), (c).  A RICO "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4).  Where, as here, a complaint alleges an association-in-fact enterprise, courts in this Circuit look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (internal quotation marks omitted); *see United States v. Turkette*, 452 U.S. 576, 583 (1981) (enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. . . . The 'enterprise' is not the 'pattern of racketeering

activity'; it is an entity separate and apart from the pattern of activity in which it engages.  The existence of an enterprise at all times remains a separate element which must be proved . . . .").

The Complaint in this case contains insufficient factual allegations to plausibly support the existence of a RICO association-in-fact enterprise among the Defendants collectively. Plaintiffs have not alleged an "ongoing organization" that "function[s] as a continuing unit." *Turkette*, 452 U.S. at 583.  There are no facts plausibly alleging any hierarchy, structure, or organization of the so-called enterprise.  Rather, the SAC merely recites in wholly conclusory language that "Defendants are associated-in-fact through their membership in the MBA and MERS directly or through a relationship with a parent or subsidiary," (SAC ¶ 142), and that "Defendants' scheme reflects a hierarchy and structure separate and apart from the pattern of racketeering in which the defendants engaged," (*id.* ¶ 206).  The fact that there is some overlap in ownership and members of the Boards of Directors of these organizations is insufficient.  (*Id.* ¶¶ 145-51.)  Nothing in the Complaint indicates that these Defendants, who are all competitors in the mortgage industry, are in fact working together towards a common goal of any kind.  The Complaint merely alleges the roles each entity played in the legitimate mortgage industry, which is most accurately described as parallel activity among competitors – not coordinated activity to jointly achieve a common fraudulent purpose.  The allegation that each of the Defendants uses the MERS system to further its own business goals is insufficient to plausibly support the existence of a RICO enterprise;[10] inside traders all use the stock market to further their unlawful goals, but that alone does not plausibly lead to the conclusion that they are all working together

---

[10] To the extent the SAC implies that the MERS system itself is somehow inherently a violation of any of the relevant States' property laws, this position is without merit, *see, e.g.*, *Rosa v. Mortg. Elec. Sys., Inc.*, 821 F. Supp. 2d 423 (D. Mass. 2011); *Suss v. JP Morgan Chase Bank, N.A.*, No. 09-CV-1627, 2010 WL 2733097, at *5 (D. Md. Jul. 9, 2010) (collecting cases); *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90 (2006), and in any event I need not reach questions of state law in light of my decision regarding the federal claims.

as part of a single enterprise in furtherance of a larger fraudulent scheme.  Likewise, a

defendant's membership in a trade association hardly renders plausible the conclusion that that

entity and certain other members are functioning as an ongoing, organized, structured enterprise

in conducting their business.  *See Purchase Real Estate Grp. v. Jones*, No. 05-CV-10859, 2010

WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (stating that members of association in fact

enterprise must "share a common purpose to engage in a particular fraudulent course of conduct

and work together to achieve such purposes") (internal quotation marks omitted).  The SAC fails

to plausibly allege the existence of a RICO enterprise.[11]

### C.  Racketeering Activity and Fraud

A "pattern of racketeering activity" requires a plaintiff to plead at least two predicate acts

of racketeering within ten years of each other.  *See* 18 U.S.C. § 1961(5).  A "pattern" is

established for RICO purposes where the predicate acts "themselves amount to, or . . . otherwise

constitute a threat of, continuing racketeering activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

229, 240 (1989) (emphasis omitted).  The predicate acts that the SAC alleges in this case are a

series of mail and/or wire frauds in violation of 18 U.S.C. §§ 1341 and 1343, (SAC ¶¶ 158-68),

both of which statutes are included as "racketeering activity" under 18 U.S.C. § 1961(1).

The mail and wire fraud statutes require a plaintiff to show that the defendant participated

in a scheme to defraud victims of money or property, through the use of the mails or an interstate

wire.  *United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999); *S.Q.K.F.C., Inc. v. Bell Atl.

TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).  For a civil RICO claim such as this one,

where the alleged predicate acts are frauds, a plaintiff must plead these acts with particularity

under Federal Rule of Civil Procedure 9(b).  *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-73

---

[11] To the extent some of the RICO claims allege smaller associations-in-fact among certain Defendants and other nonparty entities, those claims fail for lack of distinctness between the "enterprise" and "pattern of racketeering activity" elements.  *See Turkette*, 452 U.S. at 583.

(2d Cir. 1999); *see Plount v. Am. Home Assurance Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987)

("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater

urgency in civil RICO actions.")  "Allegations of predicate mail and wire fraud acts should state

the contents of the communications, who was involved, [ ] where and when they took place, and

[ ] *explain why they were fraudulent*."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d

178, 185 (2d Cir. 2008) (emphasis added) (internal quotation marks omitted); *see also Moore*,

189 F.3d at 173 (RICO complaint based on fraud must "allege facts that give rise to a strong

inference of fraudulent intent.") (internal quotation marks omitted); *Cont'l Kraft Corp. v. Euro-

Asia Dev. Grp., Inc.*, No. 97-CV-0619, 1997 WL 642350, at *5 (E.D.N.Y. Sept. 8, 1997) ("The

cases are legion that a RICO complaint [based on wire fraud] cannot be predicated on innocuous

business communications, absent some factual basis for inferring the sender's intent to defraud

the recipient via a scheme to defraud.") (alteration and internal quotation marks omitted).

    The SAC in this case includes a chart listing a number of acts that Plaintiffs contend

constitute mail or wire fraud.  (SAC ¶ 162.)  But the Complaint does not provide a plausible

"factual basis for inferring the sender's intent to defraud."  *Cont'l Kraft Corp.*, 1997 WL 642350,

at *5.  A typical alleged act of wire fraud as listed in this chart is as follows:

> On or about October 27, 2009, Aurora caused to be deposited for the
> purpose of being sent or delivered by the Postal Service or a commercial
> carrier, or caused to be transmitted by means of wire, information, data or
> documents relating to [Plaintiff Ralson's] mortgage to MERS.  Parties:
> [Defendant Aurora] or Theodore Schultz and MERS.

(SAC ¶ 162, ln. 5.)  The SAC includes factual allegations as to Defendants' mailings and wire

transmissions, (*id.* ¶ 162), and it also includes allegations that the foreclosures on some of

Plaintiffs' homes were initiated by parties that did not validly hold title to the mortgages, (*see,

e.g.*, *id.* ¶ 211-12), but it does not include any factual allegations tending to indicate that

Defendants made the enumerated mail or wire transmissions "for the purpose of executing" a "scheme or artifice to defraud" with respect to those mortgages, 18 U.S.C. §§ 1341, 1343.  Not every mailing or wire transmission that relates to the mortgage in some way would necessarily further the alleged fraud.

Nor are there facts pleaded regarding specific misrepresentations made by specific Defendants in connection with individual foreclosures.  As to the existence of fraudulent statements or how the acts of mail or wire transmission identified in the table further a scheme or artifice to defraud, the SAC is conclusory – no matter how many times those conclusions are repeated.  (*E.g.*, SAC ¶¶ 110, 158-60, 163-64, 167, 179-80, 207, 221, 232, 245, 257, 269, 281, 293, 309.)  *See Boritzer v. Calloway*, No. 10-CV-6264, 2013 WL 311013, at *8 (S.D.N.Y. Jan. 24, 2013) ("[A]s a general rule, even where a complaint directly references various wire or mail transactions, if the allegations of a scheme to defraud are themselves deficient, there will be no plausible claim sounding in fraud.").  Even the more detailed factual allegations in the two "examples" given in the SAC fail to include facts plausibly supporting the inference that Defendants acted pursuant to a scheme to defraud.[12]

The SAC has failed to allege sufficiently detailed facts under Rule 9(b) to plausibly support its allegations of mail and wire fraud predicate acts under RICO, and as such the RICO claims must be dismissed.[13]

---

[12] (*See* SAC ¶¶ 116-23 (Plaintiff Troske's foreclosure), 124-37 (Plaintiff Zicaro's foreclosure).)  The factual allegations in these "examples" support the conclusion that the foreclosure actions in question were initiated by entities that did not hold valid title to the mortgages (because of intra-MERS transfers violating state law).  The facts alleged do not plausibly support the conclusion that such actions were taken by the relevant Defendants with intent to defraud, as required by Federal Rule of Civil Procedure 9(b).

[13] Finally, although I need not reach the issue, the allegations in the Complaint do not seem to show that Plaintiffs suffered injury as a proximate result of Defendants' alleged wrongdoing.  In essence, the SAC alleges that Defendants illegally initiated foreclosure proceedings without holding valid title to the mortgages in question. Accepting Plaintiffs' allegations as true, Plaintiffs suffered no injury as a direct result of this alleged misconduct that is any different from what would have occurred had Defendants' validly transferred ownership of the mortgages prior to initiating foreclosure proceedings.  Plaintiffs do not dispute that they defaulted on their repayment

**D.  State Law Claims**

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the federal claims in this case should be dismissed for lack of subject matter jurisdiction, I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law causes of action (Claims Ten through Fifteen).  *See id.* (citing 28 U.S.C. § 1367(c)(3)).  In the Court's view, however, there are some significant substantive issues with the state claims to which Plaintiffs' counsel must give further thought before pursuing those claims in state court.

**IV.  LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

obligations, nor do they contest the right of the actual note-holder to initiate foreclosure proceedings.  They do not even allege that they fought the foreclosure proceedings in state court.  The injury suffered by Plaintiffs is the loss of their homes, but Plaintiffs would have suffered that injury whether or not Defendants followed the proper protocol in transferring ownership prior to initiating the foreclosure proceedings.  The SAC does not allege any facts plausibly suggesting that Plaintiffs would have been somehow successful in preventing foreclosure had Defendants not broken the chains of title to the mortgages.  A potential injury could arise from the alleged invalidity of the foreclosing party's title if the party holding proper title came along and attempted to collect the mortgage balance from a Plaintiff.  But there are no such allegations in the SAC.

Plaintiffs have already had several opportunities to draft a legally adequate complaint. (*See* Docs. 1 (Complaint); 32 (First Amended Complaint); 74 (Second Amended Complaint).) At a pre-motion conference held before the Court on February 20, 2013, the Court and the parties discussed various deficiencies in the First Amended Complaint, many of which were mentioned in Defendants' various pre-motion letters. (*See* Minute Entry of Feb. 20, 2013; Docs. 23-29, 31, 38, 41, 42, 56-57.) Plaintiffs were given an opportunity to file a SAC in response to the potential deficiencies discussed and were informed that further leave to amend would not be granted. Plaintiffs' failure to fix deficiencies in their previous pleadings, after being provided notice of the deficiencies, is alone sufficient ground to deny leave to amend. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend").

Plaintiffs have requested permission to file a Third Amended Complaint. (Ps' Opp. 36; *see id.* Ex. N (proposed Third Amended Complaint).) By their own admission, however, the proposed amendment "is not intended to be a substantive amendment but rather one that addresses a few outstanding administrative issues" – specifically, replacing one Ocwen entity

with another as a named Defendant and removing two Defendants against whom Plaintiffs have withdrawn their claims.  (*Id.* at 39 n.5.)  The proposed amendments do not address any of the deficiencies identified in this Opinion, and there is no reason to believe further amendment will be capable of overcoming the *Rooker-Feldman* bar to this Court's consideration of Plaintiffs' federal claims.   Accordingly, I decline to grant Plaintiffs further leave to amend.

## V.  CONCLUSION

For the reasons stated above, the Joint Motion to Dismiss is GRANTED, and the individual Motions to Dismiss are DENIED AS MOOT.  The Second Amended Complaint is DISMISSED for lack of subject matter jurisdiction.  In the alternative, the federal claims are dismissed with prejudice for failure to state a claim on which relief can be granted, and the state law claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 90, 93), and close the case.

**SO ORDERED.**

Dated: February 10, 2014
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

27